IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CAPT. JAKE ELSTROM, ET. AL.

Plaintiff,

v.

NFENERGIA, LLC, ET. AL.

Defendants

CIVIL NO. 25 cv 1462 (SCC)

## MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

TO THE HONORABLE COURT:

Now appear Defendants Puerto Rico Harbor Pilot Commission (hereinafter, the "Commission"), and attorney Jessica Ñeco Morales in her official capacity as the Commission's President (hereinafter, the "President"), (collectively, the "Defendants"), through the undersigned attorneys, respectfully submit the following Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure Rules 12(b)(1) and 12(b)(6), and respectfully state and pray as follows:

## I. **PRELIMINARY STATEMENT**

This case is the third action Plaintiffs have filed against the Puerto Rico Pilotage Commission and its Acting President, Attorney Jessica Ñeco Morales, arising from the same set of facts and seeking the same remedies. Two parallel actions remain pending in the Puerto Rico courts: *Capt. Carlos Ramos (in his official capacity as Commissioner) v. Comisión de Practicaje de Puerto Rico*, SJ2025CV07333 (filed Aug. 18, 2025), and *Capt. Jake Elmstrom, et al. v. Comisión de Practicaje de Puerto Rico*, SJ2025CV07446 (filed Aug. 21, 2025). *See* Exhibits 1 & 2. Plaintiffs' decision to file a

==========================================================

near-verbatim federal complaint only days later underscores the contrived and vexatious nature of this action and exemplifies impermissible forum-shopping.

This Court should abstain from acting. Federal intervention would interfere with Puerto Rico's comprehensive pilotage regulatory system, duplicate ongoing proceedings in local courts, and force the premature resolution of unresolved questions of Puerto Rico law. *Burford, Colorado River*, and *Pullman* abstentions each independently support dismissal or, at the very least, a stay.

Even on the merits, Plaintiffs' case collapses. They allege no concrete or particularized injury sufficient to establish Article III standing. The Commission's directive imposed no sanctions, penalties, or restrictions, but merely clarified that individual pilots or pilot associations lack the authority to issue binding operational directives akin to regulation. At bottom, Plaintiffs seek to convert a regulatory clarification into a constitutional dispute. This lawsuit is nothing more than an effort to manufacture a federal controversy where none exists.

## II. FACTUAL BACKGROUND

The Puerto Rico Pilotage Commission is the statutory body charged with regulating pilotage in Puerto Rico's navigable waters under the Puerto Rico Pilotage Commission Act, Law No. 226 of August 12, 1999, as amended, P.R. Laws Ann. tit. 26, §361a-§361v (hereinafter, "Law 226"). The Commission is vested with the authority to adopt rules and regulations, supervise pilots, and ensure the safe and efficient movement of vessels in Puerto Rico's harbors. As part of this mandate, the Commission adopted Regulation 7214 on August 31, 2006, titled Rules of Transit in the Ports of Puerto Rico of 2006, which establishes procedures governing vessel transits and pilot responsibilities, including Rule 14 concerning the use of tugs.

In mid-August 2025, Puerto Rico faced the imminent passage of Hurricane Erin. On August 15, 2025, the United States Coast Guard issued Marine Safety Information Bulletin 11-25, ordering all oceangoing vessels over 500 gross tons to depart San Juan Harbor by 8:00 a.m. on August 16 unless expressly authorized to remain. *See* Exhibit 3. These extraordinary directives created an immediate emergency requiring coordinated action between the Commission, pilots, and maritime stakeholders to ensure both public safety and the uninterrupted flow of LNG supplies vital to Puerto Rico's energy system.

Against this backdrop, certain pilots circulated a letter on August 15, 2025 purporting to impose binding tug requirements on LNG operations without the Commission's authorization. To that effect, the letter threatened the pilot engaged for the maneuver of the LNG tanker vessel, Energos Maria, with legal action and referral to regulatory authorities for deviating from a purported "standard". While the letter was addressed to the pilot engaged to maneuver the vessel, the letter was circulated to other industry stakeholders, to wit, the United States Coast Guard, the vessel, its owners, and underwriters.  This communication did not reflect an official action of the Commission and risked undermining the Commission's ability to regulate pilotage in an orderly and uniform manner.

To avoid confusion and preserve the Commission's authority during this emergency, the Commission, through two of its three active commissioners, issued a cease-and-desist directive clarifying that only the Commission, acting within its statutory authority, may establish binding rules governing pilotage practices and that unilateral pronouncements by individual pilots or pilot associations were without regulatory effect. *See* Act 226-1999, Art. 5, P.R. Laws Ann. tit. 23, §361b (vesting the Commission with the power to "adopt and promulgate maritime traffic regulations."; *see also* Act 226-1999, Art. 24, P.R. Laws Ann. tit. 23, §361u (stating that pilots may organize in an

association for the limited purpose of "jointly administer[ing] their affairs and promote their common interests."). Far from silencing pilots, the directive ensured that Puerto Rico's pilotage system remained coherent, consistent, and subject to duly authorized regulation rather than *ad hoc* pronouncements by individuals.

