Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

---

# MASTER TIME CHARTER AGREEMENT

---

## Index of clauses contained in Master Time Charter Agreement.

Article 1 ........................... Cancellation
Article 2 ........................... Charter
Article 3 ........................... Type of Work to Be Done
Article 4 ........................... Duration of Short Form and Day Rates
Article 5 ........................... Options to Renew Agreement and Renewal Rates
Article 6 ........................... Area of Operations
Article 7 ........................... Delivery/Redelivery of Vessel
Article 8 ........................... Manning of Vessel
Article 9                           Use of Vessels by CHARTERER
Article 10 ......................... Loss of Vessel
Article 11 ......................... Substitute Vessel
Article 12 ......................... Termination of Short Form
Article 13 ......................... Off-hire and Downtime Provisions
Article 14 ......................... Expenses for Account of CHARTERER
Article 15 ......................... Billing
Article 16 ......................... Vessel Operations
Article 17 ......................... Compliance with Applicable Laws, Rules, and Regulations
Article 18 ......................... Limitation of Liability
Article 19 ......................... Movement of Vessel
Article 20 ......................... Dissatisfaction with Crew
Article 21 ......................... Relationship of OWNER & Employees to CHARTERER
Article 22 ......................... Structural and Other Changes to Vessel by CHARTERER
Article 23 ......................... Derelict, Salvage, and Salvage Towage
Article 24 ......................... OWNER's Indemnity Obligations to CHARTERER
Article 25 ......................... CHARTERER's Indemnity Obligations to OWNER
Article 26 ......................... Third Parties and Pollution Claims
Article 27 ......................... Insurance Obligations
Article 28 ......................... Binding Nature of Agreement
Article 29 ......................... Agreement Not a Demise Charter
Article 30 ......................... Notices
Article 31 ......................... Governing Law
Article 32 ......................... Advice of Counsel
Article 33 ......................... Disclaimer:  Master Agreement Headings

152698.06504/153013758v.1

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

Article 34 ........................Nondiscrimination Provision.
Article 35 ........................No Consequential Damages
Article 36 ........................Prohibition of Lien Clause
Article 37 ........................Force Majeure Clause
Article 38 ........................Multiple Counterparts
Article 39 ........................Entire Agreement
Article 40 ........................Confidentiality

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

# MASTER TIME CHARTER AGREEMENT

THIS MASTER TIME CHARTER AGREEMENT ("Master Agreement") made effective the 2nd day of May, 2025, by and between

**Nautical Ventures, L.L.C.**
Attn: Legal Department
16201 East Main Street
Cut Off, LA  70345
phone: (985) 601-4444
e-mail: legal@chouest.com

(hereinafter referred to as "OWNER,")

**AND**

**NFEnergia, LLC c/o New Fortress Energy**

Attn: Chris Guinta
111 W 19th Street, 8th Floor
New York, New York 10011

phone: 347-213-0939
e-mail: legal@newfortressenergy.com
with a copy to aimran@newfortressenergy.com

(hereinafter referred to as "CHARTERER.")

WHEREAS, CHARTERER, from time to time, desires to time charter vessels from OWNER; and whereas, OWNER owns or is the disponent owner of various vessels which it, from time to time, desires to time charter to CHARTERER;

NOW THEREFORE, in consideration of the premises and the covenants herein contained, the parties hereto mutually agree as follows:

WITNESSETH:

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

1. **CANCELLATION.** This Master Agreement shall apply to each Short Form Time Charter Agreement ("Short Form," a blank copy of which is attached hereto as EXHIBIT A) entered into between CHARTERER and OWNER which incorporates this Master Agreement by reference. Either party may cancel the Master Agreement upon the giving of thirty (30) days prior written notice to the other; provided, however, that any unexpired Short Form shall continue in effect subject to the terms and conditions thereof until expiration of the term specified in such Short Form. In the event of a conflict between this Master Agreement and an executed Short Form, such Short Form shall govern.

2. **CHARTER.** This Master Agreement does not obligate OWNER to charter its vessels to CHARTERER, nor does it obligate CHARTERER to hire any vessel or vessels owned by OWNER, but it, together with any Short Form between OWNER and CHARTERER of even date or dated subsequent to the date hereof, shall govern the respective rights and duties of OWNER and CHARTERER.

   If a Short Form is entered into between CHARTERER and an affiliate of OWNER (including but not limited to one of the affiliate entities identified on Attachment A hereto), then it shall be considered for all purposes that such affiliate is a party to and deemed OWNER in this Master Agreement and that the affiliate has adopted, ratified, and confirmed all the terms and provisions of this Master Agreement, insofar as it is applicable to the vessel chartered under such Short Form. The parties acknowledge that any OWNER and/or OWNER affiliate only assumes obligations under this Master Agreement and a Short Form to the extent such entity is named as "OWNER" in a specific Short Form. OWNER first identified in the Master Agreement above shall not be deemed a guarantor of another affiliate identified in a Short Form.

   This Master Agreement and the Short Form, including any attachments incorporated therein by reference, shall constitute the entire agreement between the parties for the charter of vessels by OWNER to CHARTERER in the absence of a separate written time charter on a specific vessel and the terms and provisions hereof shall *ipso facto* apply to the charter of any vessel to CHARTERER by OWNER in the absence of any such separate written time charter on a specific vessel. The terms and provisions of this Master

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

Agreement shall not, however, be applicable to the charter of any vessel upon which such a separate written time charter is executed.

3.    **TYPE OF WORK TO BE DONE.** As specified in the Short Form.

