IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CAPT. JAKE ELMSTROM, et al.,**  Plaintiffs  v.  **NFENERGIA LLC, et al.**  Defendants | CIVIL NO.: **25-1462 (SCC)**  RE: COMPLAINT; PRELIMINARY AND PERMANENT INJUNCTION; DECLARATORY JUDGMENT |

### EMERGENCY MOTION FOR EXPEDITED HEARING TO LIFT TEMPORARY RESTRAINING ORDER

**TO THE HONORABLE COURT:**

**COMES NOW** the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public–Private Partnerships Authority ("P3A"), through their undersigned counsel, and respectfully **STATE** and **REQUEST as follows**:

1. On September 26, 2025, this Court issued a Temporary Restraining Order ("TRO") requiring NFEnergia LLC ("NFE") to conduct all liquefied natural gas ("LNG") maneuvers in San Juan Bay with four 80-ton escort-rated tugs. The TRO is expressly set to remain in effect for **fourteen (14) days**, i.e., until October 10, 2025.

2. At the time the TRO was entered, the Court intended it as a temporary safeguard to preserve safety while the Parties continued discussions. In practice, however, the TRO has completely halted LNG deliveries to Puerto Rico's northern region. NFE has informed both PREPA and P3A that the four 80-ton escort-rated tugs are unavailable for the foreseeable future due to "high demand in the Jones Act market" for such vessels. Thus, there are currently no viable alternatives within the TRO's 14-day term, nor for the foreseeable future.

3. Consequently, the TRO functions, not as a temporary safety measure, but as a complete embargo on LNG fuel into San Juan Bay for at least two (2) weeks. Puerto Rico cannot endure that outcome.

4. NFE has also represented that it has engaged the three most experienced harbor pilots on the Island, with over 20 years of experience, each of whom have been involved in the LNG maneuvers required today, and who are prepared to testify that these operations can be performed safely and without risk to the People of Puerto Rico.

5. Units 5&6 of the San Juan power plant and the 14 temporary generation units located at the San Juan and Palo Seco sites use LNG as their primary fuel source. Collectively, these power plants supply electricity to the entire Island along with all critical facilities such as hospitals, water pumping systems, airports, and government facilities.

6. The San Juan terminal does not maintain reserve tanks for LNG storage; rather, the vessel moored at the pier serves both as the transport and the reservoir. The vessel currently docked has already been depleted, and no replacement vessel has been permitted to enter. Genera PR, LLC ("Genera"), as the operator of the generation units, has already been compelled to operate the San Juan and Palo Seco on alternate fuel, diesel, while units without dual-fuel capability have been shut down.

7. It is worth noting that while there are some generation units that are

technically dual-fuel capable, extended diesel use entails extraordinary operational and reliability risks. Diesel use, compared to LNG, accelerates wear on turbines, increases the likelihood of forced outages, and increases the need for scheduled maintenance. Diesel combustion also produces significantly higher emissions, which may impact the surrounding communities by deteriorating local air quality, aggravating respiratory conditions, and/or placing an additional burden on already vulnerable populations living near the power plants.

8. The fragility of Puerto Rico's system is no longer hypothetical. On September 29, 2025, a single unit outage at the Aguirre power plant left more than **150,000 families without power**. This event demonstrated how the loss of just one unit can cascade into massive service interruptions. If LNG deliveries continue to be blocked, the consequences could be exponentially worse. San Juan and Palo Seco's LNG units provide essential capacity to the Island's most densely populated area. If forced to continue on diesel or be forced to shut down for lack of diesel capability, Puerto Rico faces the likelihood of blackouts that will directly endanger lives, disrupt medical facilities, water service, and communications, and destabilize the economy.

9. For the thousands of families who are not fortunate enough to own private generators or solar panels, a blackout means the immediate loss of groceries and other basic goods, and for the bedridden, the elderly, and those who rely on refrigeration for critical medicines, it can mean a direct threat to life.

Elderly homes and care centers, already operating under fragile conditions, would be left without the minimum power needed to keep their residents safe. Small business owners, who make up the backbone of Puerto Rico's economy, would face the loss of perishable merchandise and prolonged closures, consequences that ripple outward into lost jobs, reduced income for families, and further economic hardship across the Island.

10. The Government and people of Puerto Rico therefore face an imminent and irreparable crisis. The TRO's 14-day duration guarantees that LNG will be unavailable until October 10, even though the Court's next scheduled hearing is October 2. Puerto Rico cannot wait until Thursday, much less until October 10. Every additional day without LNG increases the risk of catastrophic blackouts across the Island.

11. Federal Rule of Civil Procedure 65(b) authorizes modification or dissolution of a TRO where changed circumstances or the public interest so requires. See <u>American Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration</u>, 771 F.Supp.3d 717, (2025). When temporary restraining order (TRO) will adversely affect public interest, court may withhold relief until final determination of rights of parties, though postponement may be burdensome to plaintiff. *Id.*

12. Here, the changed circumstance is decisive: the four 80-ton tugs required by the TRO are not available for the foreseeable near term, making

compliance impossible and LNG deliveries impossible. Combined with the immediate risk of blackouts, the balance of equities and the public interest overwhelmingly demand relief.

13.   Moreover, NFE has also represented to PREPA and P3A's counsel that it has engaged the three most experienced harbor pilots on the Island, with over 20 years of experience, each of whom have been involved in the LNG maneuvers required today, and who are prepared to testify that these operations can be performed safely and without risk to the People of Puerto Rico.

14.   PREPA and P3A respect the Court's concern for maritime safety. But a safety requirement that cannot be met, and which thereby prohibits all fuel deliveries, is untenable. The Government of Puerto Rico must have the ability to supply its citizens with electricity. The only way to do so is to permit LNG carriers to enter San Juan Bay without delay under safe, alternative protocols.

15.   PREPA and P3A advise the Court that they have fact witnesses available to testify today, including: (i) system operations personnel who will confirm the depletion of LNG and current reliance on diesel at the San Juan and Palo Seco power plants; (ii) engineering staff who will explain the mechanical, environmental, and reliability risks of extended diesel use and forced outages; and (iii) officials prepared to testify regarding the public health and safety impacts of widespread blackouts, including risks to hospitals, water systems, and telecommunications. These witnesses are ready to appear immediately, whether

in person or remotely, to provide the Court with real-time evidence of the imminent and irreparable harm Puerto Rico faces.

**WHEREFORE**, PREPA and P3A respectfully and urgently request that this Honorable Court grant this Emergency Motion, convene an expedited hearing **today, after hours if necessary**, or tomorrow morning, and immediately lift or modify the TRO entered on September 26, 2025, so that LNG deliveries to San Juan Bay may resume without further delay.

**RESPECTFULLY SUBMITED**

In San Juan, Puerto Rico this 30th day of September 2025.

**GONZÁLEZ & MARTÍNEZ**
1509 López Landrón, Bldg.
Seventh Floor
San Juan, P.R. 00911
Tel.: (787) 274-7404


**S/JUAN M. MARTÍNEZ NEVÁREZ**
**JUAN M. MARTÍNEZ NEVÁREZ**
USDC-PR 221108
E-mail: jmartínez@gmlex.net

**S/MIRELIS VALLE CANCEL**
**MIRELIS VALLE CANCEL**
USDC-PR 305703
E-mail: mvalle@vcprlaw.com