THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CAPT. JAKE ELMSTROM et al.,<br><br>Plaintiff<br><br>V.<br><br>NFENERGIA LLC, A NEW FORTRESS ENERGY SUBSIDIARY et al.,<br><br>Defendants | CIVIL NO.:   25-1462 (SCC) |

**MOTION INFORMING STATUS OF VOYAGE OF TUGS TO PUERTO RICO AND OTHER MATTERS**

TO THE HONORABLE COURT:

COME NOW plaintiffs, through the undersigned attorney, and very respectfully inform the Court of the following matters:

**A. STATUS OF THE TRANSFER OF TUGS TO PUERTO RICO**

1. Eleven days ago, plaintiffs and NFE reached an interim agreement which included NFE bringing to Puerto Rico two 70+ metric ton bollard bull escort-rated tugs, and having them in Puerto Rico for a minimum period of 45 days. See docket 124, p. 1, ¶ 1. The two tugs NFE informed plaintiffs it would bring to Puerto Rico are the Ava M. McAllister and the James D. Moran, and ten days ago NFE produced bollard certificates for both:





The names of the tugs are on the bollard certificates attached hereto as **Exhibits 1** and **2**.

2. As of 11:00 AM today the James D. Moran continued in New York, while the Ava M. McAllister continued in South Carolina:



3.     Plaintiffs do not know if the two tugs will be in Puerto Rico by the estimated arrival date of November 1, 2025, as informed by NFE. See docket 124, p. 1, ¶ 1 first sentence.

B. **STATUS OF ADDITIONAL SIMULATIONS**

1.     Separately, plaintiffs and NFE stipulated that:

> In order to evaluate safe tug configurations and capabilities for the safe movement of LNG vessels into and out of the San Juan Bay, all San Juan Bay pilots shall be afforded the opportunity to attend and participate, at NFE's sole expense, simulations <u>at a mutually agreeable location</u> during the pendency of the stay contemplated in paragraph 9 <u>provided the venue is a certified full mission bridge simulator following industry standards and has a properly vetted San Juan Bay Harbor database, properly vetted LNG tanker models, and properly vetted tugboats as proposed by NFE.</u> currently scheduled for late October and early November 2025. <u>The terms of such simulations, including the attendees, shall be negotiated in good faith by the parties</u>. Plaintiffs may have in attendance, at their expense, their expert witness, Mr. George Burkley and/or any other expert they may choose to invite. NFE may have in attendance any experts of its choosing. <u>All experts shall be afforded the opportunity to review simulation data, validation data, and other relevant information that they may request</u>. The Captains of the tugs which will be assisting in the movement of the NFE LNG ships may attend the simulations. The Captains of the LNG ships that will be participating in the movements in the San Juan Harbor may attend the simulations.

See docket 124, p. 3, ¶ 6 (underline added).

2.     Despite the agreement to discuss and agree on the location and the terms of the simulation, on October 15, 2025, counsel for NFE sent counsel for plaintiffs an email "following up" on a prior email inviting the pilots to simulations in Madrid, Spain. See **Exhibit 3**, p. 4, email at bottom of page sent October 5, 2025 11:53 AM. The prior email was dated September 28, 2025, and while sent to the pilots while the parties were actively litigating the preliminary injunction, the email was not copied to any of the attorneys for plaintiffs. See **Exhibit 3**, p. 5, bottom of page. While this was brought to the attention of counsel for NFE, NFE responded that none of the attorneys needed to be copied because "the parties' attorneys are not needed at the simulation." See **Exhibit 3**, p. 2.

