THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CAPT. JAKE ELMSTROM et al.,<br><br>Plaintiff<br><br>V.<br><br>NFENERGIA LLC, A NEW FORTRESS ENERGY SUBSIDIARY et al.,<br><br>Defendants | CIVIL NO.:   25-1462 (SCC) |

**MOTION INFORMING STATUS OF SIMULATION STUDY
AND REQUESTING COURT ORDER**

TO THE HONORABLE COURT:

COME NOW plaintiffs, through the undersigned attorney, and very respectfully inform the Court of the following matters:

**A.     STATUS OF THE SIMULATIONS**

1.     On Monday, October 21, 2025, the attorneys for the parties held a conference call during which NFE informed its expert would be Captain Christopher Bordas, who is a retired pilot and is a ship handling and pilotage expert. NFE did not disclose then a simulations expert.

2.     On October 23, 2025, Mr. George Burkley, who is plaintiffs' expert (and is an expert in simulations) held a telephone call with Mrs. Natalia Lopez (who informed being a consultant from NFE and a waterway suitability expert), Captain Christoper Bordas, Captain Fulgencio Anavitate (retired harbor pilot), Raul Redondo (director of maneuvering and nautical studies at Siport21, Madrid) and Carlos Cal, head of training programs at Siport21. See **Exhibit 1**, Transcript of call shared by counsel for NFE, pp. 2-5.

3.      During the call, Mr. Burkley explained that to the extent NFE identified potential hazards in the Waterway Suitability Assessment (WSA) it previously prepared, it was best to start with the WSA metrics already used, then look at the new scenario with the pilots and do a roundtable. Mr. Burkley also mentioned that risk assessment includes developing a probability matrix that built upon hazard identification (HAZID), which NFE would have performed as part of creating its WSA. See **Exhibit 1**, p. 9 (24:32). While during the call Mr. Burkley asked that NFE share the WSA and the Emergency Response Plan (ERP) (which has been approved by the Coast Guard). **NFE's ship handling expert, Captain Bordas, was in agreement with Mr. Burkley**, and was in agreement that with the WSA and the ERP, they would be able to know all the risks, review them with the pilots, and prepare a run matrix that would flush out all the different factors including tug failures and ship engine failures. See **Exhibit 1**, p. 26 (1:15:25, 1:16:34), p. 17 (55:02 and 56:58), p. 14 (42:45). Therefore, p**laintiffs need to receive the WSA and ERP in order to move forward, and NFE's expert, Captain Bordas, agrees.**

4.      As a side note, on October 23, 2025, attorney Miguel Nazario confirmed to attorney Tom Lightsey that Seaman's Church Institute (where NFE ran the original simulations) was available for simulations, and that their schedule was wide open until Thanksgiving weekend. See **Exhibit 2**.

5.      On October 24, 2025, Mr. Burkley sent an email to Ms. Lopez (and copying all other participants of the call), outlining important points to consider moving forward, which among other things included restating the objective of the simulation to characterize it as a risk assessment, including reviewed the previous risk assessment and hazard ID's which can be found in the WSA, conduct a revised Hazard ID with full participation of the Puerto Rico pilots, review NFE's ERP

2

(to ensure simulations address any potential requirements to support movements as required by the ERP). See **Exhibit 3**.

6. On October 24, 2025, attorney Tom Lightsey wrote to attorney Luis Pavia and stated that it was his understanding that Ms. Lopez did not agree to produce the WSA or the ERP, which according to Mr. Lightsey "These are confidential documents which cannot be shared with the pilots or experts under current conditions." See **Exhibit 4**. Attorney Miguel Nazario responded that it was common for LNG customers to share the WSA or relevant parts thereof with their pilots association. See **Exhibit 5**. Mr. Nazario also suggested that representatives from Siport21 should not participate in meetings with the experts until a venue was agreed upon by all partes. **Id.**

7. On October 28, 2025, attorney Ramon Rivera, counsel for NFE, sent an email wherein he mentions NFE's "simulation team" and "NFE's simulation experts." See **Exhibit 6**. This is concerning because NFE has not disclosed a simulation expert, which would mean that Siport21 is not just an independent facility at which to conduct the simulation study but rather, are acting as experts for NFE (a concern which the undersigned immediately communicated to attorney Rivera). If this is true, then plaintiffs have been misled since October 9, 2025, into believing that NFE's only interest in conducting the simulations at Siport21 was their availability in the near future (which plaintiffs have confirmed SCI also has), and NFE's claim that it was already financially committed to Siport21 (of which plaintiffs have no evidence).

