**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BUSTO-ALVAREZ, ET AL., ) | CASE NO. 25-CV-1462 (SCC) |
| Plaintiffs, ) | |
| ) | SETTLEMENT CONFERENCE |
| vs ) | |
| ) | |
| NFENERGIA LLC, ET AL. ) | |
| Defendants. ) | |

TRANSCRIPT OF SETTLEMENT CONFERENCE
HELD BEFORE THE HONORABLE JUDGE SILVIA L. CARRENO-COLL
SAN JUAN, PUERTO RICO
Thursday, October 9, 2025

APPEARANCES:

For the Plaintiffs:     FRANCISCO E. COLON-RAMIREZ, ESQ.
                        GIANCARLO FONT-GARCIA, ESQ.
                        LUIS M. PAVIA-VIDAL, ESQ.
                        MIGUEL NAZARIO-BRICEÑO, ESQ.

For the Defendants:     MANUEL PORRO-VIZCARRA, ESQ.
                        MYRMARIE LABORDE-VEGA, ESQ.
                        JOSE RAMON RIVERA-MORALES, ESQ.
                        THOMAS LIGHTSEY, ESQ.
                        CHRISTOPHER R. HART, ESQ.

Produced by mechanical stenography; computer-aided transcription

(PROCEEDINGS COMMENCED AT 1:37 P.M.)

THE COURT:  Call the case.

THE COURTROOM DEPUTY CLERK:  Civil Case No. 25-1462, Busto-Alvarez, et al., versus NFEnergia LLC, et al., for Settlement Conference.

THE COURT:  Good afternoon, everyone.

Any progress since last night?

MR. LIGHTSEY:  Yes, Your Honor, quite a bit.

So if I may speak, we finished the last hour or so going through the final version.  They have LOIs which I believe I can say are acceptable for two identified tugs.

MR. FONT-GARCIA:  Your Honor, I haven't been able to discuss that with my clients, but they are much better.  I have to say that they are much better than what we received yesterday.

THE COURT:  The letters of intent?

MR. FONT-GARCIA:  Yes.

MR. LIGHTSEY:  And to be fair, my client has got to read the final stipulation as well, but that's where we are.

We have also gone through the stipulation.  We have agreed to everything in the stipulation, I believe, except one issue in paragraph 6, which is location of the simulations.  We had proposed that the simulations be conducted at a mutually agreeable place, and they want

Houston.  We advised them today that our clients several weeks ago reserved the dates in Spain for October, and as part of that requirement for reservations, they have either already paid the cash or they have committed to paying the cash.  So that's a cost for us right now.

But we are still open to negotiating.  If there are issues that they have with Spain, and we agree with those -- like, their concern may be the results be validated, we have no use to use a simulation that doesn't have validated results.  The Court is not going to accept it.

At this time, mutually agreeable, negotiating in good faith.  That's the only issue I think we have.

MR. FONT-GARCIA:  So right now we are communicating with our expert to discuss the issue of validation and discuss it with our clients.  We haven't discussed it yet.

THE COURT:  Let me have the names of the two tugs. And the LOIs, the letters of intent, are much more adequate.

MR. FONT-GARCIA:  Yes.

THE COURT:  And you need to discuss it with your clients.

MR. FONT-GARCIA:  Correct.

THE COURT:  And you need to discuss this draft where you are clients, Mr. Lightsey.

MR. LIGHTSEY:  Briefly, yes, Your Honor.

MR. COLON-RAMIREZ:  Just to give you an example,

Your Honor, because we went through, like, one particular language that I think everyone had concerns with last night, now the LOIs read in that paragraph 1-A that we reviewed last night, it says -- now it says, "The parties agree that McAllister has procured and will provide."  Not that, you know, they will endeavor to.

THE COURT:  Okay.  That sounds more concrete and definite.

MR. COLON-RAMIREZ:  Yes.

And everything else in the joint stipulation, we went through -- remember last night, Your Honor saw red lines and everything.

THE COURT:  Yes.

MR. COLON-RAMIREZ:  We went through everything, and we cleaned up everything except for what the attorney just mentioned.

