## English Translation of Draft Puerto Rico Bill (Unofficial Translation)

### HOUSE BILL

**Government of Puerto Rico**
**House of Representatives**

**LAW**

To amend Section 1.03, repeal Article 4 and create a new Article 4 so numbered, create a new Article 7, and renumber current Articles 7, 8, 9, and 10 as Articles 8, 9, 10, and 11, of Act 151 of June 28, 1968, as amended, known as the "Puerto Rico Docks and Harbors Act of 1968"; to create the "Office of Pilotage Affairs in Puerto Rico," attached to the Puerto Rico Ports Authority; to provide everything related to the regulation of pilotage in Puerto Rico; to provide for the administrative structure of the Office of Pilotage Affairs in Puerto Rico; to create the position of Harbor Captain of the Port of San Juan, attached to the Puerto Rico Ports Authority; to provide for its powers and duties; to repeal Act No. 226-1999, as amended, known as the "Puerto Rico Pilotage Commission Act"; to establish penalties; and for other related purposes.

### STATEMENT OF MOTIVES

Puerto Rico's economic development, maritime safety, and protection of natural resources depend to a large extent on the proper administration of its docks and ports. More than ninety percent (90%) of the goods consumed by our population arrive by sea, making the ports the principal gateway for incoming and outgoing merchandise, as well as a strategic axis for tourism, defense, and the Island's competitiveness.

Act No. 151 of June 28, 1968, as amended, known as the "Puerto Rico Docks and Harbors Act of 1968," established the legal framework for the administration of port infrastructure and the regulation of maritime operations. However, over more than five decades, changes in the shipping industry, the increase in the size and complexity of vessels, and the need to comply with international safety and efficiency standards have made clear the urgent need to modernize the regulation of ports, port safety, and pilotage in Puerto Rico.

Pilotage is a highly specialized profession and a matter of public interest, since pilots are responsible for skillfully guiding vessels in restricted waters, bays, and access channels to ports. Their work protects human life, public and private property, and prevents irreparable harm to the marine and coastal environment. International experience confirms that pilotage regulation must be subject to criteria of independence, transparency, and public accountability, ensuring that the service is provided under the highest standards of safety and efficiency.

Act No. 226-1999, as amended, known as the "Puerto Rico Pilotage Commission Act," attempted to address these needs through the creation of a specialized body. Nevertheless, the experience accumulated over more than two decades has shown structural and operational limitations that have hindered proper oversight, integration with the Ports Authority, and adaptation to technological and regulatory changes in the global maritime industry.

Accordingly, this Legislative Assembly finds it necessary to repeal Act No. 226-1999 and replace it with a more agile, coherent, and effective regulatory framework. This Act creates the Office of Pilotage Affairs in Puerto Rico, attached to the Puerto Rico Ports Authority, in order to centralize the supervision, regulation, and enforcement of pilotage under an administrative structure with greater resources, technical capacity, and public responsibility.

Likewise, the position of Harbor Captain of the Port of San Juan is created, attached to the Ports Authority, with clearly defined powers and duties to guarantee navigational safety, coordinate maritime traffic, and ensure compliance with applicable local and international rules. This role, recognized in multiple jurisdictions, will strengthen port governance and ensure effective coordination between the State, pilots, and the maritime industry.

Passage of this measure will:

- Modernize pilotage regulation in accordance with the best international standards.
- Strengthen maritime safety and environmental protection in Puerto Rico's ports.
- Guarantee transparency and accountability in the setting of tariffs and in the admission and discipline of pilots.
- Integrate pilotage oversight into the Island's port development and economic public policy.
- Provide the Government of Puerto Rico with more effective tools to respond to emergencies, prevent accidents, and protect life and property.

In light of the foregoing, this Legislative Assembly deems it indispensable to approve this Act, which amends Act No. 151-1968, as amended; repeals Act No. 226-1999; and establishes a new regulatory framework for pilotage in Puerto Rico, while also providing for the office of Harbor Captain of the Port of San Juan, for the benefit of the safety, economy, and general welfare of our people.

## ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:

## Article 1 — Amendment to Section 1.03 (Definitions)

The following terms shall have the meanings stated below for purposes of this Act, unless a different meaning clearly arises from the context, and the singular includes the plural and vice versa:

- **Puerto Rico**: the Island of Puerto Rico and the adjacent islands and waters within the jurisdiction of the Commonwealth of Puerto Rico.

