(H.B. 2329)
(Conference)

PARA USO OFICIAL

**(No. 226)**

**(Approved August 12, 1999)**

## AN ACT

To regulate the profession of Harbor Pilot in Puerto Rico; create the Puerto Rico Harbor Pilotage Commission; define its functions, powers and duties; impose sanctions, authorize the fixing of rates; empower the pilots to organize, recognize and maintain the Administration and Operation Trusts as well as the Puerto Rico Harbor Pilots Pension and Welfare Plan; and repeal the laws that are in conflict with this Act, including, but without being limited to Act No. 151 of June 28, 1968 and Regulation No. 4286 promulgated by the Administrator of the Ports Authority, specifically, Sections 6, 8 and 10 through 18.

## STATEMENT OF MOTIVES

Over ninety percent (90%) of the goods imported to Puerto Rico arrive by sea. The most active port is that of San Juan, where seventy-five percent (75%) of the Island's trade is located. The Port of San Juan has a very hazardous access which requires special control of port traffic, as well as very strict security measures, and a Harbor Pilot service of excellence. In addition, the other available ports in Puerto Rico require the assistance of Harbor Pilots to offer the safety guarantees needed in these waters.

The waters, ports, bays, outlets, coves, and sounds are natural resources of vital importance to Puerto Rico. The Legislature of Puerto Rico, in recognition of this fact, has the utmost interest, for public policy, health and safety reasons, to create a law to regulate the activity performed by the harbor pilots who offer and render said service to the ships that sail on the navigable waters of Puerto Rico, in

order for the natural resources, the environment, the lives and the property of the citizens to be fully protected. Section 8501 (a) of Title 46 of the United States Code, provides, with certain exceptions, that "the harbor pilots of bays, rivers and ports of the United States shall be regulated solely according to the laws of the State". The term "state" is defined in Section 2101(36) of the same title, and includes the territory Puerto Rico. Thus, it has the legal power to regulate Harbor Pilotage in Puerto Rico.

At present, the Puerto Rico Ports Authority is in charge of controlling the port traffic of ships. Historically, the Authority has not had the means to supervise harbor pilotage. Therefore, the need for operating and administrative changes in the handling of local harbor pilotage is recognized. The creation of the Puerto Rico Harbor Pilotage Commission is intended to solve this problem. This Commission shall be responsible for regulating the admission of harbor pilots to practice in Puerto Rico, and to enforce pilotage regulations, as well as fixing rates and other responsibilities fixed by this Act.

The Legislature recognizes the need to have a Harbor Pilotage Commission to bring Puerto Rico in line with all the other jurisdictions in the United States and allow us to keep our ports as highly competitive as other similar ones in the world.

## BE IT ENACTED BY THE LEGISLATURE OF PUERTO RICO:

Section 1. – This Act shall be known as the "Puerto Rico Harbor Pilotage Commission Act".

Section 2. – Definitions – For the purposes of this Act, the following terms and phrases shall have the meanings stated below:

PARA USO OFICIAL

3

(a)    Vessel – includes any description of sea craft or other manufactured equipment capable of being used as a means of transportation in water.

(b)    Harbor Pilot – means the licensed local harbor pilot or designated certified harbor pilot.  A harbor pilot is an experienced trained and skilled person, who, through practice, acquires the knowledge of the place in which he navigates which qualifies him to direct and visually direct the course of the vessels, along the coast or within the port, respectively, as the case may be.

(c)    Apprentice Harbor Pilot – harbor pilot apprentice who does not hold a harbor pilot license issued by the Puerto Rico Harbor Pilot Commission.

(d)    Probationary Harbor Pilot - harbor pilot who holds a temporary or provisional license for a limited time as granted by the Puerto Rico Harbor Pilot Commission.

(e)    Commission – means the Puerto Rico Harbor Pilot Commission.

(f)    Port – place on the coast of Puerto Rico with natural protection from the winds and readied for the safety of the ships and to expedite the operations of seagoing traffic.  At present the ports of San Juan, Ponce, Mayaguez, Arecibo, Fajardo, Vieques, Culebra, Guayama (Las Mareas), Guayanilla, Guánica, Yabucoa, Aguirre, Jobos, Aguadilla and Tallaboa are in operation.

PARA USO OFICIAL

4

(g)   Waters subject to pilotage in Puerto Rico – means all navigable waters of Puerto Rico as provided by the Congress of the United States in Section 8 of the Federal Relations Act, 48 USC749.0. as amended.

(h)   Pilot – the officer who captains and directs a ship while navigating, including the one who knows how to navigate on high seas by observing the stars and/or by using electronic equipment. It is usually the First Mate of a merchant ship.

(i)   Pilotage – means to guide a ship, especially at the entrance, changes and exits of ports, bays, inlets, or through narrow channels and sounds, as well as in navigating from one port to another.

(j)   Harbor Pilotage or Pilotage – means the act of pilotage. The science or art that teaches the pilotage profession. Pilotage is also the fee or stipend paid by the ship to the harbor pilot for his pilotage services.

(k)   Uniform Administrative Procedures Act – means Act No. 170 of August 12, 1988, as amended.

(l)   License or certificate – means the document issued by the Commission to the harbor pilot and apprentice harbor pilots which authorizes them to perform pilotage in Puerto Rico.

Section 3. - Statement of Public Policy –

(a)   Harbor pilotage is an essential service, of such importance that its continued existence must be guaranteed by the Laws of Puerto Rico.