The Commission's order is reinforced by a recent decision from the Puerto Rico Court Appeals that reaffirmed that so-called "guidelines" for pilotage operations are in substance regulations that must be approved by the Commission in accordance with the Puerto Rico Uniform Administrative Procedure Act. *See Joint Concession Management, LLC, et al. v. Comisión de Practicaje de Puerto Rico*, 2023 WL 6618441 (TCA Sept. 29, 2023). In that case, the Court of Appeals held that certain "*LNG Vessel Safety Guidelines*" proposed by the pilots and adopted by the Commission were null because they would amend Regulation No. 7214, Transit Rules for the Ports of Puerto Rico of 2006, and were not promulgated through the procedures of the Puerto Rico Uniform Administrative Procedure Act. *Joint Concession Management, LLC, et al. v. Comisión de Practicaje de Puerto Rico*, 2023 WL 6618441 at p. 9. (TCA Sept. 29, 2023). These "*LNG Vessel Safety Guidelines*" were issued in response to the start of operations of the New Fortress Energy Terminal and included, among other restrictions, beam limits and **tug requirements**, for vessels docking in the adjacent terminals. *Id.*, at p. 2-3.

In reaching its decision, the Court of Appeals Court made clear that these were legislative rules subject to rulemaking procedures:

> On multiple occasions our highest judicial forum has validated the maxim that "the name does not make the thing." *Natal Albelo v. Romero Lugo*, 206 DPR 465, 498 (2021); *OCS v. CODEPOLA*, 202 DPR 842, 880 (2019). **Thus, regardless of the name given to the safety guidelines in controversy, it is incumbent upon us to**

**determine their scope and applicability in order to decide whether or not they constitute legislative rules that must comply with the rulemaking procedure instituted in the LPAU, supra.**

From a careful and thorough examination of the LNG Vessel Safety Guidelines, in light of the normative framework set forth in the preceding section, it is unquestionable that we are faced with amendments to Regulation No. 7214, supra. **While it is true that guidance documents lack the force of law and do not create rights or obligations—unlike rules or regulations—it is no less true that legislative rules alter the rights of individuals and/or the general public, and their approval must be in accordance with the requirements established by the LPAU, supra, for the rulemaking process, under penalty of nullity.**

Id., at p. 7 (Our Translation) (Emphasis supplied). The Court of Appeals then went on to explain why

the imposition of these restrictions, particularly tug requirements, had to be adopted pursuant to

regulation:

**By adding these restrictions on how, when, and under what circumstances pilots may dock at said piers, depending on the type of vessel, Regulation No. 7214, supra, is amended, as it provides the traffic rules and establishes norms that have the force of law for every person who practices pilotage in the ports of Puerto Rico.** That is, additional requirements of general applicability are created for every individual or entity that carries out pilotage in the San Juan Port area. Contrary to the arguments of the Respondent, we conclude that the guidelines challenged here are not a mere expression of the Commission intended to provide clarity to the Regulation, but rather specifically regulate aspects of the docking process at piers in the Port of San Juan.

**For example, Rule 14 of Regulation No. 7214, *supra*, establishes the minimum number of tugboats to be used**, while Section II of the aforementioned Regulation, Rules 34 through 40, set forth everything related to the handling of vessels at the docks of the Port of San Juan, such as traffic direction in the Puerto Nuevo channels, the Army Terminal and their respective turning basins, speed, and berthing, among others. **In our judgment, the guidelines amend Regulation No. 7214, *supra*, by adding restrictive requirements concerning a specific situation, namely the nature of the cargoes of the vessels and the type of vessel docking at the Puerto Nuevo A and B ports, and at the east side of the COD, under particular circumstances**. On this matter, we cannot lose sight of the fact that the need to implement these rules arose from safety considerations due to the type of cargo handled at both terminals.

=========================================================

*Id.*, at p. 8 (Our Translation) (Emphasis supplied). The Court of Appeals, thus, concluded that "because what was approved in the guidelines affects the traffic rules in the channels of the Port of San Juan, and because pilotage service is not provided without their compliance, the Commission was required to comply with the minimum guarantees of the rulemaking process established in the LPAU, *supra*. We are of the opinion that the referred safety measures constitute substantive amendments to Regulation No. 7214, *supra*." *Id*.