4.    **DURATION OF SHORT FORM AND DAY RATES.** OWNER agrees to let and CHARTERER agrees to hire said Vessel for the term specified in the Short Form, beginning on or about the date specified in the Short Form, and for the rate specified in the Short Form. Except as otherwise provided in this Master Agreement, the day rate specified in the Short Form shall be paid by CHARTERER to OWNER for the use and hire of the Vessel per calendar day that the Short Form is in force and effect, with any partial day being regarded as a full day. This includes the period while the Vessel is in transit from the area of operations to the Port of Redelivery specified, and during the time CHARTERER removes its equipment from the Vessel once Vessel reaches port of redelivery specified.

5.    **OPTIONS TO RENEW AGREEMENT AND RENEWAL RATES.** If any, these are as specified in the Short Form.

6.    **AREA OF OPERATIONS.** As specified in the Short Form, or such other areas as designated by CHARTERER and agreed to by OWNER. The area of operations is understood to be in transit between mainland United States and Puerto Rico and in waters off Puerto Rico. If during the term of the Short Form the Vessel is utilized in other areas of operation than originally chartered, the day rate, with mutually agreed upon terms, will be adjusted to reflect market rates for that area.

7.    **DELIVERY/REDELIVERY OF VESSEL.** Ports of delivery and redelivery shall be as specified in Short Form.

The Vessel shall be delivered to CHARTERER with minimum amounts of fuel, water, and lube oils aboard. Upon the return of the Vessel to the port of redelivery specified, CHARTERER shall have such time as is reasonably necessary for it to remove any instruments, motors, furnishings, fittings and equipment to which it is entitled. The day rate shall be paid by CHARTERER during this period.

OWNER shall accept and pay for, or credit against its invoices, all fuel and

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

lubricants on board the Vessel at the time of redelivery hereunder, in excess of the amounts on board at the time of delivery, at the current market prices for the port of redelivery.

8. **MANNING OF VESSEL.** OWNER will provide manning for the Vessel as required by the U.S. Coast Guard in its Certificate of Inspection. Should CHARTERER require additional crew to assist in its work, this shall be negotiated with OWNER.

In the event that any consular official having authority to do so, or an officer or agent of any government having authority to do so shall require the employment of any additional crew, and so notify CHARTERER and OWNER of that requirement, then OWNER shall employ such additional crew and CHARTERER shall pay to OWNER, in addition to hire at the applicable daily rate, the actual cost to OWNER of such additional crew, including payroll burden and travel, plus 10%.

OWNER shall man the Vessel and pay all costs in connection therewith (except those costs specifically agreed to be borne by CHARTERER in the above paragraph), including wages and any fringe benefits, social security payments and taxes, unemployment contributions and taxes and all other taxes applicable to the employment of OWNER's crew.

9. **USE OF VESSELS BY CHARTERER.** CHARTERER agrees to restrict the use of the Vessel solely to lawful towage services, escort services, and any such other activities as may be within the Vessel(s) class and capabilities and incidental to its operations in areas as mutually agreed, including the inland and offshore water of the U.S. Gulf Coast, Puerto Rico, and in waters where the Vessel can be navigated and always lie safely afloat at all states of the tide, as well as in waters in which the vessel will transit to and from Puerto Rico and the mainland United States. The Vessel shall not be used for live diving (also known as live boating), unless specifically agreed to the contrary. The master of each vessel shall determine whether operations requested by the CHARTERER can safely be undertaken and whether his vessel is capable of undertaking or being employed to carry out the directions and orders of the CHARTERER. The master, although appointed by the OWNER, shall be under the general directions of the CHARTERER as regards employment of the Vessel, agencies or other arrangements and shall not unreasonably refuse any request to undertake operations or carry out any order or direction

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

specified by CHARTERER. CHARTERER shall furnish the master of the Vessel with all requisite instructions and sailing directions, and the master shall keep full and correct logs of the voyages, and these shall be made available within a reasonable time upon the request of CHARTERER. Notwithstanding anything to the contrary in this Agreement, it is agreed that if any operation, voyage, movement, activity or inactivity on the part of OWNER and/or the master is insisted upon by CHARTERER, its agents, employees or representatives and undertaken by the master of the Vessel under protest, on account of the opinion of the master that said operation, voyage, movement, activity or inactivity is hazardous and likely to cause loss, damage or expense or loss of life or personal injury, the responsibility for any such loss, damage or expense or loss of personal injury shall thereupon rest solely upon CHARTERER.

Said Vessel shall be used and employed for the work specified as Area of Operations on the Short Form, subject to the other provisions of this Master Agreement. CHARTERER shall not direct the Vessel, and OWNER shall not be required to operate the Vessel, in areas where insurance coverage cannot be obtained for the Vessel, or where the present insurance coverage for the Vessel may be deemed inapplicable, void or excluded.

The premiums for any insurance not set out in Attachment B of this Master Agreement, necessary to operate the Vessel inside or outside of the area of operations of this agreement shall be paid initially by OWNER and reimbursed by CHARTERER.

Notwithstanding any other provision in this Master Agreement, at law, or otherwise, including without limitations any warranties implied, at law, or in admiralty (including seaworthiness), CHARTERER acknowledges that the Vessel is not deemed to be fit for any intended, specific, or particular purpose except and unless that purpose is expressly set forth in this Master Agreement or any Short Form.

10.  **LOSS OF VESSEL.** In the event the Vessel should be lost or becomes a constructive total loss, payment of hire shall cease, and the Short Form for that Vessel shall automatically terminate. Thereafter, both parties shall be relieved of further liability hereunder (except for the indemnity obligations set out herein as to claims arising prior to loss of Vessel, even if asserted subsequent thereto).