3

       3.       In addition to the above, NFE's decision to proceed with the simulations at Madrid seemed written in stone despite the explicit agreement that the parties would discuss and agree to their location. This was brought up at the October 9, 2025 hearing when NFE represented it had already paid or at least committed to paying $300,000 to reserve dates for the simulation in Spain, and at the time NFE agreed to discuss the location with the pilots, and was only interested in drafting a stipulation that did not exclude the possibility of the simulations being conducted in Spain. Given that NFE dispensed with the discussions, and in anticipation of its claims that it had already committed $300,000 to the facility in Madrid, counsel for plaintiffs requested, in the interests of transparency and good faith, documents showing when NFE bound itself to pay the $300,000. See **Exhibit 3**, p. 4, items 1 and 2. Plaintiffs also requested NFE share those documents that explained what were the simulations NFE intended to run at Madrid, what datasets would be used, and how the data and simulations would be verified. See **Exhibit 3**, p. 4, item 3. NFE responded stating that the request for documents related to NFE's payment to Siport 21 is far outside the scope of the stipulation. See **Exhibit 3**, p. 2, bottom paragraph, first sentence. Furthermore, and despite NFE's apparent issues with the prior simulations run at Seaman's Church Institute in Houston, NFE stated that while the Madrid simulations "do not yet include the two tugboats being sent to San Juan," NFE felt this fine since Seaman's Church Institute simulations "merely used generic 60 and 80 MT bollard pull tugs." See **Exhibit 3**, p 3, item 2.

       4.       In an effort to get everyone on the same page regarding the next simulation study (regardless of where performed), last Friday counsel for plaintiffs sent counsel for NFE a letter sharing a suggested framework for the parties to follow to ensure that the new study is of use to all stake holders. The letter sent is attached as **Exhibit 4**. The letter also included a written overview of the simulation prep and validation prepared by plaintiffs' expert Mr. George B.

Burkley (which is attached as **Exhibit 5**). Counsel for plaintiffs further stated to NFE that Mr. Burkley was available to meet virtually with NFE's expert, and invited counsel to reach out to plaintiffs' legal team to schedule this meeting. See Exhibit 4, p. 1, first paragraph. Counsel for NFE responded that the letter needed to be discussed, and that while he had an appointment he had to attend to, he would be back in about 1.5 hours. See **Exhibit 6**, p. 1, bottom email. Counsel for plaintiffs responded that as soon as he got back to let counsel know in order to circulate a Zoom link. See **Exhibit 6**, p. 1, top email. Plaintiffs have not heard back from NFE.

The interim agreement reached by the parties on October 9, 2025, has many moving parts, and requires both sides to be diligent moving forward. While at the moment plaintiffs request no specific relief from the Court, plaintiffs do understand that the Court needs to be aware of what has transpired (and of course what not has transpired).

WHEREFORE it is respectfully requested that this Honorable Court take note of the above.

In San Juan, Puerto Rico, this 20th day of October, 2025.

I HEREBY CERTIFY that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice of its filing electronically to the attorneys of record.

    Respectfully submitted,

    **S/ FRANCISCO E. COLÓN-RAMÍREZ**
    FRANCISCO E. COLÓN-RAMÍREZ, ESQ.
    Bar No.: 210510
    E-mail: fecolon@colonramirez.com
    **COLÓN RAMÍREZ LLC**
    PO Box 361920
    San Juan, PR 00936-1920
    Tel.: (787) 425-4652
    Fax: (787) 425-4731

**S/GIANCARLO FONT GARCÍA**
GIANCARLO FONT GARCÍA
USDC-PR NO. 210612
gfont@drcprlaw.com
**GIANCARLO FONT**
306 Calle Coll y Toste
San Juan, PR 00918
TEL. (787)622-6999
(787)647-1876

**S/ LUIS MANUEL PAVÍA-VIDAL**
LUIS MANUEL PAVÍA-VIDAL
USDC-PR NO. 227205
pavialaw@gmail.com
URB. BALDRICH
COLL Y TOSTE ST. #306
SAN JUAN, PR 00918
TEL. (787)622-6999

**S/ MIGUEL A. NAZARIO, JR.**
MIGUEL A. NAZARIO,JR.
USDC PR No. 214502
e-mail: man@nblawpr.com
**NAZARIO BRICEÑO LAW OFFICES, LLC**
Cervantes 82,
San Juan, Puerto Rico 00907
Tel. (787)449-2717