B.   **REQUEST FOR COURT ORDER**

1. The safety of those living on the island of Puerto Rico is at the forefront of this litigation. As such, any simulation to be conducted shall be as comprehensive and transparent as possible. Good faith shall prevail in this process. As explained in paragraph 3 above, the WSA (Water Suitability Assessment) and the approved ERP (Emergency Response Plan) are necessary

to identify hazards that will need to be addressed during the simulations and maneuvers required should an emergency occur (because it is not just about berthing the vessels, it is also about properly handling vessels in response to any emergency). Per Captain Bordas, these should be reviewed with the pilots in order to prepare a run matrix that will flush out all the different factors including tug failures and ship engine failures:

> **1:15:25 - George Burkley**
>
> Unfortunately, you know, So your lawyers are not helping any of this get any better and just offer that up none of this is a dare and Working for them today, but I'm telling you they don't make our Simulation better They're not gonna make our report better. They're not gonna make any of this any better All they're gonna do is slow it down or make it an emergency for us to do things. So I I guess I might just be, if it comes to pass that I'm calling them the A team or B team, if they decide to come and then this happens, and then you're going to do some risk assessment with qualitative information, I'd be happy to review it as much as I can from afar. And I help you, Captain Chris, with the documentation. And then if I get permission to work across the board with the other company that helped you with your WSA and your ERP, that would be nice.
>
> **1:16:34 - Chris Bordas**
>
> Yeah, I'm in agreement with you. With your WSA and ERP, all the risks, we should be able to review those with the local pilots and satisfy a run matrix that will flush out all these different factors. Factors, be it tug failures, ship engine failures. Yeah.

See Exhibit 1, p. 26.

2. Given the consensus between Mr. Burkley and NFE's own expert Captain Bordas, plaintiffs respectfully request the Court order NFE to show cause, within a period not to exceed 24 hours, why NFE should not be ordered to produce to plaintiffs the WSA and the approved ERP.

3. Separately, plaintiffs respectfully request NFE be ordered to clarify, within the same timeframe, whether Siport21 was retained as their expert, or as an independent simulation facility as originally represented, and that regardless of the capacity Siport21 was retained, order NFE to disclose by the end of this week those documents that outline the scope and terms of Siport21's engagement.

WHEREFORE it is respectfully requested that this Honorable Court take note of the above, and for the reasons stated above, order NFE to show cause, within a period not to exceed 24 hours, why NFE should not be ordered to produce to plaintiffs the WSA and the approved ERP, and

furthermore order NFE to clarify, within said period, whether Siport21 was retained as their expert, or as an independent simulation facility as originally represented, and that regardless of the capacity Siport21 was retained, order NFE to disclose by the end of this week those documents that outline the scope and terms of Siport21's engagement.

In San Juan, Puerto Rico, this 28th day of October, 2025.

I HEREBY CERTIFY that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice of its filing electronically to the attorneys of record.

Respectfully submitted,

**S/ FRANCISCO E. COLÓN-RAMÍREZ**
FRANCISCO E. COLÓN-RAMÍREZ, ESQ.
Bar No.: 210510
E-mail: fecolon@colonramirez.com
**COLÓN RAMÍREZ LLC**
PO Box 361920
San Juan, PR 00936-1920
Tel.: (787) 425-4652/ Fax: (787) 425-4731

**S/GIANCARLO FONT GARCÍA**
GIANCARLO FONT GARCÍA
USDC-PR NO. 210612
gfont@drcprlaw.com
**GIANCARLO FONT**
306 Calle Coll y Toste
San Juan, PR 00918
TEL. (787)622-6999
(787)647-1876

**S/ LUIS MANUEL PAVÍA-VIDAL**
LUIS MANUEL PAVÍA-VIDAL
USDC-PR NO. 227205
pavialaw@gmail.com
URB. BALDRICH
COLL Y TOSTE ST. #306
SAN JUAN, PR 00918
TEL. (787)622-6999

**S/ MIGUEL A. NAZARIO, JR.**
MIGUEL A. NAZARIO,JR.
USDC PR No. 214502
e-mail: man@nblawpr.com
**NAZARIO BRICEÑO LAW OFFICES, LLC**
Cervantes 82,
San Juan, Puerto Rico 00907
Tel. (787)449-2717