THE COURT:  I have this latest version, which is a clean version.

MR. LIGHTSEY:  Is that the one we just discussed?

MR. COLON-RAMIREZ:  Yes.

THE COURT:  And I'm zooming in paragraph 6.  So basically it's the location for the simulations.

MR. LIGHTSEY:  Correct, Your Honor.

MR. FONT-GARCIA:  That's correct.

MR. COLON-RAMIREZ:  That's what we just need to

discuss.

THE COURT:  So I commend you for this effort.

I think that you should meet with your clients and see what the concerns are regarding the Spain location, and see if we can find some understanding what seems to be the concern.  It may be something that can be addressed or not. I don't know.

And you need to check with your client if this last language is agreeable, and then we can sign off.

MR. LIGHTSEY:  Your Honor, just so the Court is aware, three o'clock this afternoon is the close of the window to get the Princess off the dock -- Maria.  I always do that backwards.  I am sorry.

MR. COLON-RAMIREZ:  We will meet right now.

THE COURT:  Then you need to do this now.

MR. LIGHTSEY:  Yes, Your Honor.

Shall we be back in 15 minutes?

THE COURT:  Regarding the Commission, I don't see anything here.

MR. PORRO-VIZCARRA:  Yes, Your Honor.

We set a final version after discussing it with the Commission attorneys, as we represented to the Court that we had to meet with the president and the two other Commission attorneys, which we did.  By 4:11 p.m. yesterday, we sent our final version.

I am aware that there were bigger fish to fry, and they have not gotten back to us to discuss the proposal.

MR. FONT-GARCIA:  We are going to do it right now, Your Honor.

THE COURT:  Let's get this issue, the main issue resolved, and then we can turn to the Commission.  And we still have tomorrow morning because the TRO expires tomorrow.

MR. COLON-RAMIREZ:  And the vessel, there is a time constraint.  We will address that.  I think that's everyone's main concern, address --

THE COURT:  The windows.

MR. COLON-RAMIREZ:  -- the window.

And I think we all know that...

THE COURT:  Come back in 15 minutes.

MR. LIGHTSEY:  Yes, Your Honor.

MR. COLON-RAMIREZ:  Yes, Your Honor.

THE COURT:  I am going to review in more detail the final draft and see if I have any other concerns.

MR. COLON-RAMIREZ:  Would Your Honor like to review the LOIs?  I can email them.

THE COURT:  If Plaintiffs are okay with it, then I am okay with it.

MR. COLON-RAMIREZ:  Okay.  Very well.

THE COURT:  Because you voiced the concerns that I thought were important last night.  So if you are now

comfortable, then I am.

MR. NAZARIO-BRICEÑO:  We are going to send it over, Your Honor, anyways.

THE COURT:  By e-mail to me?

MR. NAZARIO-BRICEÑO:  Yes.

THE COURT:  Okay.  I will review them in these 15 minutes.

MR. LIGHTSEY:  And just so you know, Your Honor, one letter of intent was signed I believe before the tug was identified.  So while the tug is not identified in the LOI, it is identified in the stipulation.

MR. COLON-RAMIREZ:  Yes, that's the Moran.  The Moran LOI does not identify the tug, but it was when we were in the room working the agreement, we were informed that the Moran had identified the tug as the James D. Moran.  So then we put it in the agreement.

But no sense in going and changing the LOI and getting new signatures from both parties.

THE COURT:  Okay.

MR. HART:  May I just add one small thing, Your Honor?  These LOIs that are going to be emailed to the Court, we would request that they be held in-camera, not part of the public record.

THE COURT:  Very well.  That's fine.

See you in 15 minutes.

MR. LIGHTSEY:  Thank you, Your Honor.

MR. COLON-RAMIREZ:  Thank you, Your Honor.

THE COURTROOM DEPUTY CLERK:  All rise.

(PROCEEDINGS SUSPENDED AT 1:43 P.M.)

(PROCEEDINGS RESUMED AT 3:00 P.M.)

THE COURT:  Please be seated.

Where are your colleagues?