- **Authority**: the Puerto Rico Ports Authority created by Act No. 125 of May 7, 1942, except that in matters concerning the Port of the Americas, "Authority" means the Port of the Americas Authority.
- **Director**: the Executive Director of the Authority.
- **Administrator**: the Executive Director of the Ports Authority, as provided in Act No. 125 of May 7, 1942, as amended, except that in matters concerning the Port of the Americas it means the Executive Director of the Port of the Americas Authority.
- **Ship / Vessel**: any vehicle useful for transporting persons or things on water.
- **Major vessel**: any vessel engaged in cargo or passenger traffic between any ports.
- **Minor vessel**: any vessel that is not a major vessel.
- **Navigable waters of Puerto Rico**: navigable waters under the control or dominion of Puerto Rico.
- **Port**: any part of the coast where a ship may anchor, berth alongside another ship or a dock, or moor ashore.
- **Dock / Wharf**: any structure useful for berthing ships ashore or embarking/disembarking persons or things, except docks under the immediate control of the United States.
- **Traffic**: transportation of passengers or merchandise by ship.
- **Maritime traffic**: traffic to, from, or within any Puerto Rico port or its navigable waters.
- **Coastwise traffic**: traffic between ports of Puerto Rico or between them and ports within the coastwise trade of the United States.
- **Shore maritime zone**: the coastal strip bathed by the sea in its ebb and flow where tides are perceptible, and by the largest storm waves where tides are not perceptible, including lands reclaimed from the sea and riverbanks up to the point where they are navigable or tides are perceptible.
- **Port zone**: that part of the shore maritime zone and other adjacent lands designated as the port zone of a particular port.
- **Person**: any natural or juridical person, association, partnership, organization, firm, or enterprise, including its officers, directors, managers, agents, representatives, or consignees.
- **Vessel owner**: both the owner of a vessel and any person who has it under charter or lease.
- **Master / Captain of vessel**: the person having direct command of a vessel and its crew.
- **Agent**: with respect to a vessel, its consignee or the person who otherwise represents in Puerto Rico the vessel owner or its captain; with respect to cargo, its consignee or the person who otherwise represents in Puerto Rico the cargo owner.
- **Harbor pilot**: a person licensed by the Authority to act as such in the port or ports designated in the license, including those authorized to act as pilots under this Act.
- **Pilotage service**: service rendered to a vessel by a harbor pilot to assist the vessel in entering and leaving port, anchoring, berthing, and moving within the port or from one dock to another.

- **Berthing charge / dockage**: charge imposed on a vessel and collected from its owner, captain, or agent for mooring at a dock or elsewhere within the port zone while conducting loading or unloading operations using a dock, or for berthing alongside another berthed vessel.
- **Wharfage**: charge imposed on a vessel's cargo and collected from the cargo owner or agent for loading or unloading using a dock.
- **Demurrage / storage charge**: charge imposed on cargo or merchandise and collected from its owner or agent for retaining it at a dock or other part of the port zone beyond the applicable grace period.
- **Contracted Entity**: a natural or juridical person, public or private, or a consortium thereof, selected by the Authority to develop, operate, or maintain port-related activities.
- **Port of the Americas waters**: the navigable waters of the Port of the Americas and its port zone, shore zone, submerged lands, and contiguous lands included within the geographic area defined for that port.
- **Pilot**: a licensed local pilot or certified designated pilot.
- **Pilot apprentice**: an aspiring pilot who does not yet hold a pilotage license issued by the Puerto Rico Ports Authority.
- **Probationary pilot**: a pilot holding a temporary or provisional license for a limited time, issued by the Puerto Rico Ports Authority.
- **Waters subject to pilotage in Puerto Rico**: all navigable waters of Puerto Rico as provided by Congress in Section 8 of the Federal Relations Act, 48 U.S.C. 749.
- **To pilot**: to direct a vessel, especially entering, moving within, or leaving ports, bays, inlets, narrow channels, and soundings, and also in navigation from one port to another.
- **Pilotage**: the act of piloting; the science or art of piloting; and also the fee paid by a vessel to the pilot for pilotage services.
- **License or certificate**: the document issued by the Ports Authority, through the Office of Pilotage Affairs in Puerto Rico, authorizing pilots and pilot apprentices to practice pilotage in Puerto Rico.