(b)    Since safety in maritime traffic is the primary objective in the regulation of harbor pilotage and due to the economic significance of the rendering of the service, the need of a large investment of capital to provide the required service, and the fact that harbor pilots are rendering services that are deemed to be essential to the economy and the public benefit, it is hereby determined that economic regulation, rather than competence in the market, is better served to protect the public health, safety and benefits.

(c)    The Puerto Rico Harbor Pilotage Commission shall have the power to issue Harbor Pilot licenses in the number that it discretionally determines as necessary and in an adequate number to render the service.  The Commission shall provide the procedure to be offered to fix the rates and other economic aspects of the regulation of Harbor Pilotage, which is done with the intention of establishing state-of-the-art regulations, with the purpose of protecting the interests of the parties engaged in pilotage, as well as protecting the security and economy of the people of Puerto Rico.  This Act seeks the rendering of a pilotage service which is reliable, stable, economical and safe in the ports of Puerto Rico.

Section 4. – Rendering of Services – No person may perform pilotage in the ports of Puerto Rico unless he/she fulfills the duties and obligations, which without being limited thereto, are included below:

(a)    Render services to any person who requests them, except for security reasons which prevent it, or any others that the Commission may determine by regulations.

(b) Harbor pilots are hereby prevented from unilaterally determining rates or other charges. The Commission shall determine the rates and other fees to be charged for pilotage services.

(c) Harbor pilots, under the supervision of the Commission, shall acquire and maintain ships, office facilities, equipment, a dispatching system, communication equipment and any other facility or equipment that is necessary and will serve as support to a modern, reliable and safe pilotage service.

(d) Harbor pilots, in the ports they perform, have to train the pilotage candidates assigned to them, as provided by the Commission. Failure to comply with these provisions shall bring about disciplinary action against the pilot, pursuant to this Act. It shall not be construed that this provision will create a relationship as an agency or employer-employee relationship between the harbor pilot and the candidate to the practice of pilotage in Puerto Rico.

(e) An area shall be designated where the harbor pilot's boat or vessel shall draw up alongside the ship that enters port; provided that:

(1) The harbor pilot shall board the ship that is entering, before the ship reaches the buoys that mark the harbor entrance.

(2) The harbor pilot shall arrive at the command bridge in time to exchange information with the officer in command before taking over the command, to become familiar with the special steering characteristics of the ship, or any other special requirement.

(3)     The harbor pilot shall take command from the captain or officer in charge with sufficient time to align the prow of the ship with the center of the entering channel to thus avoid endangering the ship or risking an accident.

(4)     When the vessel leaves port, the harbor pilot shall remain on board until the ship has left the buoys that mark the limits of the entering channel or any possible or foreseeable danger; provided, that under normal circumstances he/she shall not disembark within the port.

Failure to comply with the obligations provided in this Section shall bring about the corresponding disciplinary action pursuant to this Act.

Section 5. - Puerto Rico Harbor Pilot Commission -

The Puerto Rico Harbor Pilot Commission is hereby created to authorize, regulate, supervise and impose sanctions on pilotage as defined in subsection (j) of Section 2 of this Act.  The Commission shall have the authority and the budget to establish disciplinary rules, traffic rules, and to acquire and finance any type of vessel, equipment, or materials needed to carry out its functions. The Commission shall adopt and promulgate maritime traffic regulations and establish the limits for the harbor pilots to board or disembark from the ships.  The Commission shall fix the pilotage rates and shall possess and exercise the powers related to the protection of maritime traffic in the waters and ports of the Island.  It shall have the capacity to act autonomously, as well as to sue and be sued.

PARA USO OFICIAL

Section 6. – Commissioners –

(a)    Composition

The Commission shall be composed of seven (7) Commissioners, one of whom shall be its Chairperson, appointed by the Governor of Puerto Rico, with the advice and consent of the Senate. The members of the Commission shall be United States citizens, and residents of the Commonwealth of Puerto Rico. The Chairman of the Commission shall be its executive officer, and may designate an Associate Commissioner to act as chairman in his/her absence. The presiding Commissioner shall have the discretion to assign areas of work, in the adjudicative as well as the quasi-legislative and/or operational areas of the agency, to one or more Commissioners. It shall be composed as follows: Two (2) of the members shall be licensed harbor pilots, who are actively practicing their profession; one (1) to represent the San Juan Harbor Pilots, and the other, the Harbor Pilots of the Island, who are nominated by each Harbor Pilotage Association; two (2) of whom shall be actively involved in their professional or business capacity in the shipping business, who are users of the pilotage services and are nominated by the Puerto Rico Shipowners Association; two (2) who are not or were involved financially interested or related to the pilotage profession, shipping business or maritime industry who shall represent the public interest; and one (1) who represents the Government of Puerto Rico, who shall be a Ports authority employee. For the purposes of this Section, a "user of the pilotage services" is any person who is an agent or representative of any person with a

PARA USO OFICIAL

9

proprietary interest in a business that regularly employs harbor pilots with a Puerto Rico license, with the purpose of providing pilotage services, or any person who is a direct employee thereof.

(b)    Term of Office

The first Commissioners appointed by virtue of this Section, shall hold office for terms of two (2), three (3) and four (4) years, respectively. These terms shall be fixed by the Governor, but their successors shall be appointed for a term of four (4) years. Any person chosen to fill a vacancy shall be appointed solely for the remainder of the term of the Commissioner he/she succeeds. Vacancies that occur in the Commission shall in no way impair the right of the remaining Commissioner to perform all the powers thereof. Upon the expiration of the term of any Commissioner, he/she may continue performing his/her functions until his/her successor has been appointed and has taken office.