The Commission's August 15, 2025 order is guided by this precedent. Indeed, it expressly references the Court of Appeals' ruling in explaining that the pilots' letter "represent[s] the imposition of operational 'guidelines' de facto and not de jure, without having undergone the regulatory process required under Act No. 38-2017 (LPAU) and without authorization from the Commission, **which has previously been the subject of judicial rulings prohibiting pilots from legislating or regulating without due process**." See Dkt. 1 & 13, Exhibit 8 (emphasis supplied). Plaintiffs nonetheless characterize the cease-and-desist as a form of censorship and disciplinary action. But the directive imposed no fines, suspensions, or penalties. It merely declared unauthorized communications null and void, preserving the Commission's exclusive authority to regulate in this sensitive area. Plaintiffs' suggestion that the order suppressed their right to speak ignores the distinction between private advocacy and unauthorized attempts to impose operational standards on third parties in the name of pilotage regulation.

Similarly, Plaintiffs challenge an August 21, 2025 resolution authorizing two pilots to attend LNG simulations in Spain. That resolution, however, was an administrative measure to ensure Puerto Rico's representation in critical technical exercises concerning LNG vessel operations. It neither imposed obligations on Plaintiffs nor curtailed their independence as contractors.

========================================================

In short, the Complaint challenges ordinary regulatory functions of the Pilotage Commission. The allegations reflect a disagreement over the Commission's role in coordinating pilotage policy, not the type of constitutional violation or maritime dispute that warrants federal intervention. Plaintiffs themselves acknowledge that Congress delegated pilotage regulation to the states. *See* Dkt. 13, ¶ Introduction, p. 4. This underscores that the challenged directive arises from a regulatory framework that Congress expressly assigned to Puerto Rico. That statutory allocation of authority confirms that the matters at issue are local in nature, fall squarely within the Pilotage Commission's jurisdiction, and are presumptively inappropriate for federal judicial interference. Plaintiffs' real quarrel is with the structure of Puerto Rico's pilotage system, a matter committed to the Commonwealth's regulatory framework and best addressed in Puerto Rico's courts.

## II. <u>SUMMARY OF THE COMPLAINT'S ALLEGATIONS</u>

Plaintiffs' Verified Complaint against the Commission and its President focuses on two principal actions. First, Plaintiffs allege that, on August 15, 2025, the President of the Commission, acting unilaterally, issued a cease-and-desist order directing seven pilots to refrain from communicating safety concerns regarding the use of replacement tugs in LNG vessel maneuvers. Plaintiffs claim the order was issued without convening the full Commission, without legal authority, and in violation of Law 226's requirement that the Commission act as a collegial body. Dkt. 13, ¶¶41–49. Plaintiffs further allege that the order unlawfully gagged pilots from speaking with the maritime industry, threatened referrals to the Puerto Rico Department of Justice, and constituted a de facto disciplinary action imposed without due process. Dkt. 13, ¶¶44–45, 63–64, 93–101. Plaintiffs further allege that the cease-and-desist order constitutes unlawful prior restraint and censorship, violating Plaintiffs' First Amendment rights. Dkt. 13, ¶¶114–115, 129.

=========================================================

Second, Plaintiffs allege that, on August 21, 2025, the President of the Commission issued a unilateral resolution authorizing Captains Daniel and Cesar Montes to attend LNG vessel simulations in Spain. Plaintiffs contend that this exceeded her statutory authority under Law 226 and infringed on the independence of pilots, who are independent contractors and not government employees. Dkt. 13, ¶¶58–60.

Based on these allegations, Plaintiffs seek the following remedies against the Commission and its President: (1) Declaratory relief to the effect that the August 15, 2025 cease and desist order is "void and ultra vires" because it was issued unilaterally and in violation of Law 226 [Dkt. 133, ¶84; Prayer for Relief (ii)]; and, (2) preliminary and permanent injunctions (a) prohibiting the President from issuing unilateral determinations; (b) requiring the Commission to act as a collegial body; and (c) barring enforcement of the cease-and-desist order that restricts pilot communications [Dkt. 13, ¶¶132–133; Prayer for Relief (i), (ii)].

### III. <u>LEGAL STANDARD</u>

#### A.  Standard on a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss:

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to assert the defense of lack of subject matter jurisdiction before pleading if a responsive pleading is allowed. Fed.R.Civ.P. 12(b)(1). For its part, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to assert the defense of failure to state a claim upon which relief can be granted, before pleading, if a responsive pleading is allowed. Fed.R.Civ.P. 12(b)(6).

Dismissal for lack of subject matter jurisdiction would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable, and motions on those grounds are subject to the same standard of review as motions to dismiss for failure to state a claim upon which relief can be granted.