7

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

11.  **SUBSTITUTE VESSEL.** Subject always to Article 18, in the event of a breakdown or other condition or event resulting in an off-hire period exceeding twelve (12) hours, CHARTERER may, at its own cost and expense, procure a suitable replacement tug and place OWNER's Vessel off-hire. OWNER shall provide notice when the Vessel is ready to resume normal operations. If the replacement tug is still on charter hire at that time, the Vessel shall remain off-hire for the duration of the substitute tug charter or a period of 7 days, whichever is less. If OWNER's Vessel remains off-hire due to breakdown or other operational or regulatory issue for a continuous period in excess of fifteen (15) days, or an aggregate period of more than thirty (30) days, CHARTERER may terminate the pertinent Short Form Charter.

12.  **TERMINATION OF SHORT FORM.** Should CHARTERER fail to make any payment or reimbursement due under any Short Form, then OWNER shall have the right to terminate that Short Form, and all provisions contained in this Master Agreement or that particular Short Form shall apply. Additionally, OWNER shall have the right to terminate any Short Form if there is a voluntary or involuntary making of an assignment of a substantial portion of CHARTERER's assets for the benefit of its creditors, the appointment of a receiver or trustee for CHARTERER or for any of CHARTERER's assets, the institution by or against CHARTERER of any type of insolvency proceedings or of any formal or informal proceeding for dissolution, liquidation, settlement of claims against or the winding up of the affairs of CHARTERER, or the making by CHARTERER of a transfer of all or a material portion of CHARTERER's assets or investments.

Termination of this Agreement or any Short Form shall not extinguish the rights, benefits, and obligations of CHARTERER and OWNER that have accrued up to the date of termination.

13.  **OFF-HIRE & DOWNTIME PROVISIONS.** The cumulative downtime allowance shall be twenty-four (24) hours per month.

Should the Vessel break down, require repairs, or become inoperative for any cause *other than* due to the negligence of CHARTERER, the payment of hire for the Vessel shall cease.

Should the Vessel break down, require repairs or become inoperative due to

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

any cause excepted from the provisions of the above paragraph, then the payment of hire shall continue during the period the Vessel is inoperative.

OWNER is allowed the cumulative downtime allowance specified above, including for maintaining and repairing the Vessel, but OWNER shall coordinate such activity/ies with CHARTERER so as to least interfere with the operations of CHARTERER. OWNER may accrue any of the unused monthly cumulative downtime allowance which may be applied to the current month, carried over in subsequent months, or used for routine dry-docking and maintenance and inspection. Such cumulative downtime shall not exceed 12 days at any given time. In the event that time spent in dry dock or undergoing ABS or other inspections or surveys exceeds cumulative downtime, the Vessel shall go off-hire until such time as the Vessel is ready to resume operations within its normal operations area.

OWNER warrants that none of its Vessels employed under this MTCA will be subject to any mandatory or planned maintenance dry dock period for the duration of the Charter.

14.  **EXPENSES FOR ACCOUNT OF CHARTERER.** CHARTERER shall provide the following at its own cost: all fuel, oil and greases, water, replacement cordage, waste oil disposal, liquid bulk tank cleaning, tow lines, cordage, chains, binders, dunnage, replacement bulk hoses and replacement wire rope. Alternatively, CHARTERER may direct OWNER to procure said items, in which case CHARTERER shall reimburse OWNER for the properly documented cost thereof plus a ten (10%) percent handling charge.

CHARTERER agrees to and shall provide and/or pay for bridles and stretch lines, towing and anchor handling gear, and tow lights, day shapes, not including lights and day shapes required for harbor assist/escort services, and flounder plates, provided that CHARTERER, at its option, may direct OWNER to procure any or all of the above, subject to reimbursement by CHARTERER for the costs thereof plus ten percent (10%) for handling.

In addition, CHARTERER shall pay for those additional items set out in any particular Short Form for that particular vessel.

9

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

The Vessel crew will not be required to load or unload cargo or equipment, other than liquid or bulk cargoes subject to the Vessel crane's carrying capacity.

All equipment used in CHARTERER's operations and by its personnel, agents, clients or subcontractors shall be maintained by and for the account of CHARTERER. CHARTERER shall pay, or reimburse OWNER for the cost of all dockage, wharfage, port charges, pilot's fees, permits, licenses and any other charges which may be required for any use, docking or movement of the Vessel, other than any use, docking or movement of the Vessel by reason of the Vessel's breaking down, receiving repairs or becoming inoperative due to any cause other than the negligence of CHARTERER or any cause beyond the reasonable control of OWNER. For the sake of clarity, CHARTERER assumes no responsibility for costs involving Vessel maintenance, repairs or operations.

CHARTERER shall pay any use, sale, transportation, canal, wharf, dock or passage taxes or any other charges, any and all ad valorem taxes assessed on the Vessel (but not income taxes), duties or fees imposed by any government or subdivision thereof during the period of any Short Form subject to this Master Agreement and resulting from the operation and use of the Vessel by CHARTERER, except such as may be required to be paid by reason of any movement or docking of the Vessel because of the Vessel's breaking down, requiring repairs or becoming inoperative. Such payments assumed by CHARTERER are restricted to those arising out of the use of the Vessel by CHARTERER, and CHARTERER shall not be responsible for sales taxes arising out of change of ownership of the Vessel, for use taxes arising out of importation of the Vessel into the state of delivery by the OWNER (Louisiana only), for tonnage taxes assessed or levied by the United States on the Vessel, and income taxes imposed or assessed on OWNER by the United States of America, or any state or territory thereof, which taxes shall be paid by OWNER. CHARTERER will additionally pay any income, gross receipts or like taxes imposed upon the Vessel or OWNER by virtue of its operation in ports or waters claimed by a foreign government to subject the Vessel or OWNER to such taxes.