MR. PAVIA-VIDAL:  They were heading here.  I know Attorney Colon is with a cane, but... There they are.

THE COURT:  I have reviewed the letters of intent, and I find that they comport to the language of the stipulation.  Therefore, they are acceptable.

I have been sent by email the last version of the stipulation on interim measures, and so anything else anyone wants to state?

MR. LIGHTSEY:  Yes, Your Honor.  When you say the last version, is that the one where they added the additional language regarding the stipulation in the last sentence of paragraph 9.

THE COURT:  It read as follows now --

MR. LIGHTSEY:  What paragraph, Your Honor?

If you would go to paragraph 9 --

THE COURT:  Well, 9 is the one that I asked that the actual rule be cited.

MR. LIGHTSEY:  Right.

THE COURT:  And they did, Rule 65(a)(2).

MR. LIGHTSEY:  But the last thing they added, "45 days from the date on which the tugs arrive in Puerto Rico, after which the stipulation will expire."

THE COURT:  That's where that sentence ends in my version.

MR. LIGHTSEY:  Right.

So I am not clear on that sentence.  So the case is stayed for 45 days from the date of entry of the order; is that correct?  That's what we have been talking about?

THE COURT:  Well, when we were discussing originally, it was said that the 45 days start to run from the arrival of the tugs.

MR. LIGHTSEY:  Okay.  Well, then this language saying that conflicts with the stipulation.  The stipulation says it runs from the entry of the order, I believe.

THE COURT:  You mean it conflicts with another paragraph of the stipulation?

MR. LIGHTSEY:  Yes, Your Honor.

MR. COLON-RAMIREZ:  The idea is the 45-day period to always run from the arrival of the tugs in Puerto Rico. Now, if there is a -- if we need to fix it, then it's somewhere else, but...

THE COURT:  Well, I understand Mr. Lightsey's concern because the stay begins now.

MR. COLON-RAMIREZ:  Okay.

THE COURT:  The stay begins now.  However, the stipulation regarding any movements with the 70-ton bollard pull tugs begins from the date -- so we have two moving dates here.  So how do we reconcile this?

MR. COLON-RAMIREZ:  I would --

MR. LIGHTSEY:  I can answer that, I believe, Your Honor.

MR. COLON-RAMIREZ:  Okay.

MR. LIGHTSEY:  So the stipulation that we had been previously working from read, "The parties jointly request that all proceedings in this case stayed for 45 days," period.  That's the one we had agreed to back in the jury room earlier.  And now this is new language, "from the date on which the tugs arrive in Puerto Rico."

So if that's what that is, that's --

MR. COLON-RAMIREZ:  There was no intent to litigate this while the tugs are en route to Puerto Rico.

THE COURT:  Right.

MR. COLON-RAMIREZ:  What I was trying to do was to extend the stay, because we are agreeing that there is going to be a 45-day period from when the tugs arrive in Puerto Rico for them to do vessel movements with the 70-plus ton tugs.

THE COURT:  Correct.

MR. COLON-RAMIREZ:  So the idea was to stay it for that extended period of time.  There was no intent to litigate here until the tugs arrive.

MR. LIGHTSEY:  We're fine with that language, Your Honor, "45 days running from when the tugs arrive."

THE COURT:  All right.

MR. LIGHTSEY:  But the issue that we have is the language they have added to paragraph 6.

THE COURT:  Paragraph 6?

MR. LIGHTSEY:  Yes.

So the parts that they have added, so last night the Court gave us graciously her time, and Court told us to do three things:  Get a better LOI, which we have done; get the names of the tugs, which we have done; and get certificates of bollard pull, which we have agreed will be done in 24 hours.  Those are the three core issues that we addressed last night.

The simulation wasn't addressed.  Now, the language they have added is a way of saying, "We are going to have these simulations, but you just can't have them in Spain," because it puts in this provision, "four-man tugboat simulators running in real-time."  They know that Spain has three and then one is a virtual tug.

Your Honor, just so the Court knows, this simulator in Spain is where all the oil majors go in Europe; BP, Total,

et cetera.  It is a first class simulator.  It is approved by DNV as Mr. Hart told you yesterday.  It is highly reliable.