## Article 2 — New Article 4: Pilotage Service

### Section 4.01 — Declaration of Public Policy
- Pilotage is an essential service of such importance that its continuous existence must be guaranteed by the laws of Puerto Rico.
- Because safety in maritime traffic is the primary objective of pilotage regulation, and because of the economic significance of the service, the substantial capital investment required to provide it, and the fact that pilots render services deemed essential to the economy and public welfare, economic regulation rather than market competition will better protect public health and safety.
- The Director of the Office of Pilotage Affairs in Puerto Rico shall have authority to issue pilot licenses in the number the Puerto Rico Ports Authority determines necessary. The Authority shall set rates and regulate all matters related to pilotage service in Puerto Rico.

### Section 4.02 — Rendering of Services

No person may practice pilotage in Puerto Rico ports unless the following duties and obligations are met:

- Provide service to any person who requests it, except for safety reasons or other reasons established by regulation.
- Pilots may not unilaterally determine rates or charges; the Ports Authority shall determine them.
- Under the supervision of the Office of Pilotage Affairs, pilots shall acquire and maintain vessels, office facilities, equipment, dispatch systems, communications systems, and any other equipment necessary to support a modern, reliable, and safe pilotage service.
- Pilots must train pilot applicants assigned to them in the ports where they work; failure to do so may result in discipline.
- The Ports Authority, through the Director, shall establish the boarding area where the pilot boat will board incoming vessels. The pilot must board before the vessel reaches the entrance buoys, must reach the bridge with enough time to exchange information with the master or officer in command, and must remain on board on departure until the vessel has passed the entrance-channel buoys or foreseeable danger.

### Section 4.03 — Office of Pilotage Affairs in Puerto Rico

The Office of Pilotage Affairs in Puerto Rico is hereby created to authorize, supervise, and sanction pilotage in Puerto Rico. It shall have the authority and budget necessary to implement regulations approved by the Puerto Rico Ports Authority regarding pilotage and maritime traffic. It may acquire and finance all vessels, equipment, or materials necessary to carry out its functions.

The Director's determinations may be reviewed by the Executive Director of the Ports Authority and thereafter be subject to judicial review as provided by regulation.

### Section 4.04 — Director of the Office

The Office shall be headed by a Director, appointed by the Board of Directors of the Puerto Rico Ports Authority, who shall implement all regulations approved by the Authority concerning pilotage in Puerto Rico. The Director must be a person knowledgeable in pilotage and shall serve at the pleasure of the Board.

### Section 4.05 — Personnel

The Director may appoint or employ all personnel necessary to assist in carrying out the powers, duties, and obligations established by this Act and by regulations adopted by the Ports Authority.

### Section 4.06 — Number of Pilots; Reciprocity Between Ports

The Ports Authority shall determine the number of pilots authorized to serve each port and, through the Director, issue the licenses and certificates deemed necessary based on service demand and the public interest in efficient and safe pilotage. The Authority may also

authorize pilot transfers and reciprocity of licenses between ports when consistent with the public interest.

### Section 4.07 — Qualifications for Pilot Apprentice Candidates

In addition to other requirements, each applicant for appointment and licensing as a pilot apprentice must:

- Be at least 21 years old.
- Have completed 12 years of formal education.
- Be mentally and physically fit, as shown by documentary proof based on complete physical and psychiatric examinations.
- Meet standards adopted by regulation, including zero tolerance for alcohol, drugs, narcotics, and controlled substances unless lawfully prescribed.
- Annually submit proof of passing physical and psychiatric examinations while maintaining eligibility.
- Provide a semiannual criminal background certificate showing good conduct.
- Have satisfactory maritime experience, documented through one of several pathways, including service under a U.S. Coast Guard license, service as an active first-class pilot in a deepwater port, tug/barge command experience, or service as a deck officer in U.S. military or Coast Guard vessels, together with the corresponding unlimited Coast Guard license.
- Submit documentation showing sea service and official records.
- Submit a copy of an unlimited first-class pilot license issued by the U.S. Coast Guard covering the waters of the port(s) where the apprentice will train.
- Submit all required training and continuing-education certificates.

The Authority may adopt rules allowing equivalent combinations of service, and the Director may waive certain experience requirements if necessary to fill a vacancy.

### Section 4.08 — Qualifications for Puerto Rico Pilot Licenses

In addition to any other requirement of the Act, each applicant for a Puerto Rico pilot license must:

- Be 21 years of age or older.
- Have completed 12 years of formal education.
- Be in good physical and mental health, documented by complete physical and psychiatric examinations.
- Comply with minimum standards established by the Authority, including zero tolerance for alcohol, drugs, narcotics, and regulated controlled substances unless prescribed.
- Annually provide proof of passing medical and psychiatric examinations in order to maintain the license.
- Be subject to random drug testing and provide a semiannual criminal-background certificate showing good conduct.