The Governor shall have the authority to remove Commissioners for failing to perform the obligations required in this Act, for incompetence or unprofessional conduct. A majority of the members of the Commission shall constitute a quorum.

Section 7. – Certification of Commissioners; Site –

Immediately, and before taking over the duties of their office, the Commissioners shall take an oath of constitution and shall register it in the Department of State; which shall consequently issue said Commissioner a

certificate of his/her appointment.  The Commission shall have its seat in the city of San Juan, Puerto Rico.

Section 8. – Organization of the Commission; Meetings –

(a)    Immediately after the designation, approval and appointment of the Commissioners, the Commission shall meet, organize and establish bylaws for its administration, pursuant to the Uniform Administrative Procedures Act, Act No. 170 of August 12, 1998, as amended.  The Commission shall elect the Vice Chairman and the Secretary/Treasurer every two years, from its Commissioners.  When they attend official meetings of the Commission they shall receive an emolument as per diems of seventy-five dollars ($75.00) for each day.

(b)    The Commission shall hold one or more regular quarterly meetings in a convenient place on the Island, on the day or days selected by the Commission.  The special meetings may be called by a majority of the Commissioners.  The Secretary of the Commission shall deliver a notice of all the regular and special meetings to all the Commissioners, and also to any person who should be notified, by law.

(c)    Within fourteen (14) calendar days following each meeting of the Commission, it shall issue a written report to each Harbor Pilot explaining any action taken by the Commission at the meeting, if any determination is made that affects pilotage conditions.

PARA USO OFICIAL

Section 9. – Personnel; employment –

The Commission shall appoint or hire all necessary personnel to assist in complying and executing each and every one of the powers, duties and obligations established in this Act.  These employees shall not be active harbor pilots, or former pilots, nor ship owners or former ship owners, or members of the Commission.  These persons shall be authorized to fulfill and execute all the duties and obligations and the work that is assigned to them by the Commission.  Except as otherwise provided in this Act, the Commission shall provide all legal assistance needed to execute the stipulations of this Act.

Section 10. – Number of Harbor Pilots; reciprocity between ports –

The Commission shall determine the number of Harbor Pilots for each port and shall issue the licenses and certificates it deems necessary based on the demand for pilotage services, to watch over the public interest of maintaining efficient and safe pilotage services.  Based on the financial situation of the ports, the Commission shall adopt rules authorizing the transfer of harbor pilots by applying the seniority system.   It may also authorize license reciprocity between parts, if it serves the best public interest.

Section 11. – Qualifications for candidates as apprentice pilots –

(a)    In addition to meeting other the requirements of this Act, each candidate to an appointment and licensing as a harbor pilot shall:

(1)    Be at least 21 years of age, established by a copy of his/her birth certificate or other legal proof of age.

(2)    Have completed and approved 12 years of formal education, established by a high school diploma or by equivalent evidence thereof to the satisfaction of the Commission.

(3)    Be mentally and physically healthy, established by documentary evidence after having satisfactorily passed a complete physical and psychiatric examination administered by a licensed physician and by a psychiatrist, respectively, who shall be designated by the Commission to administer these examinations, within a term of thirty (30) days before presenting his/her application. The Commission, in consultation with the Department of Health, and the Mental Health and Addiction Services Administration, shall adopt through regulations, the requirements to accredit the physical and psychiatric examination, as well as the rules that will establish the minimum patterns of physical and mental capacity needed to perform the professional duties and obligation of an apprentice harbor pilot. Said patterns shall include zero tolerance of the consumption of alcohol, drugs, narcotics, and any other regulated controlled substance, unless the person is under the care of a physician or psychiatrist, or the controlled substance is prescribed by said physician or psychiatrist. To maintain eligibility as a candidate, each candidate must provide documentary evidence each year of having passed a complete physical and psychiatric examination administered by a licensed physician and a psychiatrist, respectively. The physician and psychiatrist must · be approved by the

PARA USO OFICIAL

Commission and know the minimum patterns in order to certify that the holder of the certificate satisfactorily meets the same. The patterns for the apprentice and probation pilots shall include drug testing, and provide for the presentation of a biannual police certificate in evidence of good conduct.

Have had maritime experience which is satisfactory to the Commission, evidenced by documentation in one of the following services while holding a United States Coast Guard license:

(a)    For at least two (2) years or 720 days of service at sea during a five (5)-year period, one (1) year or 360 days of which must have been sailing under an unlimited license, at least, issued by the United States Coast Guard as pilot's mate, or

(b)    At least two (2) years or 720 days of service during the immediately preceding five (5)-year period, in a deep water port of the United States or the Caribbean, serving under an unlimited United States Coast Guard license, or of a duly-constituted regulatory government entity as an active first class pilot, in addition to holding an unlimited pilot mate's license, or captain of a cargo vessel or tugboat of at least one thousand six hundred (1,600) gross tons registered on the ocean, acting under the authority of a duly-constituted regulatory government entity, or

(c) At least two (2) years or 720 days of experience in tugs for a period of five (5) years, of which one year must have been serving as captain of a combined freight-carrying lighter of at least 5,000 gross tons registered under a United States Coast Guard license.

(d) At least three (3) years experience as an on-deck officer during the period of ten (10) years prior to applying for admission, of which he/she should have been serving as chief, second-in-command or navigation and operations officer aboard a United States Navy vessel or of any other branch of the armed forces of the United States or the United States Coast Guard, in vessels of more than 1,600 gross tons, for at least one (1) year, and must also hold an unlimited First Mate license of the United States Coast Guard.