=========================================================

*See, Torres v. Bella Vista Hospital, Inc.*, 523 F.Supp.2d 123, 132 (D.P.R. 2007), *subsequently affirmed*, 914 F.3d. 15 (1st Cir. 2019).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To withstand a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter ... to 'state a claim to relief' that is plausible on its face." *Rios-Campbell,* 927 F3d at 24. By its very nature, the plausibility standard is time sensitive. *Id*. Refined to bare essence, it "is a screening mechanism designed to weed out cases that do not warrant either discovery or trial." *Id.*

First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *See, Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir.2012) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz,* 669 F.3d at 55. Plausible means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. *Id.*

## IV. DISCUSSION

### A. Abstention doctrines warrant dismissal of the action against the Commission and its President.

Federal abstention doctrines independently require this Court to decline jurisdiction. Under *Burford*, *Colorado River*, and *Pullman*, federal intervention here would improperly intrude into Puerto Rico's regulatory system for pilotage, duplicate ongoing state proceedings, and prematurely adjudicate constitutional questions intertwined with unsettled issues of Puerto Rico law.

## 1. Burford Abstention – Deference for Puerto Rico's Comprehensive Pilotage Regulatory Framework

Federal courts must exercise jurisdiction except in extraordinary circumstances, such as the ones set forth by the Supreme Court of the United States in the case of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The *Burford* abstention doctrine posits that, provided adequate state court review is available, abstention is required where federal review would intrude into a specialized state regulatory scheme. To that effect, the Supreme Court has explained that federal courts "must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public interest whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI"),* 491 U.S. 350, 361 (1989) (quoting *Colorado River*, 424 U.S. 800, 814 (1976)) (Internal quotation marks omitted).

The First Circuit has emphasized that *Burford* abstention is designed to avoid the "awkward circumstance of turning the federal court into a forum that will effectively decide a host of detailed state regulatory matters, to the point where the presence of the federal court, as a regulatory decision-making center, makes it significantly more difficult for a state to operate its regulatory system."

=========================================================

*Guillemard-Ginorio v. Contreras Gómez*, 585 F.3d. 508, 524  (1st Cir. 2009) (quoting *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 779 (1st Cir. 1990)). This recognizes that local courts and administrative bodies, not federal tribunals, should first resolve disputes entangled in a "special aspect of [a] complicated regulatory system of local law." *Federación de Maestros de Puerto Rico v. Acevedo Vilá*, 545 F. Supp. 2d 207, 216 (D.P.R. 2008) (quoting *Charles Alan Wright & Mary Kay Kane, Federal Practice and Procedure: Federal Practice Deskbook §54* (2006)).

This case falls squarely within *Burford's* rationale. Congress has expressly delegated the regulation of pilotage to the states. *See Cooley v. Board of Wardens of the Port of Philadelphia*, 53 U.S. (12 How.) 299 (1852). Pursuant to that authority, Puerto Rico has created a detailed statutory and regulatory framework for pilotage under Act 226-1999 and Regulation 7214, vesting the Commission with exclusive authority to regulate pilots, adopt rules for safe navigation, and enforce compliance. Pilotage implicates Puerto Rico's core interests in maritime safety, port management, and energy security. Plaintiffs' claims strike directly at the heart of that framework: they challenge the Commission's cease and desist order, which declared unauthorized pilot communications "null and void" and reaffirmed that only the Commission may impose binding maritime traffic standards and regulations in accordance with Act 226-1999 and the Puerto Rico Administrative Procedure Act, Act 38-2017. *See* Dkt. 1 & 13, Exhibit 8, Commission Letter ("It is hereby reiterated that the [Commission] is the sole regulatory authority for pilotage in this jurisdiction.").

Federal review of that order would necessarily require this Court to resolve unsettled questions of Puerto Rico law regarding the scope of the Commission's authority, the role of pilot associations, and the balance between professional discretion and regulatory oversight. To undertake that review would place this Court in the very role *Burford* warns against, that is, functioning as a *de facto*

=========================================================

regulator of Puerto Rico's pilotage system. Furthermore, Congress deliberately entrusted pilotage regulation to the states and territories, not to the federal courts. Federal intervention in this case would therefore disrupt Puerto Rico's ability to establish a coherent pilotage policy and undermine the very allocation of regulatory responsibility Congress intended.

Adequate review is available in Puerto Rico's courts, where two parallel actions are already pending, as further detailed in the following section. Those courts are fully competent to adjudicate both Puerto Rico law and any federal defenses, and they are best positioned to interpret the statutory and regulatory framework governing pilotage. Given Puerto Rico's compelling interest in regulating its ports and ensuring coherent maritime policy, federal intervention would be both unnecessary and disruptive.

Accordingly, under *Burford* and its progeny, this Court should decline to exercise jurisdiction and defer to the ongoing proceedings in Puerto Rico's courts.

### 2. Colorado River Abstention – Duplicate Litigation and Forum Shopping

While concurrent federal-state jurisdiction over the same controversy does not generally lessen the federal courts' "virtually unflagging obligation ... to exercise the jurisdiction given to them," the Supreme Court of the United States has acknowledged that this obligation is not infinite. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In *Colorado River*, the Supreme Court acknowledged that, in special cases, the pendency of a similar action in state court may merit federal abstention based on "considerations of wise judicial administration" that counsel against duplicative lawsuits. *Id.* This is known as the *Colorado River* abstention doctrine.