**War Risk Insurance.** CHARTERER will reimburse OWNER for any war risk premium, additional premium, supplementary call relating to war risk coverage or like charges for such insurance carried by OWNER in accordance

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

with this Master Agreement and assessed by OWNER's underwriters as the result of operation in waters other than U.S. or its (incorporated or unincorporated) territories' waters. Should the Vessel be directed to operate in other waters, OWNER may obtain insurance against confiscation or expropriation by foreign authorities and any premium or charges for such coverage will be paid by CHARTERER.

15. **BILLING.** CHARTERER shall pay the FUNDS (as defined in the Short Form) prior to or upon the Commencement Date stated in the Short Form; the remaining Charter Hire (as set forth in the Short Form) shall be paid no later than the twentieth (20th) day after the Commencement Date. An interest rate of eight (8.0%) per annum shall apply to all past due amounts.

Such invoices may be substantiated by entries in the Vessel log and by such other records, material, and information reasonably available in the normal course of OWNER's business, if requested by CHARTERER.

For the avoidance of doubt, CHARTERER's failure to timely satisfy its payment obligations shall be deemed a material breach and shall be a basis for OWNER to terminate the Short Form and/or this Master Agreement.

16. **VESSEL OPERATIONS.** The whole of the Vessel shall be at CHARTERER's disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle, apparel, furniture, provisions, stores, and fuel.

OWNER shall manage and conduct the business of the Vessel and shall navigate and operate the same in accordance with the directions and orders of CHARTERER, subject to prudent navigational and operational procedures. CHARTERER shall take all reasonable measures necessary and proper to provide safe working conditions with respect to its operations. CHARTERER further shall exercise due diligence to determine whether or not conditions are safe to undertake or continue its operations aboard the Vessel. Notwithstanding any other language in this Charter to the contrary, CHARTERER does not warrant the safety of any berth, port or place to which the Vessel operates or is directed. Notwithstanding anything to the contrary contained herein, the manning, operation, management, maintenance, and repair of CHARTERER's equipment including, but not limited to, any and all property or equipment placed or brought aboard the Vessel for use by CHARTERER or any subcontractor of CHARTERER, shall be under the

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

exclusive control and command of CHARTERER, its servants and/or subcontractors. It is expressly understood and agreed that CHARTERER is solely responsible for determining whether the operation of such equipment and the performance of its operations can be conducted safely and without risk of harm, including, but not limited to, whether the wind, sea and weather conditions are safe for conducting CHARTERER's operations.

It will be the responsibility of OWNER to have updated electronic maritime charts required by class, port state, and/or flag state.

17. **COMPLIANCE WITH APPLICABLE LAWS, RULES, AND REGULATIONS.** OWNER will comply with all applicable laws, statutes, rules, regulations and orders (collectively "Laws") with respect to the navigation of said Vessel imposed by the United States government and/or any of its agencies or territories (incorporated or unincorporated) as such Laws are in effect on the effective date of this Master Agreement.

Should any such Laws change (including but not limited to any change in interpretation of existing Laws) and/or should CHARTERER direct operations to any place where Laws of foreign officials may require alterations, modifications or additions to the Vessel or her fittings and appurtenances or cause an increase in OWNER's cost of operating the Vessel, any expense incurred by OWNER to comply with such Laws, or changes thereto, will be paid by CHARTERER.

Throughout the charter period OWNER shall maintain in a seaworthy condition and keep on board Vessel all maritime equipment which is on board Vessel at time of Vessel delivery, including all primary and auxiliary machinery, propulsion, towing winches, serviceable synthetic hawsers pennants (150-foot sections) and navigation equipment.

18. **LIMITATION OF LIABILITY.** Notwithstanding any other provision to the contrary, except Clauses 24, 26 and 27 below, which take precedence over this Clause 18, OWNER's sole and exclusive liability for any expense, cost, loss, damage or delay sustained by CHARTERER or CHARTERER's client (if any) as a result of the Vessel being prevented from working and/or OWNER's inability to perform marine services for any cause whatsoever shall be limited to the suspension of the Day Rate.

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

19. **MOVEMENT OF VESSEL.** CHARTERER shall direct the movement of the Vessel and shall furnish the master with all requisite instructions and sailing directions. The master shall, however, have the right to determine whether any movement of the Vessel requested should not be undertaken because of danger to the Vessel or those aboard her, and to decline to obey such instructions or directions under such circumstances.

This does not in any way alter the obligations of CHARTERER referred to at the Article "VESSEL OPERATIONS" of this agreement.

20. **DISSATISFACTION WITH CREW.** If CHARTERER shall have reason to be dissatisfied with the conduct of the master or other officer or member of the crew aboard a particular vessel, OWNER shall, upon receiving written notice of CHARTERER's complaint, investigate the same, and if reasonably necessary, make a change in the appointment or employment of that person.

21. **RELATIONSHIP OF OWNER & EMPLOYEES TO CHARTERER.** Neither OWNER nor its employees nor the master nor the members of the crew of the Vessel is or shall be held or construed to be servants, agents or employees of CHARTERER to any extent or for any purpose whatsoever.

22. **STRUCTURAL AND OTHER CHANGES TO VESSEL BY CHARTERER.** CHARTERER shall not make any structural changes or alterations in the Vessel without first securing the written permission of OWNER, which permission can only be given by an officer of the OWNER. CHARTERER shall, however, have the right to place on the Vessel such instruments, motors, furnishings, fittings, and equipment as it shall require for use in its operations, provided only that same do not interfere with the efficient navigation and operation of the Vessel.

Any such instruments, motors, furnishings, fittings, property, or equipment placed aboard the Vessel by CHARTERER shall be and remain the property of CHARTERER and shall be removed by CHARTERER at the termination of the Short Form, prior to redelivery (except as otherwise agreed by the parties). CHARTERER agrees to close any hull, superstructure, or deck openings made specifically for removal of said equipment and to perform such other work as may be necessary to restore the Vessel to its original condition (including internal and external blasting and painting), ordinary wear and tear excepted, from the standpoint of both operation and appearance.