There are three other locations, I think, in this stipulation where the parties agree to negotiate in good faith.  There is no reason the parties can't agree to negotiate in good faith with this.  If they just take out the number 4, we are good to go with that language.

THE COURT:  So certified full mission bridge simulator following industry standards.  The only issue is that the Spain facility cannot incorporate four-man tugboat simulators running in real-time.  That is the only issue.

MR. LIGHTSEY:  Yes.

MR. COLON-RAMIREZ:  I have a problem with this conversation, Judge, because if we are going to stipulate -- the original proposed language was to have it at a location that the parties were going to negotiate in good faith, and now they are premising that it's going to be in Spain.  And now the objection is, "Oh, no, because of the four-man tug simulators, that means it can't be done in Spain," which kind of suggests to me that they are of the mind that this is either Spain or bust.

MR. LIGHTSEY:  No, Your Honor.  We are saying -- we can go back to the original language, which says, "The parties will negotiate in good faith," full stop.  We are fine with that.  That's all we want to do.

In fact, what the language they put in there is saying, "No, you can't use Spain."  We want to have that on the table, negotiate, and we are happy to do that.

THE COURT:  This is the thing:  I under that Mr. George Burkley will be participating in these simulations.  He already testified before this Court.  He seems to be an all-around expert on these matters.  I will be giving weight to whatever opinion he has regarding what happens.  Hopefully, I don't have to do that because you will agree on the outcome of these simulations.

But what I am trying to say is, if the data cannot be validated because there is the thing that they did not have the four-man tugboat simulators running in real-time, then it's not going to be --

MR. LIGHTSEY:  Agree, Your Honor.

THE COURT:  -- of any use to go through all of this.

MR. LIGHTSEY:  And when you hear our experts, they will say whatever they are going to say.  But if we can't -- if we negotiate in good faith and we see, "Oh, wow!  You can't use these Spain simulators.  You can't validate them."  Then we won't use them, but we want to have the option to use them.  And that's all we are saying.  Don't exclude it at this time when there is not --

THE COURT:  I see what you are saying.  You want to

keep the door open --

MR. LIGHTSEY:  Yes, Your Honor.

THE COURT:  -- for going to Spain.

MR. LIGHTSEY:  Yes, Your Honor.

THE COURT:  Mr. Colon, so he is saying that if you convince them that the data from Spain cannot be validated, they are not going to insist on it.

MR. COLON-RAMIREZ:  So, my problem, Your Honor, is that...

(Whereupon, off-the-record discussions were held by counsel for all parties.)

MR. LIGHTSEY:  And, again, Your Honor, we can either go back to the original language about negotiating in good faith, or just take out the word "for" from that paragraph, and we are good to go.  Just delete the word "for".

THE COURT:  You need to resolve this.

MR. COLON-RAMIREZ:  We are getting there.

MR. LIGHTSEY:  Your Honor, I don't know that this is a core issue.  If it makes everybody happy, we can delete paragraph 6 completely.

THE COURT:  I don't think that's a good idea.

MR. NAZARIO-BRICEÑO:  Because up to now what we are basically negotiating is dates because obviously --

MR. LIGHTSEY:  Location.

MR. NAZARIO-BRICEÑO:  You want to do it in Madrid?

MR. LIGHTSEY:  I will do whatever the parties negotiate in good faith.

MR. COLON-RAMIREZ:  So this is what I think might solve it.  You see this (indicating)?

(Whereupon, an off-the-record discussion was held between Defense Counsel.)

MR. COLON-RAMIREZ:  So, Your Honor, if we go to paragraph 6, just so that you know, I am going to put on the record the changes we are going to make, and I will email it again.  Where it says, "...in paragraph 9 provided the venue is a certified full mission bridge simulator following industry standards and," we are going to delete the phrase, "can incorporate four-manned tugboat simulators running in real-time."

THE COURT:  So it will then be, "and has properly vetted San Juan Bay Harbor database."

MR. COLON-RAMIREZ:  Yes, Your Honor.