- Have completed the required pilot-apprentice training under applicable law and regulations.
- Hold a valid unlimited U.S. Coast Guard pilot license covering all waters of the port(s) for which the Puerto Rico pilot license is sought.
- Submit all training and continuing-education certificates required by law or regulation.

### Section 4.09 — Issuance of Licenses

The Director shall issue original licenses for a probationary period not exceeding six (6) months. At the end of that period, a second probationary license may be issued for another period not exceeding six (6) months. After twelve (12) months in probationary status, the Director must evaluate the record and determine whether to issue a permanent license.

Temporary or probationary licenses may include limitations based on tonnage, draft, length, or vessel type.

### Section 4.10 — Recognition of Existing Licensed Pilots

All pilots licensed under state and federal laws, statutes, and regulations in force before this Act takes effect shall be granted licenses with the same scope and capacity as those the Director is authorized to issue. This does not relieve them from complying with any continuing-education requirements later established by regulation.

### Section 4.11 — Training Program for Apprentices and Probationary Pilots; Funding

Licensed Puerto Rico pilots in each port shall submit to the Director, for approval, a training program for apprentices and probationary pilots of at least two years' duration.

Among other requirements:

- Upon appointment, a pilot apprentice must report to the licensed pilot in the assigned port and complete a training-observer period of at least ninety (90) days.
- During that period, the apprentice shall accompany licensed pilots through Puerto Rico waters to become familiar with all types of waters, channels, ports, and operating conditions.
- Before being authorized to pilot vessels within prescribed limits, the apprentice must obtain a valid unlimited first-class practical pilot license from the U.S. Coast Guard covering all waters of the assigned port.
- After the observer period, the apprentice must submit vessel-handling sheets for each movement or vessel observed, signed by the supervising pilot and including the vessel's registry, dimensions, tonnage, design, geographic area, weather and sea conditions, time of day, reportable maritime incidents, and supervising pilot comments.
- Requests to increase limits and conditions under which an apprentice may pilot must be submitted to the Director with supporting evaluations and handling sheets.
- To complete the training satisfactorily, the apprentice's authorized limits shall be gradually increased until the apprentice may pilot vessels with a maximum draft three feet less than the normal permissible draft in the port, as proposed by licensed pilots and approved by the Director.

The program will initially be funded by the Operational Trust for the first six (6) months after enactment and thereafter by the Office of Pilotage Affairs.

### Section 4.12 — Grounds for Disciplinary Action

Any act of misconduct, neglect of duty, negligence, incompetence, willful violation of law or regulation, violation of federal or local maritime traffic rules, or failure to exercise the reasonable and prudent care expected of a pilot or apprentice under the same or similar circumstances shall result in disciplinary action.

Examples include, but are not limited to:

- Failure to take precautions or make adjustments for wind, currents, and tides.
- Failure to obtain or properly use available information.
- Failure to navigate cautiously when visibility is limited.
- Navigating channels with less under-keel clearance than prescribed and approved.
- Excessive speed.
- Allowing a license or certificate to be revoked, suspended, restricted, placed on probation, or otherwise acted upon by another regulatory authority.
- Filing or causing to be filed a false report, or failing to file required reports or entries.
- Physical or mental incapacity affecting safe performance, including illness, alcoholism, drug abuse, hearing or vision loss, heart disease, or diabetes.
- Refusal to submit to ordered physical or mental examinations when reasonably required.
- Practicing or offering to practice beyond the lawful scope of authority.
- Delegating professional responsibilities to unqualified persons.
- Agreeing to do something that does not meet acceptable pilotage standards.
- Failing to maintain a valid, unlimited first-class U.S. Coast Guard pilot license for the waters of the assigned port.
- Failing to report incidents required by this Act.
- Violating regulations adopted by the Ports Authority or the Office.

After notice and an opportunity to be heard, the Director may:

- Refuse to certify an application.
- Revoke or suspend a license or certificate.
- Restrict the pilot's practice.
- Impose an administrative fine up to $5,000 per charge or separate offense.
- Issue a written reprimand.
- Place the pilot or apprentice on probation subject to conditions such as treatment, exams, additional training, or re-examination.