(5) Submit documentary evidence of the time served at sea as an officer, and other official documents, as required by the Commission.

(6) Submit a copy of the unlimited First Class pilot's license issued by the United States Coast Guard, which covers the waters of the port or ports in which, or to which the apprentice pilot shall be assigned for his/her apprenticeship.

(7) Submit all necessary training and continuing education certificates that may be required by the Commission.

PARA USO OFICIAL

(8)    The Commission may adopt rules authorizing equivalent combinations of services of two or more of the areas indicated in subsections (a) (4) (a.), (b.), (c.), and (d.). The Commission may render ineffective the requirements of subsection (a)(4), when it is necessary to fill a vacancy and there are no applicants for the vacancy with the necessary experience.

Section 12. – Qualifications for licenses as Harbor Pilots of Puerto Rico –

(a)    In addition to any other requirement provided by this Act, each licensed Harbor Pilot candidate of Puerto Rico must:

(1)    Be at least twenty-one (21) years of age or over, evidenced by a copy of the birth certificate or other legal proof of age, when requesting the license.

(2)    Have completed and approved twelve (12) years of formal education, evidenced by a high school diploma or by equivalent evidence thereof, which is satisfactory to the Commission

(3)    Be in good physical and mental health, evidenced by documentary evidence after having passed a complete physical and psychiatric examination administered by a licensed physician and a psychiatrist, respectively, who are accepted by the Commission, within thirty (30) days prior to his/her application for admission or renewal of the Harbor Pilot License.

(4)    The Commission shall adopt rules to establish the parameters of the physical and psychiatric examinations, which shall include

PARA USO OFICIAL

16

minimum patterns of the physical and mental capacity needed to perform the professional duties and obligations of a licensed harbor pilot of Puerto Rico. Said parameters shall include zero tolerance of any consumption of alcohol, drugs, narcotics or any other regulated controlled substance, unless the individual is under the care of a physician or psychiatrist and the controlled substance is prescribed by said physician or psychiatrist. To keep the Puerto Rico Pilot license, each licensed Harbor Pilot shall provide annual documentary proof of having satisfactorily passed a complete medical and psychiatric examination administered by a licensed physician and psychiatrist, respectively. The physician and psychiatrist must have been accepted by the Commission and must know the minimum parameters, and certify that the license meets them satisfactorily. The patterns for licenses shall include drug testing to be performed at random by accredited laboratory technicians, and provide for the submission of biannual police records in evidence of good conduct.

(5) Have completed the required training as apprentice pilot, as approved by the Commission. At the time of submitting the application, each candidate shall have an unlimited valid harbor pilotage license from the United States Coast Guard which covers all the waters of the port or ports for which the Puerto Rico Harbor License is requested, and must have completed the pilotage apprenticeship training in the port for which the Puerto Rico Pilotage License is requested.

(6)     Pilotage candidates shall submit for approval, the training and continuing education certificates that the Commission may require prior to issuing their license.

Section 13. – Issuing of Licenses –

The Commission shall issue all original licenses for a trial period that shall not exceed six (6) months.  On expiration of this initial period, the Commission may issue another trial license for another period that shall not exceed six (6) months.  After completing a term of twelve (12) months with a trial license, the Commission must evaluate the record as a whole and determine whether it shall issue a permanent license or not.

Temporary or trial licenses may contain limits as to tonnage, draft, length of ship, or type of vessel.

Section 14. – Accreditation of licensed harbor pilots –

All harbor pilots licensed under Commonwealth and Federal laws, statutes and regulations prior to the effectiveness of this Act shall be granted all licenses with the same scope and extent as those that the Commission is empowered to grant.  This will not relieve them from subsequently complying with the continuing education requirements that the Commission may establish by regulations.

Section 15. – Apprentice and Probationary harbor pilots training program; financing –

(a)     Licensed harbor pilots in Puerto Rico in each port shall submit to the Commission for approval, a training program for apprentice and probationary pilots of at least two years duration, which apply to all apprentice pilots appointed to serve in each port.  The following requirements constitute the parameters by which the apprentice and probationary pilot training programs shall be established and executed by licensed harbor pilots in all the ports of Puerto Rico:

(1)   Upon receiving an appointment, an apprentice pilot shall report to the licensed harbor pilot of Puerto Rico at the port to which he/she was assigned to serve, for a period of not less than ninety (90) days, as an apprentice observer.  During said period:

    (a)   The apprentice shall accompany the licensed harbor pilots on the waters of Puerto Rico, and thus become familiarized with all types of waters, channels and ports under diverse conditions.

    (b)   The apprentice shall obtain a valid unlimited United States Coast Guard first class harbor pilot license that covers all waters of the port to which he/she will be assigned before the Commission authorizes him/her to pilot vessels within the limits and conditions established by the licensed harbor pilots in charge of the training.

(2)   Upon completing the period as apprentice observer, the apprentice pilot shall submit a vessel steering sheet for apprentice pilots for each movement or vessel in which he/she accompanied a licensed Puerto Rican Harbor pilot.  Each of the sheets must be signed by the pilot in charge who shall accompany the apprentice pilot, and shall contain at least:

    (a)   The ship registration, measurement, gross tonnage, and design;

    (b)   The geographic area or port in which the vessel was piloted;

    (c)   Climate and marine conditions found;

    (d)   Hour of the day;

(e)    Any maritime incident that must be informed pursuant to the requirements of this Act;

(f)    The comments of the pilot in charge, provided that the apprentice pilot under his supervision was in command of the vessel to direct is navigation.