Based on *Colorado River* and its progeny, the First Circuit has drawn a list of non-exclusive factors to determine whether abstention is warranted, to wit: (1) whether either court has assumed

============================================================

jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability

of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether

state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7)

the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying

removal jurisdiction. *Jiménez v. Rodríguez Pagán*, 597 F.3d 18, 27-28 (1st Cir. 2010).

The Supreme Court has stated that "[n[o one factor is necessarily determinative; a carefully

considered judgment taking into account both the obligation to exercise jurisdiction and the

combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–

19. Furthermore, "the decision whether to dismiss a federal action because of parallel state-court

litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors

as they apply in a given case, with the balance heavily weighted in favor of the exercise of

jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction, they

may abstain in "exceptional circumstances" to avoid duplicative litigation. *Colorado River Water

Conservation Dist. v. United States*, 424 U.S. at 817. The First Circuit applies eight factors in this

analysis, and when considered together, they support abstention here.

First, neither this Court nor the Puerto Rico courts has assumed jurisdiction over a res such as

property or a vessel, rendering this factor neutral. Second, there is no geographical inconvenience to

the federal forum because both the federal and state courts sit in San Juan., This second factor is

neutral as well.

Third, however, the avoidance of piecemeal litigation strongly favors abstention, as Plaintiffs

have already filed two actions in the Puerto Rico courts, *Capt. Carlos Ramos v. Comisión de*

=========================================================

*Practicaje de Puerto Rico*, SJ2025CV07333 (filed Aug. 18, 2025) and *Capt. Jake Elmstrom v. Comisión de Practicaje de Puerto Rico*, SJ2025CV07446 (filed Aug. 21, 2025), seeking identical relief based on the same facts. Proceeding here risks inconsistent rulings and wasteful duplication.

Fourth, the order in which the forums obtained jurisdiction also favors abstention, since the Puerto Rico actions were filed before this case and remain pending.

Fifth, the controlling law factor favors abstention because the controversy is fundamentally grounded in Puerto Rico law, specifically the scope of the Commission's authority under Act 226-1999, despite the plaintiffs' attempt to frame their claims as First Amendment issues. The Puerto Rico courts are the proper forum to resolve these unsettled questions of local law.

Sixth, Puerto Rico courts are adequate to protect the parties' interests, as they are fully competent to adjudicate both Puerto Rico law and federal constitutional claims, which further weighs in favor of abstention.

Seventh, the vexatious or contrived nature of this federal action strongly supports abstention. Plaintiffs filed this case only days after initiating parallel proceedings in Puerto Rico courts, attempting to repackage what is fundamentally a state regulatory dispute as a federal claim in a transparent act of forum shopping. The near verbatim duplication of their state complaints in this federal pleading underscores the contrived nature of the filing. It confirms that it serves no purpose other than to multiply litigation and seek a more favorable forum.

Finally, as to the eighth factor, respect for the principles underlying removal jurisdiction, Plaintiffs have alleged that pilotage matters fall within this Court's admiralty jurisdiction, and it is arguable that, because their claims seek only prospective equitable relief, Eleventh Amendment immunity, if applicable, would not bar federal jurisdiction. While these considerations cast doubt

=========================================================

whether removal would have been foreclosed, nevertheless, the near-verbatim duplication of Plaintiffs' state complaints in this action demonstrates the same forum-shopping concern that animates this factor. Even if removal were theoretically available, Plaintiffs' choice to pursue parallel litigation in both systems undermines the orderly administration of justice and risks precisely the duplicative, piecemeal adjudication that *Colorado River* abstention is designed to prevent.

On balance, at least five of the eight factors (piecemeal litigation, order of jurisdiction, source of law, adequacy of the state forum, and vexatious or contrived nature) weigh decisively in favor of abstention, while the remaining three are neutral. None supports federal retention. Under *Colorado River* and its progeny, this case presents the exceptional circumstances warranting dismissal or stay in deference to the parallel Puerto Rico proceedings.

### 3.  Pullman Doctrine – Avoidance of Premature Constitutional Rulings on Unsettled Puerto Rico Law

This case also warrants abstention under the doctrine articulated in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention applies when a federal constitutional claim turns on an unsettled question of state law, such that resolution of the state issue may obviate or materially alter the need to decide the constitutional question. As the Supreme Court explained, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975).