13

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

23. **DERELICT, SALVAGE, AND SALVAGE TOWAGE.** Provided the vessel remained on hire throughout, all derelict, salvage and salvage towage shall be for the benefit of OWNER and CHARTERER, who shall equally share any profit, after deducting all expenses and crew's proportion. General average shall be adjusted, stated, and settled according to the York-Antwerp Rules, 1950, at such port or place in the United States as may be selected by OWNER, and as to matters not provided for by said Rules, according to the laws and usages of the general maritime law.

OWNER, however, shall not be entitled to any salvage with respect to any of the property of CHARTERER, when that property was lost from aboard the Vessel.

24. **OWNER'S INDEMNITY OBLIGATIONS TO CHARTERER.** OWNER shall indemnify, defend, and hold "CHARTERER Group" (that is, CHARTERER, New Fortress Energy Inc., and their affiliated, subsidiary and parent companies, respective officers, directors, employees, agents and representatives) harmless from and against any and all claims, demands, causes of action or suits, and damages, including attorneys' fees and costs, for personal injury or death (including any survivor's action) brought by or on behalf of any employees or representatives of OWNER and which are caused in whole or in part by OWNER or the Vessel's master or crew during the operation, navigation, or management of the Vessel under this Agreement. All of the aforementioned shall apply whether occasioned, caused, or brought about in whole or in part by the negligence, fault, or strict liability of CHARTERER Group, their agents, or employees.

OWNER shall indemnify, defend, and hold CHARTERER Group harmless from and against any and all claims for damage to, or loss of, the Vessel and its equipment or other property of OWNER's, even if such damage or loss results in whole or in part from the negligence, fault, or strict liability of CHARTERER Group.

OWNER shall cause its applicable insurance to be endorsed to provide contractual liability coverage, with waiver of subrogation in favor of CHARTERER Group, solely to the extent necessary to accomplish these defense and indemnity obligations.

14

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

25.    **CHARTERER'S INDEMNITY OBLIGATIONS TO OWNER.**
CHARTERER shall indemnify, defend and hold OWNER, the Vessel, and their affiliated, subsidiary and parent companies, respective officers, directors, employees, agents and representatives ("OWNER Group") harmless from and against any and all claims, demands, causes of action or suits, and damages, including attorneys' fees and costs, for personal injury or death (including any survivor's action) brought by or on behalf of any agents, employees, or representatives of CHARTERER Group, or any contractor or subcontractor of CHARTERER Group, or any third-party invited aboard the Vessel by CHARTERER. All of the aforementioned shall apply whether occasioned, caused, or brought about in whole or in part by the negligence, fault, or strict liability of OWNER Group or by any condition or unseaworthiness of the Vessel.

CHARTERER shall indemnify, defend and hold OWNER Group harmless from and against any and all claims for damage to, or loss of, any cargo, property or equipment owned, leased, or utilized by CHARTERER Group or its contractors, subcontractors, or invitees, or which has been or is to be brought aboard the Vessel by CHARTERER Group, or its contractors, subcontractors, or invitees, and whether or not such property is affixed to the Vessel, whether being towed by the Vessel or not (hereinafter referred to as "Charterer Equipment"), howsoever caused and even if resulting in whole or in part from the negligence, fault, or strict liability of OWNER Group, or by any condition or unseaworthiness of the Vessel.

CHARTERER further agrees to be responsible for and to indemnify, defend, and hold OWNER Group harmless from and against any claims, demands, causes of action or suits, damages and expenses (including attorneys' fees and costs) of whatever nature, brought by or on behalf of any third party and caused by Charterer Equipment.

CHARTERER shall cause its applicable insurance to be endorsed to provide contractual liability coverage, with waiver of subrogation in favor of OWNER Group, to the extent necessary to accomplish these defense and indemnity obligations.

26.    **THIRD PARTIES AND POLLUTION CLAIMS.** The Parties agree that any pollution claims, losses or damages, and any claims, losses or damages asserted by or on behalf of any third parties against either or both OWNER

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

and/or CHARTERER shall be addressed at law.

27.   **INSURANCE OBLIGATIONS.** OWNER and CHARTERER agree to obtain and maintain insurance with reputable underwriters, on recognized insuring forms, the type and amount of coverages stated at Attachments B and C of this agreement.   Such insurance shall not be cancelable unless at least thirty (30) days written notice is given to the non-cancelling party.   OWNER and CHARTERER agree to provide, upon request, evidence that the required coverages are in full force and effect.

28.   **BINDING NATURE OF AGREEMENT.** This Master Agreement shall extend to and bind the respective successors and assigns of the parties hereto, but neither party hereto shall assign or transfer to any third party this Master Agreement, or any right or obligation hereunder, without the prior written consent of the other party hereto.

29.   **AGREEMENT NOT A DEMISE CHARTER.**   Nothing herein contained shall be construed as a demise of the Vessel to CHARTERER.

30.   **NOTICES.** Notices provided for herein shall be deemed to have been given when emailed to CHARTERER's email address as provided for on the first page of this Master Agreement. Any such notices shall be given to OWNER when sent via email to legal@chouest.com. Either party may change its address for its receipt of notices hereunder by giving notice of such change to the other.

31.   **GOVERNING LAW.** This Master Agreement shall be construed, and its performance shall be determined, in accordance with the general maritime laws of the United States, and where maritime law does not provide the rule of decision, by Texas law, exclusive of either regime's conflicts of law principles.

32.   **ADVICE OF COUNSEL.**   Each party to this Master Agreement represents and warrants to each other that such party has read and fully understands the terms and provision hereof, has had an opportunity to review this Master Agreement with legal counsel, and has executed this Agreement based upon such party's own judgment and advise of independent legal counsel (if sought).