THE COURT:  Anything else?

MR. LIGHTSEY:  I don't think so, Your Honor.

THE COURT:  Then let's print it and file it.

Send it to Beatrice.  We can print it and file it.

MR. LIGHTSEY:  Your Honor, if I may.  As the Court knows, three o'clock was the deadline.  I am told we can have a few extra minutes.  So if we can get this done, we can get

the vessel out today.

THE COURT:  Okay.  When you say that that was the window, if the window was 3:00 and it's ten after 3:00, hasn't that window passed?

MR. LIGHTSEY:  That's what I thought, Your Honor. That's why I just had somebody double check, but I don't have that information.

UNIDENTIFIED SPEAKER:  We are checking with the Coast Guard now to see if it can still be --

MR. LIGHTSEY:  It's a Coast Guard window.

UNIDENTIFIED SPEAKER:  They are trying.  The original from the Coast Guard was three o'clock.  We are going back to the Coast Guard to see if there is a possibility.

THE COURT:  Is there space?

UNIDENTIFIED SPEAKER:  That's what we are trying to find out.

THE COURT:  We don't want to create havoc in the bay.

UNIDENTIFIED SPEAKER:  As always, Your Honor, it's going to be Coast Guard dependent, whether the Coast Guard allows it or not.

THE COURT:  All right.

MR. LIGHTSEY:  Thank you, Your Honor.

Your Honor, are we free to let the Coast Guard know

that it has the Court's approval to move the ship, or do you want to wait --

THE COURT:  Let me enter the order right now.

So it's been filed?

THE COURTROOM DEPUTY CLERK:  I haven't received it.

MR. NAZARIO-BRICEÑO:  The Commission is simply stating that there is no agreement.

Is that correct, brother counsel Porro?

MR. PORRO-VIZCARRA:  Your Honor, Manuel Porro-Vizcarra, for the record.

I just received comments to the agreement we sent yesterday, and we are going back and forth.

THE COURT:  It's interesting that your position was that your agreement was contingent to Plaintiffs agreeing with NFE, and now you are not entering into an agreement.

MR. PORRO-VIZCARRA:  No, Your Honor.  We have stated from day one that the Commission would not hinder an agreement and that we would withdraw the cease and desist letter, which is what the Court asked us to do.  And as to that, there is no problem with that.  We can enter a stipulation saying that the Commission withdraws the August 15th agreement.

The thing is that the agreement...

MR. LIGHTSEY:  Your Honor, if I may.  Can we address the Commission issue until --

THE COURT:  Yes.  I am just waiting for the document.  I haven't ruled on the document because I don't have it.  I need to have it stamped, filed, and then...

MR. LIGHTSEY:  Thank you, Your Honor.

MR. FONT-GARCIA:  Your Honor, may I address something?

THE COURT:  Well, let me get this.

MR. FONT-GARCIA:  Okay.

THE COURT:  Now it's official.

Before the Court is a stipulation on interim measures between the Plaintiffs and Defendant NFE.  Based on this stipulation, which the Court had reviewed before it was formally filed, the Court approves the stipulation and orders that the temporary restraining order issued on September 26, 2025, at docket 52, against NFE be set aside.

The Court further orders that all parties act in accordance to the terms and conditions stipulated in the stipulation for the duration of said stipulation, including the movement of the Energos Maria and the Energos Princess for this one time and while the described tugboats at paragraph 1 of the stipulation arrive to Puerto Rico.

All other measures and agreements in the stipulation are adopted as the order of the Court.

Thank you.  That's regarding NFE.

MR. LIGHTSEY:  Thank you, Your Honor.

THE COURT:  Anything else, Mr. Hart?

MR. HART:  The stay, is there to be a specific order as to the stay?

THE COURT:  At paragraph 9, the parties agree to stay of proceedings and the consolidation of the preliminary injunction with the permanent injunction and the trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.

So the case is stayed as to NFE 45 days from the arrival of the tugboats for purposes of conducting maneuvers in the fashion described in paragraph 1.  One exceptional transit that will be allowed for purposes of getting the Maria out of the port and the Princess in, and all other conditions that have been agreed upon by the parties.