A pilot may seek reconsideration before the Director within ten (10) business days, then appeal to the Executive Director of the Ports Authority, and then to the Puerto Rico Court of Appeals within ten (10) business days of notice of the adverse decision.

### Section 4.13 — Reports of Maritime Incidents

Each collision, grounding, stranding, or other accident involving a vessel on which a licensed Puerto Rico pilot or pilot apprentice was serving must be reported immediately to the Director's office. A written report must follow within forty-eight (48) hours. Any incident involving oil or fuel spills, evident environmental contamination, significant bodily injury, or death must be reported immediately by telephone or electronic means to the Director and all relevant authorities, followed by a written report within twenty-four (24) hours.

### Section 4.14 — Applications, Examination, and Fees

The Director shall impose and collect:

- A fee for each application for a Puerto Rico pilot license.
- A fee for each examination, when applicable.
- A fee for each examination review, when applicable.
- An annual fee for each licensed Puerto Rico pilot and each apprentice or probationary pilot.
- A fee for each license renewal.

### Section 4.15 — Vessels Subject to Pilotage

No foreign vessel and no U.S. vessel sailing under registry may enter or leave a port or transit navigable waters of bays, rivers, or any other navigable waterway of Puerto Rico without receiving pilotage service from a pilot licensed by the Director for the relevant port or area, except:

- Vessels exempt from pilotage under U.S. law.
- Single-hull vessels with a draft of less than ten feet.
- Vessels moved within the confines of a dry dock or from the dry dock to an adjacent pier.
- Vessels moved to an adjacent or contiguous pier by lines, without leaving the berth, where the movement is less than the vessel's length.

### Section 4.16 — Unlicensed Pilots; Penalties

Any individual who is not a licensed Puerto Rico pilot or pilot apprentice and who directs the movement of a vessel requiring a Puerto Rico pilot or pilot apprentice on board is in violation of the Act. Unlicensed pilotage is a misdemeanor punishable by a fine of not less than $500 and not more than $5,000 per offense. The court may also award costs, expenses, and attorney's fees.

The vessel, its owner, agent, or representative shall also be required to pay the licensed Puerto Rico pilot the pilotage fees that would otherwise have applied.

### Section 4.17 — Summary Suspension of License or Certificate

The Director shall issue an emergency order suspending, for up to fifteen (15) days or until a hearing is held in favor of the pilot, the license of any pilot or the certificate of any apprentice or probationary pilot who, while rendering pilotage services:

- Is under the influence of alcohol, drugs, narcotics, or controlled substances;
- Carries weapons;
- Operates a vessel negligently; or
- Is involved in a maritime incident resulting in death, bodily injury, or significant property or environmental damage, unless the Director determines the incident clearly was not caused by the pilot's culpable or negligent act or omission.

The Ports Authority shall adopt the regulations necessary to administer this section following public hearings.

### Section 4.18 — Mandatory Expiration of Pilot License

All pilot licenses shall expire when the pilot reaches seventy (70) years of age.

### Section 4.19 — Pilotage Rates and Surcharges

The Director may adopt rules consistent with the Act and the Ports Authority's regulations as necessary to perform the duties imposed by the Act and may recruit the personnel necessary to do so.

All funds received under this section shall be deposited in the account of the Office of Pilotage Affairs in Puerto Rico, and the Office shall pay all expenses incurred under the section.

The Ports Authority is empowered to fix, by regulation, pilotage rates to be charged by licensed pilots and surcharges to defray the direct expenses of the Administrative and Operational Trust and the Office of Pilotage Affairs, and to contribute to the Pension and Welfare Plan Trust of Puerto Rico Port Pilots.

After public hearings under Act No. 38-2017, the existing pilotage rates and surcharges may continue to be billed and collected until the Authority establishes different rates and surcharges.

Requests for rate or surcharge changes must be filed in writing with the Director. If filed by a pilot or a recognized pilot association, the request must include certified financial statements, income and expense statements, a statement of financial condition prepared by a certified public accountant, and all relevant fiscal and non-fiscal information regarding pilotage activities in the affected port, including related entities.

The Director must investigate and make a detailed recommendation to the Board of Directors on whether the requested change is clear, fair, and reasonable. Interested persons who requested notice must receive mailed notice of the public hearing and may file a response, additional or alternative petition, or other pleading within thirty (30) days.

In evaluating a rate change, the Authority shall consider the public interest in promoting and maintaining efficient, reliable, and safe pilotage services and may also consider:

- The public interest in ensuring the availability of duly qualified pilots in each port.
- The average net income of pilots in different ports, including fringe benefits.