(3)    Each application to increase the limits and conditions under which an apprentice pilot will be authorized to pilot shall be submitted to the Commission for its approval. It must be accompanied by the evaluation and the vessel steering sheet required under subsection 2, above, for apprentice or probationary pilots, for each vessel that the apprentice pilot has piloted since the last time that his/her limits and conditions were increased by the Commission.

(4)    To satisfactorily complete the training program, the pilotage limits and conditions for the apprentice pilot will be gradually increased, until he/she is authorized by the Commission to pilot vessels with a maximum draft of three feet less than the normal allowable draft in the port at which the apprentice pilot shall be authorized to pilot; as proposed by the licensed pilots of Puerto Rico in that port and approved by the Commission.

(5)    The apprentice and probationary pilot training program shall be defrayed by the Operating Trust during the first six (6) months after the approval of this Act. Subsequently, it shall be defrayed by the Puerto Rico Pilotage Commission.

Section 16. – Grounds to justify disciplinary action by the Commission –

(a)    Any act of improper conduct, neglect of duty, negligence or incompetence, any voluntary or premeditated violation of any act or

regulation, including Federal or local marine traffic laws to be complied with by local pilots or apprentice pilots, or any failure to exercise reasonable and prudent caution that is expected of a pilot or an apprentice pilot under the same or similar circumstances, shall bring about disciplinary action. Some acts or omissions incurred by pilots or apprentice pilots that bring about disciplinary action, include, but are not limited to:

(1)   Failure to take precautions or make adjustments or concessions for foreseeable effects of winds, currents and tides.

(2)   Failure to obtain or adequately use information available to the pilot.

(3)   Failure to navigate with care when visibility is limited.

(4)   Navigate in channels where the depth is less than that prescribed and recommended by pilots and approved by the Commission, as the minimum space that must exist between the keel and the seabed.

(5)   Excess speed.

(6)   Allowing the harbor pilot license or certificate to be revoked, suspended, restricted, placed on probation, or, otherwise allow that any action be taken upon it, including, but without limitation, the abandonment or deposit thereof while awaiting the filing of charges or criminal action by the regulating authority of another state, the Federal Government, Puerto Rico, or other country, of an act that would be grounds for disciplinary action if it occurred while pilotage under the authority of the harbor pilotage license or apprentice pilot certificate.

(7)    To prepare, complete, or incite another person to prepare or complete a report that the pilot knows is false, or willfully or negligently fail to file, or willfully prevent or obstruct the filing of reports, or noting or writing in the records as required by the laws of Puerto Rico or by the rules of the Commission. Only those reports or annotations that have been signed by the pilot in his/her capacity as apprentice pilot or harbor pilot shall be considered.

(8)    Suffer some physical or mental disability that will prevent him/her to perform with the needed skill and safety, and with the duties and obligations as a pilot, whether due to illness or the abuse of alcohol, drugs, narcotics or substances of any other type, or caused by some physical or mental condition such as, but without being limited to, the loss or limitation of sight or hearing, coronary aliments or diabetes. In order to enforce this provision, the Commission shall have the authority to compel a pilot or apprentice pilot to submit to a physical and a mental examination by a physician and a psychiatrist accepted by the Commission, as well as in those cases in which there is a reasonable suspicion that the pilot is incurring any of the definitions prohibited by this clause. The refusal of a pilot or apprentice pilot to submit to such examination, when ordered to do so, shall constitute an admission of the allegations against him/her unless the refusal is due to circumstances beyond his/her control; as a result of which the Commission may issue an emergency order, suspending the pilot license or apprentice pilot certificate pending compliance with the order to submit to

PARA USO OFICIAL

the physical, or mental examination, or both. The pilot or apprentice pilot affected by this provision, shall be allowed a reasonable opportunity, at reasonable intervals of time, to show that he/she can resume pilotage competently and with reasonable safety, skill and ability.

(9)    Practice or offer to practice beyond the extent allowed by law, or accept and perform those professional responsibilities which the pilot recognizes or has reason to know that he/she does not have sufficient skill to execute.

(10)   Delegate professional responsibilities on another person when the pilot knows or has reason to know that the person on whom he/she delegates is not qualified, for lack of training, experience, or a license, to perform the functions of a pilot.

(11)   Make a commitment to do something that does not meet the acceptable pilotage standards.

(12)   Fail to keep a valid, unlimited and first class pilotage license issued by the United States Coast Guard in effect, for the waters of the port to which the pilot is assigned.

(13)   Fail to comply with the obligation to inform any incidents according to Section 15 of this Act.

(14)   Violate any provision of any regulations adopted and promulgated by the Commission.

(b)    When the Commission determines that a pilot or apprentice pilot committed any of the acts indicated in subsection (a), upon notice to the said pilot, giving him/her the opportunity to be heard. The Committee shall issue an order imposing one or more of the following penalties:

(1)    Refuse to certify an application for a license or certificate.

(2)    Revoke or suspend the license or certificate.

(3)    Restrict the pilot's practice.

(4)    Impose an administrative fine that shall not exceed $5,000.00 for each separate charge or offense.

(5)    Admonish the pilot or apprentice pilot in writing.

(6)    Place the pilot or apprentice pilot on probation for a period of time subject to the conditions established by the Commission, including, but not limited to a requirement for the pilot to submit to treatment, a complete physical and psychiatric examination, additional training or a re-examination.