The First Circuit has endorsed this principle in the Puerto Rico context. In *Rivera–Feliciano v. Acevedo–Vilá*, 438 F.3d 50, 61 (1st Cir. 2006), the court observed that it "would be unusual for a

===========================================================

federal court, in order to reach issues of federal constitutional law, to resolve such numerous prior questions of local law absent prior interpretations by the local courts." Likewise, this Court has recognized that *Pullman* abstention is appropriate where federal constitutional claims are entangled with unsettled issues of Puerto Rico law of substantial importance. *See Federación de Maestros de Puerto Rico v. Acevedo Vilá*, 545 F. Supp. 2d 207, 216 (D.P.R. 2008) (abstaining where the constitutionality of a Puerto Rico statute implicated both free expression and the right to education under the Puerto Rico Constitution).

Those principles apply here. Plaintiffs' First Amendment challenge to the Commission's cease-and-desist order rests upon unresolved questions of Puerto Rico law: namely, the scope of the Pilotage Commission's authority under Act 226-1999 to declare pilot communications null and void, and whether pilots or pilot associations may issue operational directives of general applicability akin to regulations without Commission approval. These questions are central to Puerto Rico's pilotage framework and have not been addressed by the Puerto Rico Supreme Court. A ruling by that court could clarify the limits of the Commission's authority and potentially render any federal constitutional adjudication unnecessary.

The Supreme Court has cautioned against the "friction generating error" that arises when federal courts attempt to construe novel state laws not yet reviewed by the state's highest tribunal. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997). That concern is heightened here, where Puerto Rico's statutory framework for pilotage regulation is a matter of substantial local importance tied to maritime safety and, in this case, energy security. Once Puerto Rico's courts interpret the governing law, "adjudication of any remaining constitutional questions may indeed become greatly simplified." *Id.* at 80.

=========================================================

Importantly, *Pullman* abstention does not entail abdication of federal jurisdiction, but only postponement of its exercise. See *Harrison v. NAACP*, 360 U.S. 167, 177 (1959). As the Supreme Court recognized, abstention in such circumstances is a matter of prudence: the federal court holds its hand because the state-law resolution may moot or narrow the federal issue. We submit that said approach is precisely warranted here, where Puerto Rico's courts are fully competent to decide the scope of the Commission's authority under Act 226-1999, and where such a decision could avoid or materially alter any need for a First Amendment ruling.

Accordingly, this Honorable Court should abstain under *Pullman* and defer to the pending Puerto Rico proceedings to resolve the state-law issues at the core of this dispute.

## B. Plaintiffs lack standing to bring their action against the Commission and its President.

Even apart from abstention, Plaintiffs' claims fail on justiciability grounds. The Commission's August 15, 2025 order was issued pursuant to emergency authority under Puerto Rico's Uniform Administrative Procedure Act during Hurricane Erin, has since expired, and caused no ongoing injury. Any alleged harms are speculative, rendering the claims unfit for judicial resolution.

It is beyond dispute that when a litigant wishes to pursue a claim in a federal court, justiciability principles require the existence of an actual case or controversy. *See* U.S. Const. art. III, § 2, cl. 1; *see also Allen v. Wright*, 468 U.S. 737, 750 (1984); *Osediacz v. City of Cranston*, 414 F.3d 136, 139 (1st Cir.2005). To satisfy the case or controversy criteria, the party alleging the existence of jurisdiction must possess a personal stake in the outcome of the litigation. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). This requirement "subsists through

========================================================

all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

To satisfy Article III's "personal stake" requirement vis-à-vis a statutory challenge, the plaintiff bears the burden of demonstrating that (i) she has suffered an actual or threatened injury in fact, which is (ii) fairly traceable to the statute, and (iii) can be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, (1992); *Lewis*, 494 U.S. at 477. Allegations of abstract injury are insufficient to make out an injury in fact. Instead, the plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury." *City of Los Angeles*, 461 U.S. at 101–02, 103 S.Ct. 1660 (citations and internal quotation marks omitted). Moreover, she must show that the injury or threat of injury is both real and immediate. *Id.* at 102, 103 (citations and internal quotation marks omitted). Standing involves both constitutional imperatives and prudential considerations. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). An inquiry into standing must be based on the facts as they existed when the action was commenced. *Mangual v. Rotger–Sabat*, 317 F.3d 45, 56 (1st Cir.2003).

In this case, the cease-and-desist directive was issued on August 15, 2025, in the narrow context of Hurricane Erin, after the United States Coast Guard ordered all oceangoing vessels greater than 500 GT to depart San Juan Harbor. In those circumstances, the Commission acted pursuant to its authority under its enabling act and the Puerto Rico Uniform Administrative Procedure Act, P.R. Laws Ann. tit. 3, §9601-§9713, which expressly authorizes agencies to issue temporary emergency orders where immediate action is required to protect public safety or the functioning of essential services. P.R. Laws Ann. tit. 26, § 361b (stating that the Commission "shall possess and exercise the

===========================================================

powers related to the protection of maritime traffic in the waters and ports of the Commonwealth."); P.R. Laws Ann. tit. 3, § 9672 (authorizing administrative agencies to issue temporary emergency orders where "immediate action is required to protect public health, safety, or welfare, or to safeguard the continued operation of essential public services.").