33.   **DISCLAIMER:  MASTER AGREEMENT HEADINGS.** The headings used in this agreement are for convenience of reference only and are not

16

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

intended to constitute any part of the body or text of this Master Agreement.

34. **NONDISCRIMINATION PROVISION.** This Master Agreement is subject to the nondiscrimination provisions of Executive Order 11246, Section 202, No. 1-7. EXECUTED in duplicate as of the day and year first above written.

35. **NO CONSEQUENTIAL DAMAGES.** Notwithstanding the provisions of the Articles "OWNER'S INDEMNITY OBLIGATIONS TO CHARTERER" and "CHARTERER'S INDEMNITY OBLIGATIONS TO OWNER" of this Master Agreement, neither party shall be liable to the other party for any indirect or consequential damages, including but not limited to loss of use, loss of profits, loss of production, cost of delay, or cost of cover, howsoever or by whomsoever such damages may be caused, provided that OWNER's entitlement to compensation, reimbursement, or other amounts as required by this Master Agreement or a Short Form shall never be deemed covered by this Article.

36. **PROHIBITION OF LIEN CLAUSE.** CHARTERER shall have no right, power or authority to create, incur or permit to be imposed upon the Vessel any liens whatsoever, and shall so notify, orally and in writing, any and all persons or entities supplying, providing or delivering any and all materials, provisions, supplies, personnel and other "necessaries" to the vessel that CHARTERER has no such right, power or authority and that said persons or entities are relying solely and exclusively upon the credit of CHARTERER and not upon the credit of OWNER or the Vessel. If any liens are nevertheless imposed, or claimed to be imposed, on the Vessel as a result of CHARTERER's actions or inactions, or as a result of any persons or entities supplying, providing or delivering any and all materials, provisions, supplies, personnel and other "necessaries" to the Vessel by, for, or at the request or direction of CHARTERER during the term of this Master Agreement, CHARTERER shall immediately secure the release of the Vessel from any such liens and from any arrest, attachment, or seizure that may arise in conjunction with such liens, and (i) CHARTERER shall protect, defend, indemnify and hold OWNER and the Vessel harmless from and against any and all claims asserted by the holder or holders or purported holders of such liens and, without prejudice to the foregoing, (ii) CHARTERER shall also pay any and all legal fees or other costs of defense as may be incurred by OWNER in securing the release of the Vessel and/or in defending any such claim.

17

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

Notwithstanding any other provision of this Charter, Owner shall have the right to incur any indebtedness, which, in its sole discretion, it deems necessary with respect to the Vessel and/or Owner's or its affiliates operations. This shall include, but is not limited to, Owner's right to execute in connection with any such indebtedness a First Preferred Ship Mortgage, or other mortgage howsoever termed, plus any and all associated financing and other security documents, all of which may have the effect of imposing a mortgage, security interest and/or lien (or other functional equivalent) on the Vessel and/or require the assignment or pledge of Owner's receivables pursuant to the Charter. Charterer acknowledges that it shall have no right to either approve or oppose any selection made by Owner pursuant to this section, except that any alteration in payment obligations must be received and acknowledged by CHARTERER before taking effect.

37. **FORCE MAJEURE CLAUSE.** Each party to this Master Agreement shall be excused from complying with certain obligations of this Agreement, except for the payment of accrued charter hire and any other monies due, if and only to the extent that performance of such obligations is prevented by acts of God, hurricanes (designated as such by the U.S. Weather Bureau), cyclones, riots, civil commotions, criminal or terrorist activities, strikes or industrial disputes (except for strikes and industrial disputes involving OWNER or CHARTERER's personnel), requisitions, restraints or prohibitions by any government or division thereof having jurisdiction over the parties hereto or by any other similar act or cause which is reasonably beyond the control of such party and not caused in whole or in part by such party's negligence (herein referred to in this Agreement as 'Force Majeure'). The parties' respective obligations shall be suspended during the Force Majeure period, which period shall expire when the parties are able to resume contract performance. For the sake of clarity, once Owner's Vessel is ready and able to resume normal operations, the Force Majeure period shall end, even if the port otherwise remains closed.

It is agreed that any party claiming Force Majeure shall give full notice and details of the Force Majeure in writing to the other party as promptly as possible after its occurrence. In such cases only, the obligations which are incapable of performance because of the Force Majeure shall be suspended during the continuance of the Force Majeure.

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

38. **MULTIPLE COUNTERPARTS.** This Master Agreement may be executed in two or more identical counterparts, each of which for all purposes is to be deemed an original and all of which constitute collectively one agreement. This Master Agreement may be executed by electronic signature, which shall be legal, valid and binding for all purposes, and the party so signing shall provide an original signature as soon as practicable thereafter.

39. **ENTIRE AGREEMENT.** This Master Agreement constitutes the entire agreement of the parties relating to the subject matter addressed in this Master Agreement. This Master Agreement supersedes all prior communications, contracts, or agreements between the parties with respect to the subject matter addressed in this Master Agreement, whether oral or written.

40. **CONFIDENTIALITY.** This Agreement, each executed Short Form, all drafts of the foregoing, and all information or data provided or obtained in connection with the performance of this Charter Party is and shall remain confidential and not be disclosed without the prior written consent of the other party. The parties shall use their best efforts to ensure that such information shall not be disclosed to any third party by any of their sub-contractors, employees and agents. This Clause shall not apply to any information or data that has already been published or is in the public domain. All information and data provided by a party is and shall remain the property of that party. Notwithstanding the foregoing, each party may disclose such confidential information (i) to its and its affiliates' officers, directors, employees, contractors, subcontractors, lenders, and professional advisors who have a need to know such information in connection with this Agreement and/or a Short Form, (ii) to the extent such disclosure is required by applicable laws or regulations or by order of any governing governmental authority, and (iii) to the extent done in conjunction with any dispute resolution between the parties.