MR. LIGHTSEY:  And just so the Court is aware, the Coast Guard has not given approval for it to leave today.  So it will have to be tomorrow.

THE COURT:  Very well.  Thank you.

MR. LIGHTSEY:  Thank you, Your Honor.

MR. COLON-RAMIREZ:  Thank you, Your Honor.

THE COURT:  Now, let's address the Commission situation.  So the TRO is still in place as to the Commission.  It's set to expire tomorrow.  However, the Court may extend it for good cause pending any resolution between the parties.

So what is the situation?

MR. PORRO-VIZCARRA:  Your Honor, as I stated before, the Commission agrees to withdraw the cease and desist letter of August 15, 2025, which gave rise to the claim that they filed.

However, in discussing other conditions or stipulations, we are not in agreement with what brother counsel proposes.  Maybe if we have additional time to discuss it, because I need to go back to my client to discuss their petitions.  But, you know, it's a matter of eliminating from the Commission's proposal everything that basically maintains the authority of the Commission over certain aspects of the pilotage operation.  And there are other conditions that were imposed for the first time today that I cannot agree.

THE COURT:  Well, I can --

MR. PORRO-VIZCARRA:  As to the TRO, which is the main concern of this Court, we withdraw the letter.  And we will notify the letter to all the parties so that the purpose of the TRO will be served.

MR. FONT-GARCIA:  Your Honor, our position is that -- the first action from the Commission was the cease and desist letter.  But it was followed by several letters that were drafted and issued by the Commission without the participation of Captain Carlos Ramos.  The pilots believe

and feel that those resolutions were retaliatory.  And in order to reach an agreement, we have to -- we need the Commission to withdraw those two -- I believe it's two more letters.  And that doesn't mean that after they are withdrawn, the Commission cannot reconvene with the full three commissioners and start discussing new ways of doing these rules or whatever they want to call it.

MR. PORRO-VIZCARRA:  Your Honor, there was no claim in this case.

MR. FONT-GARCIA:  It is a claim.

MR. PORRO-VIZCARRA:  I have reviewed the complaint, and the letters they want removed are letters that are not even mentioned in the complaint.

MR. FONT-GARCIA:  They mention that the Commission issued resolutions unilaterally without the presence of Mr. Ramos.  And they are alleged to be illegal.

MR. PORRO-VIZCARRA:  The position of the Commission is that, even though Mr. Ramos did not participate, two other commissioners participated, which were Javier Figueroa and --

MR. FONT-GARCIA:  We don't know that.

THE COURT:  So I guess we need to litigate this.

MR. FONT-GARCIA:  Yes, we need to litigate this.

THE COURT:  We can do one of two things.  I can bifurcate the case and I can extend the TRO and continue with the preliminary hearing as to the Commission.  You can agree

to a stay and -- well, the thing is that the cease and desist order cannot stay in place because now they need -- during this 45-day period, they need to talk to everyone for purposes of continuing the simulations and everything that needs to be done in the 45-day period.

MR. FONT-GARCIA:  What we would request is an extension of the TRO as to the cease and desist, and a stay --

THE COURT:  And to continue the preliminary hearing?

MR. FONT-GARCIA:  And a stay of 45 days to keep on...

MR. PORRO-VIZCARRA:  We would not any problems with the stay because that way we can have the Commission reconvene and impart instructions as to...

MR. FONT-GARCIA:  One minute, Your Honor.

MR. PORRO-VIZCARRA:  This is something that has taken us by surprise because this was not part of the prior negotiations, Your Honor.

In fact, even though brother counsel mentioned something about consultation 226, we responded to him because he said that letter dealt with consultations.  We reviewed the letter and we responded, "This letter has nothing to do with consultations."

So I believe this can be worked out during the

45-day --

THE COURT:  Yes, but what will govern the relationship?  Because with NFE, a stipulation was just approved, and this will govern the relationship until there is a resolution or we can continue with a full blown trial.