- Operational expenses in each port.
- Average time required to render a service and average number of services per watch.
- Prevailing compensation in comparable professional maritime positions.
- Whether the proposed rate change could affect recruitment or cause a shortage of qualified pilots or apprentices.
- Possible changes in vessel traffic.
- Costs of pension and medical plans and the Administrative and Operational Fund.
- Risks inherent in pilotage.
- Characteristics, risks, and hazards of each port.
- Any other factor the Authority deems relevant to a fair and reasonable rate.

Rates and surcharges shall be fixed using a formula based on vessel characteristics such as length, beam, net tonnage, gross tonnage, displacement tonnage, freeboard or height above water, and draft.

The Authority may appoint a hearing officer, or the Director, to prepare a recommendation on pilotage rates, surcharges, or any other necessary matter.

### Section 4.20 — Pilot Associations and Administrative and Operational Trusts

Licensed pilots may organize and be recognized in pilot associations to jointly manage their affairs and promote their common interests.

A pilot association representing the majority of pilots serving a port may seek recognition from the Director, but no more than one group or association shall be recognized per port.

To obtain recognition, the association must submit its organizational documents and operating regulations for approval. Those documents must provide for:

- Election of officers by majority vote of members holding unlimited licenses.
- Equitable division of tasks and assignments among members.
- Collection of service fees into a common fund.
- Equitable distribution of net income after expenses.
- Monetary fines or sanctions for unauthorized absence from work or violation of law or regulations.
- Membership requirements open to any licensed pilot serving the relevant port or ports.
- Any other provision relevant to the operation of a pilot association.

The trustees of each administrative and operational trust shall be: two officers elected by each recognized pilot association, two officers elected by the Puerto Rico Shipowners Association for each recognized pilot association, and one representative of the Government of Puerto Rico appointed by the Board of Directors of the Ports Authority. Members, officers, or employees of the Ports Authority or the Office of Pilotage Affairs may not simultaneously serve as trustees.

The Administrative and Operational Trust shall be funded by a surcharge imposed on vessels that receive or are required to receive pilotage services. All administrative and operational expenses of pilotage services, except compensation to licensed pilots, shall be paid from trust funds. The Trust may also seek funds from other sources, subject to approval of an appropriate work plan by the Director.

Trustees shall use trust funds solely to provide for effective and reliable pilotage administration and operations. Trust funds may not be disbursed as personal income to pilots.

Trustees shall be responsible for accounting and administration of the funds, including annual operating and capital budgets for review by the Office, an annual certified financial statement, and an operations report. Capital expenditures over $20,000 require prior approval of the Director.

One or more pilots may incorporate under Puerto Rico law to fulfill their duties and obligations in corporate form.

### Section 4.21 — Pension and Welfare Plan for Puerto Rico Port Pilots

The Pension and Welfare Plan Trust for Puerto Rico Port Pilots, as authorized by Resolution No. 8304 of March 1, 1983, as amended by Resolution No. 90-63 of September 19, 1990, shall remain in effect as created and maintained by the plan documents.

It shall be operated and administered in light of the guidelines provided by the federal Employee Retirement Income Security Act of 1974 (ERISA), as amended.

### Section 4.22 — Delegated Power of the Director

The Director of the Office of Pilotage Affairs in Puerto Rico shall have power to adopt and promulgate rules and regulations to enforce this Act, including the imposition of charges necessary to finance the Office's administrative and operational costs, to the extent specifically delegated by the Puerto Rico Ports Authority.

### Section 4.23 — Transfer of Obligations, Budget, Property, and Rights

All obligations, budget, property, and rights of the Puerto Rico Pilotage Commission shall transfer to the Puerto Rico Ports Authority.

## Article 3 — New Article 7: Harbor Captain of the Port of San Juan

A new Article 7 is created entitled **"Harbor Captain of the Port of San Juan."**

The text visible in the OCR establishes at least the following:

- The position of **Harbor Captain of the Port of San Juan** is created and attached to the Puerto Rico Ports Authority.
- The Harbor Captain shall be appointed by the Governor of Puerto Rico.
- The Harbor Captain shall serve at the pleasure of the appointing authority.
- The person appointed must be a professional with recognized expertise in port security.

- The office shall have the functions, and the fair and necessary powers to carry them out, without prejudice to federal jurisdiction over operations in the Port of San Juan.