In the event that the Commission should impose any of the above sanctions, the pilot may appear before the Commission itself, through a bill of review, within the next ten (10) working days from the receipt of the Commission's notice of the sanction. If the penalty imposed is sustained, the pilot may appear before the competent Circuit Court of Appeals within ten working days following the receipt of the notice of the Committee's decision. The Commission shall serve its decisions on the interested parties through certified mail. The Superior Court shall summon the parties to a hearing in a period not greater than thirty (30) calendar days from the filing of the suit.

(b)    The Commission shall not reinstate the license or certificate for the pilot or apprentice pilot or issue a license or certificate to a person who has been previously disqualified through a final order of the Commission until the Commission is satisfied that said person meets all the terms and conditions of said order and that said person is qualified to continue to practice pilotage or through an order of a competent court to such ends.

PARA USO OFICIAL

(c)    It shall be understood that the pilot or apprentice pilot acts under the authority conferred by the local license or certificate while piloting a foreign vessel or a United States vessel trading with a foreign country, whether it be guiding it in or out of the port or moving it from one dock to another within the port.  In rendering said service, the pilot or apprentice pilot shall answer to the Commission for his/ her actions.

Section 17. – Reports of maritime incidents –

Each collision, grounding, stranding, or other accident in which a vessel on which a licensed pilot or apprentice pilot of Puerto Rico was involved, must be reported by the pilot to the Office of the Commission immediately. In addition, the pilot shall submit a written report to the Commission in the prescribed form and manner within forty-eight (48) hours of the incident. Nevertheless, any maritime incident that involves spillages of oil or other combustible material, evident environmental pollution, significant physical injuries, or death, shall be reported to the Commission and to all pertinent authorities by the pilot, immediately, by telephone or any electronic medium.   Besides he shall also submit a written report, within 24 hours of the incident.

Section 18. – Application, examination and fees. –

(a)    The Commission shall impose and collect the following fees:

(1)    A fee for each application to obtain a Puerto Rico pilotage license.

(2)    A fee for each examination to obtain the Puerto Rico pilotage license, when applicable.

(3)    A fee for each review examination, when applicable.

(b)    The Commission shall impose and collect an annual fee from each Puerto Rico licensed harbor pilot, and from each apprentice or probationary pilot.

(c)    The Commission shall collect a fee for each license renewal.

Section 19. – Vessels subject to pilotage –

All vessels subject to pilotage and those that are not, but request it, shall have a pilot licensed by Puerto Rico on board to direct the movements of the vessel when they enter or leave the ports of Puerto Rico or when they travel in the navigable waters of the bays, rivers, or any other navigable body of water of Puerto Rico, except:

(a)    Vessels exempted from pilotage by the laws of the United States;

(b)    Single hulled vessels with a draft of less than 7 feet of water;

(c)    Any vessel when it is moved from one slip to another within the confines of a dry dock or from the dry dock to a wharf adjacent to the dock;

(d)    Any vessel that is being moved to an adjacent or contiguous dock by means of its lines, without weighing anchor, provided the move is less than the length of the vessel.

Section 20. – Unlicensed Pilots; Penalties –

(a)    Any individual who is not a licensed pilot or an apprentice pilot, who directs the movements of a vessel that requires a licensed Puerto Rican pilot or an apprentice pilot to be on board, shall be in violation of this Act. Any person who pilots a vessel without a license shall be guilty of a misdemeanor and shall be imposed a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000) for each offense. The Court may also impose the payment of costs, expenses and attorney fees.

(b) The vessel, its owner, agent or representative, shall be bound to pay the licensed Puerto Rican pilot, at the port in which the violation of subsection (a) of this Section occurs, the pilotage rates that otherwise would apply if the pilot had been used correctly. If the pilots or their representatives resort to legal action to recover said rates, the Court may impose the costs, expenses and attorney fees, for the prevailing party.

Section 21. - Summary suspension of license or certificate for certain violations: Rules –

(a) The Commission shall issue an emergency order suspending the license of any pilot or the certificate of any apprentice or probationary pilot, that shall not exceed fifteen (15) days or until a hearing is held, who upon providing pilotage services is under the effects of alcohol, drugs, narcotics, controlled substances, bears arms, or pilots a vessel in an negligent way, and/or is involved in a maritime incident that causes the death of a person, or, as determined by the rules of the Commission, has caused physical harm to a person or significant damage to property or the environment, unless the Commission clearly determines that that incident was not the result of the action or omission of the pilot or the apprentice or probationary pilot.

(b) Prior to February 1, 2000, the Commission shall adopt Regulations to administer the provisions of this Act, after having provided for a process of public hearings to such effects, with the participation of all interested sectors and the public in general.

Section 22. – Mandatory expiration of the pilotage license. –

The licenses of all pilots shall expire when the pilot attains seventy (70) years of age.

Section 23. - Rates for Pilotage and Surcharges –

(a)     The Commission is authorized to adopt such rules, which being consistent with the Act, are, at the same time, necessary for it to comply with the duties and obligations imposed by this Section. The Commission shall recruit whatever personnel is needed to comply with the duties that are imposed by this Section.

(b)     Any funds received, pursuant to this Section shall be deposited in the account of the Puerto Rico Pilotage Commission.

The Commission shall pay all expenses incurred pursuant to this Section.

(1)     The Commission is empowered under this Act to fix, by regulations, pilotage rates and surcharges to be charged by the licensed pilots, to defray the direct expenses of the Commission's Administration and Operations Trust, and to be covered into the Puerto Rico Harbor Pilot's Pension and Welfare Plan of the Trust. After holding public hearings pursuant to the Uniform Administrative Procedures Act, Act Number 170 of August 12, 1988, as amended, the pilotage and surcharge rates in effect on the date the Act becomes effective, may be billed and collected until the Commission fixes different rates and surcharges, as provided in the Act.