The LNG transit at issue occurred on August 16, 2025, under the supervision of Captain Daniel Montes, and was completed successfully and without incident. The specific circumstances that prompted the order, the imminent hurricane and emergency evacuation of vessels, have passed. Thus, Plaintiffs cannot show that they suffered an injury in fact at the time of filing.

Notwithstanding, Plaintiffs contend that the Commission's letter created a chilling effect sufficient to confer standing. But the First Circuit has been clear: in pre-enforcement First Amendment cases, standing exists only where there is a "credible threat of prosecution" that is "not imaginary or wholly speculative." *Mangual*, 317 F.3d at 57; *Ramírez v. Sánchez Ramos*, 438 F.3d 92, 98 (1st Cir. 2006) *citing N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir.1996) ("[a] party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable.").

Here, no such threat exists. The August 15, 2025 order did not initiate disciplinary or criminal proceedings, impose sanctions, or even allege a violation of law. It simply noted that unauthorized pilot communications would be referred to the appropriate authorities for investigation and evaluation of potential violations of law. This is not a command, but a statement of the Commission's statutory duty to coordinate with other agencies.

=========================================================

Furthermore, Plaintiffs' reliance on the order's invitation for industry stakeholders to forward unauthorized pilot communications for review does not establish standing. That language merely restates the Commission's ongoing statutory authority to consider complaints and determine regulatory compliance. A generalized risk that future communications may be evaluated does not satisfy the requirement of a real and immediate injury. As the Supreme Court has held, "[a]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Because Plaintiffs have not demonstrated any non-speculative injury-in-fact, and because no credible threat of enforcement exists, they lack Article III standing, and this Court lacks jurisdiction over their claims.

## C. The Challenged Conduct Is Not Protected Speech

Even if Plaintiffs could establish jurisdiction, their claims fail on the merits because the Commission's directive regulates conduct, not constitutionally protected expression. The Supreme Court has long recognized that "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).

Here, Plaintiffs' letters were not mere expressions of opinion about tug safety. They purported to impose binding operational requirements on LNG vessels and other pilots, under the authority of their pilot licenses, without Commission approval. *See* Dkt. 1 & 13, Exhibit 7, Pilots' Letter (demonstrating Plaintiffs' intent to impose an unauthorized "standard" on a fellow pilot: "Should the transit [of the Energos María] proceed despite these concerns, we will document the decision as a

willful departure from the adopted standard and refer it to the relevant regulatory and oversight authorities."). This was an attempt to exercise regulatory power, not to engage in public debate. *See* Dkt. 1 & 13, Exhibit 8, Commission Letter ("[The pilots'] actions represent the imposition of operational 'guidelines' de facto and not de jure, without having undergone the regulatory process required under Act No. 38-2017 (LPAU) and without authorization from the Commission…Therefore, the pilots who signed the letter dated August 15, 2025, are ordered to immediately cease and desist from issuing any **similar communication** without authorization from the Commission.")(Emphasis supplied).

Federal courts consistently uphold state regulations of professional conduct, even when carried out through words. *National Institute of Family and Life Advocates v. Becerra*, 585 U.S. 755, 768 (2018) ("Under [Supreme Court] precedents, States may regulate professional conduct, even though that conduct incidentally involves speech."); *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1222 (11th Cir. 2022) (licensing restrictions regulated professional conduct, not protected expression).

Thus, the Commission's order did not target Plaintiffs' viewpoints, restrict their ability to advocate publicly for maritime safety, or impose penalties for speaking out. It merely prohibited unauthorized exercises of regulatory authority masquerading as "communications." That conduct falls outside the First Amendment's core protections.

### D. Plaintiffs Cannot Satisfy the Requirements for Injunctive Relief

Even if Plaintiffs could overcome the jurisdictional, abstention, and merits barriers discussed above, their request for injunctive relief still fails. A preliminary or permanent injunction is "an extraordinary and drastic remedy" that may be granted only upon a clear showing that the plaintiff is

CIVIL NO. 25 cv 1462 (SCC)                                                    Page -22-
========================================================

entitled to it. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To prevail, Plaintiffs must establish: (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest. *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18-19 (1st Cir. 2006). Plaintiffs cannot satisfy any of these requirements.

**1.    No likelihood of success on the merits.**

As explained above, Plaintiffs lack standing, their claims are barred by abstention doctrines, and the challenged directive regulated unauthorized professional conduct rather than protected expression. Without a viable cause of action, they cannot demonstrate a likelihood of success. This is further supported by the Puerto Rico Court of Appeals decision in *Joint Concession Management, LLC, et al. v. Comisión de Practicaje de Puerto Rico*, 2023 WL 6618441 (TCA), where "*LNG Safety Vessel Guidelines*" proposed by the pilots and approved by the Commission were declared null because they amended prior regulations dictating tug requirements and did not comply with the Puerto Rico Administrative Procedure Act.