"OWNER"

by: _Gary Houst_

Print name: _GARY C HOUST_

title: _AUTHORIZED SIGNATORY_

19

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

**"CHARTERER"**

NFEnergia LLC

_____

by: *Chris Guinta* _____

Print name:_____ **Chris Guinta** _____

title: _____ **Authorized Signatory** __

**Attachments:**
**Attachments A, B, and C**
**Exhibit A**

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

# ATTACHMENT A
## TO
## MASTER TIME CHARTER AGREEMENT

Listed below are a non-exhaustive list of Nautical Venture, L.L.C.'s affiliates as are referenced in this Master Agreement. When one of these affiliated companies is set out as the OWNER on any particular "Short Form," that affiliate will control and govern as OWNER for that particular vessel's charter and for purposes of the Master Agreement as it pertains to that Short Form.

21

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

1. 4 Boats Holdings, LLC
2. Alpha Marine Services, L.L.C.
3. Alyssa Chouest, LLC
4. Benchmark Marine Services, L.L.C.
5. Beta Marine Services, L.L.C.
6. Blue Angel Stim, LLC
7. Blue Dolphin Frac, LLC
8. Boat 2011 Number 1, L.L.C.
9. Boat 2011 Number 2, L.L.C.
10. Bongo, LLC
11. C-Fast, LLC
12. C-Lift Holdings, L.L.C.
13. C-Logistics, L.L.C.
14. CC Tugs, LLC
15. Cameron Tugs, LLC
16. Charlie Clarence, LLC
17. Choben, LLC
18. Chouest Inn Angola, Ltda.
19. Eland, LLC
20. Escort Vessels, LLC
21. Fantasy Island, LLC
22. Fast Boats, LLC
23. Fast Vessels, LLC
24. Galliano Marine Service, L.L.C.
25. Gemsbok, LLC
26. Gary Rook, LLC
27. Holiday, L.L.C.
28. Holiday Offshore, L.L.C.
29. Hull No. 298, LLC
30. Island Ventures, L.L.C.
31. Island Ventures II, L.L.C.
32. Island Ventures 3, L.L.C.
33. Island Ventures 4, L.L.C.
34. Island Ventures 5, L.L.C.
35. Island Ventures 6, L.L.C.
36. Island Ventures Subsea, L.L.C.
37. Jack Russell, LLC
38. Kudu PSV, LLC
39. Legacy Leader, L.L.C.
40. Marlin Marine, L.L.C.
41. Mega Marine, L.L.C.
42. Nautical Power, L.L.C.
43. Nautical Solutions, L.L.C.
44. Nautical Ventures, L.L.C.
45. Offshore Service Vessels, L.L.C.
46. Plain Stim, LLC
47. RA Offshore, LLC
48. Reel Pipe, L.L.C.
49. Russell Adams, LLC
50. Stim Star IV, LLC
51. Stim Tugs, LLC
52. Team Marine, L.L.C.
53. Ted Juan, LLC
54. Venture Tugs, LLC

152698.06504/153013758v.1

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

ATTACHMENT B
TO
MASTER TIME CHARTER AGREEMENT

## OWNER'S INSURANCE

OWNER shall, at all times during the pendency of this Agreement, provide, pay for and maintain in full force and effect with responsible insurance carriers, the following types and amounts of insurance and such additional insurance as OWNER reasonably considers prudent. OWNER shall provide a Certificate of Insurance outlining the coverages below before the Vessel departs for Puerto Rico or upon request, whichever is earlier.

1. Vessel hull and machinery per the American Institute Hull Clauses (June 2, 1977) or equivalent, covering fire, explosions and marine perils, together with full four-fourths collision and running down clauses in an amount equal in an amount sufficient to cover the replacement value of the Vessel (including costs and salvage), said coverage to include collision and tower's liability. This is not to include coverage of CHARTERER's property, or any property used or brought aboard the Vessel for CHARTERER's operations.

2. Protection and Indemnity coverage to a limit of not less than **$1,000,000.00** each accident or occurrence, including but not limited to coverage for property damage, crew cover, wreck removal expenses, pollution (see clause 3 below), and/or third party claims arising from death or personal injury or from loss of or damage to property and with extended contractual liability coverage including coverage for indemnity, defense, and hold harmless obligations assumed by OWNER under this Agreement. The cover shall include liability for collision and damage to fixed and floating objects.

3. Pollution liability coverage with limits of not less than **$10,000,000**. OWNER is also responsible for securing and maintaining any applicable Certificates of Financial Responsibility (COFRs).

4. Automobile liability coverage for master and crew operating any motor vehicle(s) In Puerto Rico with a liability limit of at least **$1,000,000**.

23

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

5. Workman's Compensation and Employer's Liability Insurance, with limits of not less than **$10,000,000.00** each occurrence for employment subject to Worker's Compensation Acts, liability under the Jones Act, Death on the High Seas Act and/or in compliance with federal Longshoremen's and Harbor Worker's Compensation Act endorsed for operations outside Puerto Rican territorial waters or on the Outer Continental Shelf under any laws or acts of any nation, state or government entity, unless covered by another policy required hereunder.

6. Unless provided in the Protection and Indemnity coverage, Comprehensive General Liability Insurance, including contractual liability coverage for OWNER's obligations hereunder to defend and/or indemnify CHARTERER, with limits of not less than **$10,000,000.00** each occurrence. This insurance shall contain a deletion of any watercraft exclusion or any other exclusion which may be applicable to OWNER's or CHARTERER's operations aboard the Vessel, and also a deletion of any "employee exclusion" for claims made by OWNER's employees or borrowed employees against CHARTERER.