MR. FONT-GARCIA:  Then, Your Honor, I believe that is correct.  I think we will have to continue the --

THE COURT:  But the Commission -- I will then have to go forward with the preliminary injunction after the Commission and try to procedurally -- now we are at a different juncture than with NFE.

MR. FONT-GARCIA:  And I believe, Your Honor, that will take probably one more day of hearings to continue this matter.

MR. PORRO-VIZCARRA:  Your Honor, the problem the Commission has at this point is that Commissioner Javier Figueroa has recused himself because Moran is involved in the issue with the hiring of the tugs.  So he can no longer participate as commissioner in anything related with that.

And the other commissioner that I have is Carlos Ramos, which is part and parcel of the pilots.  And the president of the Commission is, as this Court is aware, away from Puerto Rico.  We were able to get a phone call to her yesterday.

THE COURT:  I am trying to be creative here.  We

can enter into a stipulation by which -- it's a partial stipulation by which the Commission will withdraw the cease and desist order.

MR. PORRO-VIZCARRA:  And notify other parties that received that.

THE COURT:  Agree to consolidating the preliminary injunction with a permanent injunction, and then the Commission joins the stay for 45 days.

MR. PORRO-VIZCARRA:  We would agree to that.

MR. COLON-RAMIREZ:  Consolidate the proceedings of the preliminary and the permanent and the trial on the merits pursuant to Rule 65(a)(2).

THE COURT:  Yes.

MR. FONT-GARCIA:  The stipulations will also need to contain that the appointments of the other pilots is limited to this upcoming proceeding -- this upcoming evolution of the LNG vessels but not applicable to the future movements of the LNG vessels.

MR. PORRO-VIZCARRA:  Your Honor, the appointments of the pilots was due to the fact that the San Juan Bay Pilots Association refused for whatever reasons, for safety reasons --

THE COURT:  Mr. Font is talking perspectively, not of what happened.

MR. PORRO-VIZCARRA:  The Commission has no need, no

need under the law to appoint additional pilots.  If the San Juan Bay Pilots --

THE COURT:  Are we trying to stipulate something, or are we arguing our position?

MR. PORRO-VIZCARRA:  No.  What I am saying is, what he is asking, he doesn't need to ask that because that's a conclusion of the law.

MR. FONT-GARCIA:  It's not a conclusion of law, Your Honor.  It's an agreement that --

THE COURT:  All right.  You have until 5:00 p.m. to agree.  It can be a partial stipulation.  Otherwise, I am going to extend the TRO and continue with the preliminary hearing as to the Commission.

MR. FONT-GARCIA:  Thank you, Your Honor.

THE COURT:  Thank you.

MR. LIGHTSEY:  Thank you very much, Your Honor.

MR. COLON-RAMIREZ:  Attorney Colon-Ramirez for the record.

I understand that we will continue, if necessary, the injunction against the Commission, and we are doing it under consolidating the proceedings of the preliminary and the permanent and the trial on the merits under Rule 65(a)(2) as it pertains to the Commission as well, correct?

THE COURT:  So that was what I proposed to do, enter into a partial stipulation in which they withdraw the

cease and desist, leave the other matters to be litigated, declare a stay of proceedings based on the consolidation under Rule 65(a)(2).

MR. COLON-RAMIREZ:  Yes.  Perfect.

THE COURT:  But you need to agree on that.

MR. COLON-RAMIREZ:  Very well.  We will discuss that.

THE COURT:  Thank you all.

(PROCEEDINGS ADJOURNED AT 3:32 P.M.)

Joe Reynosa, CSR, RPR
Official Court Reporter

REPORTER'S CERTIFICATE

I, JOE REYNOSA, Official Court Reporter for the United States District Court for the District of Puerto Rico, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct computer-aided transcript of proceedings had in the within-entitled and numbered cause on the date herein set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

S/Joe Reynosa
_____
JOE REYNOSA, CSR, RPR
United States Court Reporter
Federico Degetau Federal
Building, Room 150
150 Carlos Chardon Street
San Juan, Puerto Rico 00918-176
(787) 772-3480

Joe Reynosa, CSR, RPR
Official Court Reporter