(2)     All applications for changes in the rates or surcharges shall be filed, in writing, at the Commission, pursuant to the rules it determines. In the event that an application for the change of rates or surcharges is filed by a pilot or a duly-recognized pilots association, it must include a Certified Financial Statement, an Income and Expenses Statement, and a General Balance Sheet

prepared by the Certified Public Accountant of the pilot or the pilots association that requests it, and all relevant fiscal and non-fiscal information on the pilotage activities within the harbor in question, including the financial information of any entity, or entities, property, in whole or in part, of the pilot or the pilotage association that provides or provide services related to pilotage in harbors or ports. In the case of applications for changes in rates or surcharges filed by persons who are not pilots or pilotage associations, the information regarding financial statements shall be required solely in the measure that said information is relevant to the application or subsequent arguments before the Commission.

(3)    The commission shall investigate and determine whether the change in the rate or surcharge will be aboveboard, fair and reasonable in accordance with the rules established by the Commission. In addition to the publication required by law, the public hearing to determine the pilotage rates and surcharges shall be served by mail to every person who formally requested to be notified of any application for a change of rates or surcharges in the harbor in question. Said notice shall inform all interested parties that they may file an answer to the petition, an additional or alternate petition, or any other allegation, within thirty (30) days following the publication of the notice, and shall specify the date that the answer or any responsive allegation must be filed. The Commission must conclude its investigation, hold a public hearing, and determine whether it

will modify the pilotage rates or surcharges, within ninety (90) days following the filing of the complete applications.

(4) When the Commission examines whether the application for a change in the rates or surcharges will result in a clear, fair or reasonable one, it must consider the public interest in promoting and maintaining efficient, reliable and safe pilotage services. The Commission may also consider the following factors:

(a) The public interest that there be duly-qualified pilots in every port that will render the service to every vessel that requires it.

(b) The determination of the average net income of the pilot in the different ports, including the worth of all the other fringe benefits they receive from pilotage. For the purposes of this subsection, "net income of the pilots" shall mean the total rates charged for pilotage in a port, less the operating expenses that are not being defrayed by other sources, divided by the number of active pilots in the port.

(c) The operating expenses of the pilots in each port.

(d) The average time it takes each pilot to render a service and the average number of services rendered while on duty.

(e) The prevailing remuneration of individuals in the maritime industry in a professional position comparable to that of pilots, taking into consideration that in order to attract persons who qualify as pilots of excellence, the

pilot's compensation must be equal to or higher than that of said individuals.

(f)     The impact that the change of rates can have on the compensation of an individual pilot, if said change can provoke a dearth of qualified pilots or apprentice or aspirant pilots.

(g)     Possible changes in the traffic of vessels.

(h)     Cost of the retirement and medical plans and the cost of the Administration and Operation Fund.

(i)     Risks inherent to piloting.

(j)     The characteristics, risks and dangers of each harbor.

(k)     Any other factor that the Commission deems as relevant for the determination of a fair and reasonable rate.

(c)     The Commission shall fix the rates and surcharges pursuant to this Section, based on the applicable formula or a combination of the following characteristics of the vessels;

(1)     The length, beam, net tonnage, gross tonnage, draught tonnage, free deck or topside height, and any other dimension of the vessel to be piloted.

(2)     The draft of vessels to be piloted.

(d)     The Commission shall have the discretion to appoint an examining official to determine the pilotage rates, surcharges and/or any other matter deemed necessary.

Section 24. – Pilotage Associations and Administration and Operation Trusts

(a)     Pilots licensed by the Commission may organize and be recognized in pilot associations to jointly administer their affairs and promote their common interests.

PARA USO OFICIAL

(b)    A pilot's association that represents the majority of the pilots that serve a port may petition to be recognized by the Commission. Nevertheless, the Commission shall never recognize more than one group or association for each port.

(c)    A pilot's association that seeks the recognition of the Commission shall submit the association papers and operating regulations for approval.   The document to be submitted shall provide for:   the election of its officers by majority vote of the members with unlimited licenses; the equitable division of tasks and assignments among its members; the fees for the services of its members in a common fund; the distribution of the income received among the members, after the deduction of expenses, on an equitable basis; establishment of cash fines or sanctions for absence from work without authorization, or violating the Law and regulations of the Pilotage Commission and the regulations of the association; establish membership requirements that are open to any licensed pilot serving the port, or ports for which he/she is authorized; and any other  provision relevant to the operation of a pilots association.  This Section should not be interpreted as the requirement of an equitable division of the workload or profits among licensed pilots or apprentice or probationary pilots.

(d)    The trustees of every administration and operation trust to be established with the purpose of providing a fund for the administration and operation of a reliable piloting service in the ports served by each association shall be two (2) elected officials for each recognized pilots association, two (2) officials elected by the Puerto Rico Shipowner's Association for each recognized pilots association, and one (1) representative of the Government of Puerto Rico, who may be an

˙⌐⌐ᴀ USO OFICIAL

32

employee of any government agency or instrumentality and shall be appointed by the Chairman of the Board of Directors of the Ports Authority. The members of the Commission shall not be trustees simultaneously.

The Administrative and Operational Trust shall be financed by the surcharge which shall be imposed on the vessels that receive or are bound to receive pilotage services pursuant to this Act. All administrative and operating expenses in providing pilotage services, except the compensation to licensed pilots, shall be paid from the funds that are covered into the Trust. The Trust may receive and/or procure the obtainment of funds from any other available sources, subject to said application, coordination, and obtainment of funds be part of a work plan duly approved by the Commission.