**2.    No irreparable harm.**

The August 15, 2025 directive imposed no sanctions, suspensions, or restrictions on Plaintiffs' ability to work as pilots or to speak publicly about maritime safety. The directive was specifically tailored to avoid "similar communications" to the one where the pilots tried to impose a "standard" on a fellow pilot without complying with the regulatory process and under threat of legal action and referral to regulatory authorities.

===========================================================

Moreover, the order has since expired, and the LNG maneuver that prompted it was successfully completed on August 16, 2025. Since that date, vessels have continued to enter and depart San Juan Bay, which necessarily requires pilots to communicate with agents, vessel masters, and industry stakeholders. Plaintiffs do not allege, because they cannot, that they have been prevented from engaging in those communications in the ordinary course of their duties. Their own continued performance of pilotage services confirms that no actual restraint has occurred.

At most, Plaintiffs allege speculative fears of future Commission review, which is insufficient to show irreparable harm. See *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."). Conclusory assertions of "chill" without concrete evidence of subsequent curtailed communications cannot sustain the extraordinary remedy of injunctive relief. See *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

### 3. The balance of equities does not favor Plaintiffs.

Any injunction against the Commission or its President would hamstring the Commonwealth's ability to regulate maritime traffic and respond to emergencies in its ports. By contrast, Plaintiffs face no ongoing injury and remain free to discuss pilotage services with vessel masters and agents within the limits of their statutory authority. Furthermore, they are free to submit to the Commission proposed rulemaking for LNG vessels in the San Juan Bay for adoption pursuant to the Puerto Rico Uniform Administrative Procedure Act, which they have not done up to this date.

### 4. Public interest weighs heavily against injunctive relief.

Plaintiffs cannot satisfy the public interest factor. Congress has expressly delegated pilotage regulation to the states [Dkt. 13, Introduction], and Puerto Rico has exercised that authority through

========================================================

the Commission. Puerto Rico has a compelling interest in maintaining a coherent pilotage system, ensuring maritime safety, and securing LNG vessel operations essential to the Island's energy supply.

An injunction interfering with that authority would not only disrupt an area committed to local regulation but would give the pilots a *carte blanche* to impose regulatory standards on all vessels, agents, and terminal operators without due process and Commission oversight, effectively transforming them into a supra-regulatory authority accountable to no one.

Because Plaintiffs cannot demonstrate standing, a viable constitutional claim, or any of the elements required for injunctive relief, their request for an injunction must be denied.[1]

## V. **CONCLUSION**

This case does not belong in federal court, and this Honorable Court should abstain. Under *Burford*, federal intervention would disrupt Puerto Rico's comprehensive regulatory framework for pilotage; under *Colorado River*, it would duplicate two pending and, one nearly identical Puerto Rico court actions; and under *Pullman*, it would prematurely decide federal constitutional questions intertwined with unsettled Puerto Rico law.

Plaintiffs seek to transform a temporary emergency directive, issued during Hurricane Erin under the Commission's statutory authority, into a federal constitutional dispute. Yet they have suffered no concrete injury, continue to communicate freely with vessel agents and stakeholders, and face no credible threat of enforcement. They therefore lack Article III standing.

And even if the Court were to reach the merits, Plaintiffs' claims still fail. The directive regulated unauthorized professional conduct, not protected speech, and imposed no sanctions or

---

[1] Plaintiffs up to this date have not even complied with the procedural rules governing injunctive relief. See D.P.R. Local Rule 56 (providing that "[a]ny motion for a temporary restraining order or preliminary injunction shall be accompanied by a proposed order").

===========================================================

penalties. Plaintiffs also cannot demonstrate the irreparable harm, balance of equities, or public interest necessary to justify the extraordinary remedy of injunctive relief.

For all these independent reasons, the Complaint should be dismissed in its entirety, and Plaintiffs' request for an injunction should be denied.

WHEREFORE, for the reasons stated above, the appearing Defendants respectfully pray that this Honorable Court enter Judgment dismissing the Complaint and grant such further relief as may be just.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 17th day of September 2025.

I HEREBY CERTIFY that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing automatically to all counsel of record.

*s/Jorge F. Blasini*
**JORGE F. BLASINI**
USDC-PR NO: 213001
E-mail Address: jblasini@jgl.com

*s/ Andrés F. Picó-Ramírez*
**ANDRÉS F. PICÓ-RAMÍREZ**
USDC-PR NO.: 302114
E-mail Address:  apico@jgl.com

**JGL Attorneys at Law, LLC**
P.O. BOX 366104
SAN JUAN, P. R. 00936-6104
TEL.:  (787) 767-1030
FAX:   (787) 751-4068