7. War/Political Risk/Kidnapping and Ransom coverage with liability limits of no less than $1,000,000, with premiums reimbursed by CHARTERER for the duration of the Charter.

8. Excess/Bumbershoot, with liability limits of not less than **$25,000,000.00**, except for pollution coverage for which the liability limit shall be not less than **$100,000,000**. The Excess/Bumbershoot shall sit atop the applicable underlying limits above (i.e., P&I (vessel/crew) including Collision & Towers Liability, Vessel Pollution, General liability including contractual liability and applicable employers liability (State Act and USL&H), Auto liability, and War/Political/Kidnapping and Ransom coverage.

9. The limits above are only minimum limits.

Solely to the extent of the risks within OWNER's defense and indemnity obligations contained at the Article "OWNER'S INDEMNITY OBLIGATIONS TO CHARTERER" of this Agreement, CHARTERER shall be considered an additional insured under these policies (except number 5 above) with a waiver of subrogation (including number 5 above) in favor of CHARTERER. Notwithstanding the

24

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

foregoing, CHARTERER Group shall be named as an additional insured under OWNER's P&I policy, war/political risk/kidnapping and ransom insurance, and excess/bumbershoot policy relating thereto but only to the extent of the risks within OWNER's defense and indemnity obligations in the Agreement.    When CHARTERER is to be an additional assured, the policies referenced hereinabove shall be considered primary as to all other insurance available to CHARTERER, irrespective of any "other insurance," "escape," or "excess" clauses contained in such policies. All deductibles are to be borne by the party which is obligated to provide the applicable coverage.

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

ATTACHMENT C
TO
MASTER TIME CHARTER AGREEMENT

## CHARTERER'S INSURANCE

CHARTERER shall, at all times during the pendency of this Agreement, provide, pay for and maintain in full force and effect with responsible insurance carriers, the following types and amounts of insurance and such additional insurance as CHARTERER reasonably considers prudent.

1.   Insurance to cover any risk or exposures under the worker's compensation, or other laws of any nation, state or other governmental entity and/or regulations of any authorities having jurisdiction over CHARTERER's operations.

2   Employer's Liability Insurance, with limits of not less than **$10,000,000.00** each occurrence for employment subject to Worker's Compensation Acts, endorsed for operations outside Puerto Rican territorial waters, and for employment subject to the Puerto Rico Workmen's Accident Compensation Act for operations within Puerto Rican territorial waters.

3.   Comprehensive General Liability Insurance, including products/completed operations coverage and contractual liability coverage for CHARTERER's obligations hereunder to defend and/or indemnify OWNER, with limits of not less than **$10,000,000.00** each occurrence. This insurance shall contain a deletion of any watercraft exclusion or any other exclusion which may be applicable to OWNER's or CHARTERER's operations aboard the Vessel, and also a deletion of any "employee exclusion" for claims made by CHARTERER's employees or borrowed employees against OWNER.

4.   Excess/Bumbershoot, with liability limits of not less than **$25,000,000.00**. The Excess/Bumbershoot shall sit atop the applicable underlying limits above. The limits required of CHARTERER within Attachment C are able to be achieved using a combination of primary and excess liability limits.

Solely to the extent of the risks within CHARTERER's defense and indemnity obligations contained in the Article "CHARTERER'S INDEMNITY

26

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

OBLIGATIONS TO OWNER" of this Agreement, OWNER Group shall be considered an additional assured under these policies (except numbers 1 and 2 above) with a waiver of subrogation (including numbers 1 and 2 above) in favor of OWNER Group. When OWNER Group is to be an additional assured, the policies referenced hereinabove shall be considered primary as to all other insurances available to OWNER Group irrespective of any "other insurance," "escape," or "excess" clauses contained in such policies. All deductibles are to be borne by the party which is obligated to provide the applicable coverage.

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

EXHIBIT A
TO
MASTER TIME CHARTER AGREEMENT

## Short Form Time Charter Agreement

This SHORT FORM TIME CHARTER AGREEMENT ("Short Form") is entered into as of this ___ day of _____, 2025, by and between **Nautical Ventures, LLC** ("OWNER"), owner of the vessel described below ("Vessel,"), and **NFEnergia, LLC** ("CHARTERER").

Pursuant to the terms of that certain Master Time Charter Agreement dated _____ 2025, by and between OWNER and CHARTERER, the terms of which the parties herein incorporate by reference in its entirety, OWNER agrees and does hereby time charter the Vessel on the following terms:

### Description of Vessel

| | |
|---|---|
| Name | |
| Official Number | |

### Commencement, Fixed Term, Optional Extension Periods, and Rates

| | |
|---|---|
| Commencement Date | |
| Length of Fixed Term | |
| Rate During Fixed Term | |
| Paykey or Purchase Order Number | |
| Optional Extension Periods* | |

*CHARTERER is granted the option of extensions provided CHARTERER gives at least sixty (60) days' written notice to OWNER prior to the termination of the primary term or any extension.

### Area of Operations.

| | |
|---|---|
| CHARTERER shall restrict its use of the Vessel to: | |

28

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

| | |
|---|---|
| Port of Delivery | |
| Port of Redelivery | |
| Miscellaneous Expenses and Charges for Account of CHARTERER. | |
| Subsistence Charges for Charterer's Account | |
| Charterer's Billing Information (include address, contact person, phone, and fax) | |
| Misc. Provisions (if any) | |

29

Docusign Envelope ID: BE2AE4B5-D01C-4A2A-908C-5C4513B4055F

**Agreed to and accepted by:**

**"OWNER"**                              **"CHARTERER"**

by: _____             by: _____

printed                                  printed
name: _____             name: _____


its: _____             its: _____