(e)    The trusts shall use their trust funds with the sole purpose of providing for the administration and operation of an effective and reliable pilotage in its ports. In no case shall the funds of the trust be disbursed as individual income of the pilots.

(f)    The trustees of the Administration and Operation Trust shall be responsible for the accounting and administration of the funds. Therefore, the trustees shall prepare an operating budget and a capital expense budget annually for review by the Commission. They shall also submit a certified Annual Financial Statement and a report on its operations for review by the Commission. Capital expenses in excess of $20,000 shall require prior approval by the Commission.

(g)    One or more pilots may incorporate under the Laws of Puerto Rico to comply with their duties and obligations, as individuals or an association, in a corporate manner.

Section 25. – Puerto Rico Harbor Pilots Welfare and Pension Plan

(a)     The Puerto Rico Harbor Pilots Welfare and Pension Plan Trust, as authorized by Resolution No. 8304 of March 11, 1983, of the Puerto Rico Ports Authority, as amended by Resolution No. 90-63 of September 19, 1990, shall continue in effect as created and maintained by the documents of the plan, even though all the former powers and obligations held by the Puerto Rico Ports Authority shall become the responsibility of the Puerto Rico Pilotage Commission when this Act becomes effective, which shall continue its operations and maintenance.

(b)     Puerto Rico Harbor Pilots Pension and Welfare Plan Trust shall be operated and administrated pursuant to the guidelines of the Federal Employee Retirement Income Security Act of 1974 (ERISA), as amended.

Section 26. – The Commission shall have the power to adopt and promulgate rules and regulations to enforce compliance with this Act, including those charges needed to finance the administrative and operating costs of the Commission.

Section 27. – Any provision of a law, or any portion thereof that is in contravention of what is provided herein, is hereby repealed.

Section 28. – Severability Clause –

If any paragraph, section, or part of this Act were found to be unconstitutional by a Court of competent jurisdiction, said judgment shall not affect nor invalidate the remainder of this Act, and its effect shall be limited to the paragraph, Section or part found unconstitutional.

Section 29. – This Act shall take effect thirty (30) days after its approval.

(S.B. 2795)

*PARA USO OFICIAL*

**(No. 66)**

(Approved April 11, 2000)

# AN ACT

To amend Section 29 of Act No. 226 of August 12, 1999, known as the "Puerto Rico Harbor Pilotage Commission Act," to provide that until the Commission has established itself pursuant to the parameters of this present Act, including the adoption of its by laws, the code of laws and administrative rules prior to the approval of the Act on pilotage shall remain in effect.

## STATEMENT OF MOTIVES

On August 12, 1999, Act No. 225[1], which created the Puerto Rico Harbor Pilotage Commission, was signed into law. This Commission was created to authorize, regulate, supervise, and impose sanctions on pilotage, as defined in subsection (j) of Section 2 of said Act. The Commission has the authority and the budget to establish the rules of discipline, the traffic rules, and to acquire and finance all types of vessels, equipment or materials needed to perform its functions; it is also empowered to adopt and promulgate maritime traffic regulations and to establish the limits where the pilots must board or disembark from the vessels. The Act also provides that the Commission shall authorize the pilotage fees and shall have and exercise the powers regarding the protection of maritime traffic in the Commonwealth's waters and ports. It shall have the capacity to act autonomously, as well as to sue and be sued.

---

[1] Translator's note: "Act No. 225" should read Act No. 226.

PARA USO OFICIAL

For its constitution, it is required that the Governor designates seven (7) commissioners who, after being confirmed by the Legislature, shall establish by laws for its administration, pursuant to the Uniform Administrative Procedures Act.

Upon the approval of Act No. 226, supra, the Legislature did not foresee that between the period of approval of the Act, and the formal constitution of the Commission, the Pilotage profession would not have any administrative entity with jurisdiction over its actions, and that the Government of Puerto Rico would be unable to make any kind of recruitment, even if it were provisional, to solve the problem of the need for pilotage professionals, if such situation were to occur. Even moreso, and to the detriment of the pilotage professionals, the contributions to the Puerto Rico Harbor Pilot's Pension and Welfare Plan and their Administration and Operation Fund could be affected in its needs if this ruling is not established, since the legal obligation of the contribution is included in this Act.

Therefore, the Legislature of Puerto Rico understands that it is necessary to provide in the above-cited Act No. 226, for a transition period in which the code of laws and administrative rules regarding the pilotage profession shall revert to the existing ones, prior to the approval of the Act until the proper constitution of the Board and the approval of its by laws.

**BE IT ENACTED BY THE LEGISLATURE OF PUERTO RICO:**

Section 1.- Section 29 of Act No. 226 of August 10, 1999, known as the "Puerto Rico Harbor Pilotage Commission Act" is hereby amended, to read as follows:

"Section 29.- This Act shall take effect thirty (30) days after its approval; provided, that until the Commission is established according to the parameters of this Act, and adopts its by laws, the code of laws and

administrative rules in effect prior to the approval of the Act regarding the pilotage profession, shall be maintained."

Section 2.- It is hereby reiterated that this Act is of limited scope and that, once the Commission is constituted with its by laws approved, the code laws and administrative rules provided herein shall cease, so that Act No. 226, supra, may enter into full force and effect.

Section 3.- This Act shall take effect immediately after its approval.

PARA USO OFICIAL