**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**COMISION DE PRACTICAJE DE PUERTO RICO**

|  |  |
|---|---|
| ASOCIACION DE NAVIEROS DE PUERTO RICO, INC.<br><br>Peticionaria<br><br>v.<br><br>SAN JUAN BAY PILOTS CORP.<br><br>Promovida | **CASO NO.**<br><br>**SOBRE: CESE Y  DESISTA** |

**SOLICITUD DE ORDEN DE CESE Y DESISTA AL AMPARO DE LA REGLA 11 DEL REGLAMENTO NÚM. 6643**
**(En la Alternativa, con Vista al Amparo de la Regla 10)**

**A LOS HONORABLES COMISIONADOS:**

**COMPARECE** Asociación de Navieros de Puerto Rico (en adelante, la "Asociación" o la "Peticionaria"), por conducto de su representación legal que suscribe, y muy respetuosamente expone y solicita:

**I. LAS PARTES**

1. La Peticionaria, Asociación de Navieros de Puerto Rico, es una corporación sin fines de lucro organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, que reúne a agentes navieros y operadores de embarcaciones que prestan servicios en el Puerto de San Juan y otros puertos de Puerto Rico. Sus miembros son operadores y agentes de embarcaciones sujetas al practicaje compulsorio conforme a la Ley Núm. 226 de 12 de agosto de 1999, conocida como la Ley de la Comisión de Practicaje de Puerto Rico, 23 LPRA § 361 et seq. (en adelante, "Ley Núm. 226"), y al

Reglamento Núm. 7214 de la Comisión de Practicaje de Puerto Rico, conocido como las Reglas de Tránsito en los Puertos de Puerto Rico de 2006 (en adelante, "Reglamento 7214"). Los miembros de la Peticionaria son directamente perjudicados por la conducta que se impugna en esta solicitud.  Su dirección postal es: PO Box 9022714, San Juan PR 00902.

2.    La SJBPC, San Juan Bay Pilots Corporation (en adelante, la "Corporación" o "SJBPC"), es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, compuesta por los prácticos comisionados para la Bahía de San Juan conforme a la Ley Núm. 226. La Corporación opera bajo el nombre comercial de San Juan Bay Pilots Association (en adelante, "SJBPA"). La SJBPC puede ser contactada en la dirección postal PO Box 9021033, San Juan, Puerto Rico 00902-1033.

## II. JURISDICCIÓN

3.    La Comisión de Practicaje de Puerto Rico (en adelante, la "Comisión") tiene jurisdicción sobre esta solicitud en virtud de la Ley Núm. 226 y del Reglamento Núm. 6643 (Reglamento de Procedimientos Adjudicativos).

## III. ANTECEDENTES

A. La Presentación de la Demanda de Sentencia Declaratoria

4.    La Peticionaria acude ante la Comisión luego de haber presentado el 30 de abril de 2026 una Demanda de Sentencia Declaratoria ante el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso Asociación de Navieros de Puerto Rico v. San Juan Bay Pilots Corporation, Civil Núm. SJ2026CV03408 (en adelante, la "Demanda"), solicitando que se declare la nulidad de las Safety and Navigation Guidelines adoptadas por la SJBPC el 14 de febrero de 2026 (en adelante, las "Guías"). Copia de la Demanda se acompaña como **Exhibit A** y se incorpora íntegramente a esta solicitud. La Peticionaria comparece ahora ante la Comisión para solicitar el remedio provisional indispensable para evitar que el daño causado diariamente por la implementación de las Guías continúe acumulándose y agravándose mientras el Tribunal resuelve la controversia sobre su validez.

**B. Las Guías de Seguridad y su Carácter Reglamentario**

5.    El 14 de febrero de 2026, la SJBPA adoptó y publicó unilateralmente las Guías, un documento de aplicación general que establece requisitos mínimos obligatorios de remolcadores de asistencia y restricciones de tránsito para toda embarcación que opere en el Puerto de San Juan. Las Guías no fueron sometidas a la Comisión para su consideración y adopción formal. No se publicó aviso de propuesta de reglamentación. No se abrió período de comentarios ciudadanos. No se celebraron vistas públicas. Las Guías no fueron radicadas en el Departamento de Estado. En suma, la SJBPC no observó ninguno de los requisitos del proceso de reglamentación formal exigido por la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA § 9601 et seq. (en adelante, "LPAUG"). Una copia de las Guías se acompaña como **Exhibit B**.

6.    Las Guías imponen, entre otros, los siguientes requisitos de aplicación obligatoria y general: (a) cuatro remolcadores de tipo tractor azimutal con bollard pull mínimo de 80 toneladas métricas para todo tránsito, atraque y desatraque de buques de gas natural licuado ("GNL") en el terminal de NFEnergía; (b) dos remolcadores adicionales con calificación de escolta en posición de respuesta inmediata durante toda permanencia del buque GNL en el terminal; (c) ventanas de tránsito obligatorias para distintas categorías de embarcaciones; (d) buffers de cuarenta y cinco (45) minutos de exclusividad para cruceros; y (e) restricciones horarias de tránsito para tanqueros. Estos requisitos se imponen como condiciones absolutas e irrenunciables para la prestación del servicio de practicaje, bajo apercibimiento de que el práctico rehusará dicho servicio a todo buque que no los cumpla.

7.    Las Guías tienen el mismo carácter y efecto que las guías de seguridad declaradas nulas por el Tribunal de Apelaciones en *Joint Concession Management LLC et al. v. Comisión de Practicaje de Puerto Rico*, KLRA202300433, 2023 WL 6618441, Sentencia de 29 de septiembre de 2023 (en adelante, "Joint Concession"). En ese caso, el Tribunal declaró que las guías impugnadas constituían una enmienda al Reglamento 7214 sobre Reglas de Tránsito y eran nulas por no haber cumplido con el proceso de

reglamentación formal de la LPAUG. Las Guías aquí impugnadas son materialmente idénticas en naturaleza y efecto, con la agravante de que en el presente caso la SJBPC las adoptó y ejecuta directamente, sin intervención alguna de la Comisión. Copia de la Sentencia en Joint Concession se acompaña como **Exhibit C**.

**C. Las Órdenes del Capitán del Puerto y su Rescisión**

8.    A partir de marzo de 2025, el Capitán del Puerto de la Guardia Costera de los Estados Unidos para el Sector de San Juan emitió tres órdenes que imponían requisitos de remolcadores de asistencia para los buques GNL que transitaran el Puerto de San Juan: la COTP Order Núm. 084-25 para el M/V ENERGOS SINGAPORE; la COTP Order Núm. 113-25 para el M/V ENERGOS MARIA; y la COTP Order Núm. 218-25 para el M/V ENERGOS PRINCESS. Estas órdenes fueron rescindidas en su totalidad el 23 de abril de 2026, determinando la autoridad federal que los requisitos operacionales especiales que antes las justificaban ya no eran necesarios bajo el marco de la Carta de Recomendación emitida por el Sector San Juan el 12 de enero de 2026. Véase **Exhibit A** y órdenes allí anejadas.

9.    Inmediatamente tras la rescisión de las órdenes federales, la SJBPC comunicó por escrito a todos los agentes navieros y operadores que las Guías estaban en pleno vigor y que se exigía su cumplimiento estricto en cada tránsito. Esta conducta evidencia que las Guías fueron diseñadas deliberadamente para perpetuar, mediante reglamentación privada unilateral, los mismos requisitos que la Guarda Costanera de los Estados Unidos determinó que ya no justificaban órdenes coercitivas, convirtiéndose así en un instrumento para eludir la determinación federal y mantener las mismas cargas operacionales y económicas sobre los operadores navieros al margen de cualquier proceso legal válido. Véase **Exhibit A** y correos electrónicos de la SJBPC allí anejados.

**D. El Impacto Económico Directo sobre los Miembros de la Asociación**

10.    Desde la entrada en vigor de las Guías, los miembros de la Peticionaria se ven obligados a contratar y pagar los servicios de remolcadores de asistencia como condición para recibir servicio de practicaje. El costo total de estos remolcadores asciende a aproximadamente un millón quinientos mil dólares ($1,500,000.00) al mes, equivalente a aproximadamente cincuenta mil dólares ($50,000.00) por día, que recaen directamente sobre los operadores y agentes navieros miembros de la Peticionaria. Estos requisitos y costos operacionales no están respaldados por disposición reglamentaria válida alguna, son consecuencia directa de la imposición ilegal de las Guías, y se acumulan irremediablemente cada día que transcurre sin que la Comisión intervenga. Ante ello, los miembros de la Asociación de Navieros afectados han venido obligados a contratar remolcadores de asistencia y efectuando los pagos bajo protesta y con reserva de todos sus derechos a fin de no interrumpir las operaciones portuarias esenciales.

## IV. FUNDAMENTOS PARA LA CONCESIÓN DEL REMEDIO

### A. La SJBPC Carece de Autoridad Legal para Adoptar e Imponer las Guías

11.    La Ley Núm. 226 confirió a la Comisión, y no a la SJBPA, la autoridad exclusiva para reglamentar el practicaje y el tránsito marítimo en los puertos de Puerto Rico. El Artículo 5 de la Ley Núm. 226, 23 LPRA § 361b, otorga a la Comisión la potestad de adoptar y reglamentar el tránsito marítimo. La SJBPC es una corporación privada sin delegación legal alguna de ese poder reglamentario. El Artículo 24 de la Ley Núm. 226, 23 LPRA § 361u, permite que los prácticos se organicen en asociaciones para atender asuntos gremiales comunes, pero esa habilitación no transfiere a la SJBPC ninguna de las facultades reglamentarias que el Legislador confirió exclusivamente a la Comisión. Que la SJBPC agrupe a los únicos prácticos disponibles en la Bahía de San Juan le confiere un poder fáctico sobre el acceso al puerto que precisamente por eso el ordenamiento jurídico sujeta al control exclusivo de la Comisión.

12.    Las Guías constituyen reglamentación de aplicación general con fuerza de ley que solo puede ser adoptada válidamente por la Comisión conforme al proceso formal de la LPAUG. Al no haber observado ese proceso, las Guías son nulas de pleno derecho conforme al Artículo 2.7(a) de la LPAUG, 3 LPRA § 9617(a). La conducta de la SJBPC es, además, deliberada y reincidente: la SJBPC previamente había sometido guías de seguridad a la Comisión reconociendo que esa era la vía correcta, y luego de que el Tribunal de Apelaciones declarara nulas aquellas guías en *Joint Concession* por incumplimiento de la LPAUG, la SJBPC decidió en esta ocasión prescindir por completo de la Comisión. Desde la Sentencia en *Joint Concession* en el año 2023, la SJBPC tenía pleno conocimiento de que no podía imponer guías de esta naturaleza sin seguir el proceso de reglamentación formal. Su decisión de proceder de todos modos constituye una violación deliberada que elimina toda defensa de buena fe y que la Comisión tiene el deber de corregir.

13.    Las Guías violan igualmente la Regla 14 del Reglamento 7214, que establece que los requisitos de remolcadores se rigen por las disposiciones de la Guardia Costera y, en su ausencia, por el acuerdo entre el práctico, el agente y la embarcación. Al rescindir las órdenes del COTP, la Guardia Costera eliminó el único fundamento federal que la Regla 14 reconoce para la imposición obligatoria de requisitos de remolcadores. El espacio normativo que deja esa rescisión lo ocupa el acuerdo de partes, no el mandato unilateral de la SJBPC. Las Guías invierten ese esquema e imponen requisitos absolutos en directa contradicción con la norma reglamentaria vigente.

**B. Procede la Orden Provisional sin Vista: Regla 11 del Reglamento 6643**

**1. Grave Daño Inmediato a la Peticionaria**

14.    La Regla 11 del Reglamento Núm. 6643 autoriza a la Comisión a emitir una orden provisional de cese y desista **sin la celebración de vista** previa cuando se cause o pueda causar un grave daño inmediato a cualquier embarcación, muelle, puerto, canal de navegación **o a una entidad en particular**, o cuando **exista un peligro inminente para** la salud, la seguridad o **el bienestar del**

**pueblo de Puerto Rico**, **y se requiera acción inmediata**. Ambos supuestos concurren en el presente caso.

15.    El grave daño inmediato a los miembros de la Peticionaria es actual, cuantificable y diario. Los miembros de la Asociación tendrán que pagar aproximadamente un millón quinientos mil dólares ($1,500,000.00) al mes en servicios de remolcadores que la Guardia Costera determinó que ya no son necesarios y que la SJBPC impone sin autoridad legal alguna. Ese daño no es hipotético ni futuro: se materializa en cada operación portuaria, a razón de aproximadamente cincuenta mil dólares ($50,000.00) por día. La naturaleza continuada y acumulativa del daño hace que cada día de demora en la actuación de la Comisión genere una nueva erogación ilegal que se suma irremediablemente al perjuicio ya causado. A ello se añade la incertidumbre operacional que sufren los agentes navieros y operadores al verse compelidos a asumir costos no presupuestados como condición de acceso al puerto, afectando su capacidad de planificación y causando un daño empresarial continuo que trasciende el importe monetario mensual.

## 2. Peligro para el Bienestar del Pueblo de Puerto Rico

16.    El efecto sobre el bienestar del pueblo de Puerto Rico es igualmente real e inmediato. Es hecho de conocimiento general —susceptible de conocimiento administrativo conforme a la Regla 21.5 del Reglamento 6643— que Puerto Rico depende de las importaciones marítimas para satisfacer la práctica totalidad de sus necesidades de consumo, incluyendo alimentos, medicamentos, combustibles y bienes de consumo general. Las fuentes disponibles indican que Puerto Rico importa más del ochenta y cinco por ciento (85%) de sus alimentos.  Los costos adicionales de remolcadores que las Guías imponen sobre los operadores navieros son costos de operación que inevitablemente se trasladan al precio final de los bienes importados. Cuando el costo del transporte marítimo aumenta por virtud de una imposición ilegal, ese aumento recorre toda la cadena suministro hasta llegar al consumidor final en forma de precios más altos en góndola, farmacia y todo establecimiento comercial

dedicado a la venta de productos. En un contexto de dependencia casi total de importaciones, costo de vida elevado y poder adquisitivo limitado, el efecto de estas Guías ilegales sobre el bienestar económico del pueblo puertorriqueño es directo, general e inevitable.

**C. Fundamentos Adicionales que Refuerzan la Procedencia del Remedio sin Vista**

17.    Concurren adicionalmente tres circunstancias que refuerzan la procedencia del remedio sin celebración de vista. **Primero**, la controversia de fondo es una cuestión estrictamente de derecho que no requiere prueba fáctica: las Guías fueron adoptadas sin cumplir con la LPAUG, hecho público, documentado e incontrovertible que no genera controversia real sobre hechos que ameriten dilucidarse en vista. La Regla 11 reserva el procedimiento de acción inmediata precisamente para situaciones en las que la urgencia no permite aguardar el trámite ordinario, y este caso satisface ese estándar en su forma más clara.  **Segundo**, el Tribunal de Apelaciones ya estableció en *Joint Concession* que guías de esta naturaleza son nulas como cuestión de derecho. Esa determinación judicial, recaída en un caso materialmente idéntico al presente, descarta cualquier argumento de que la SJBPA tiene un interés jurídicamente protegible en mantener las Guías vigentes durante el tiempo que tome resolver ante el Tribunal de Primera Instnacia. No existe argumento de derecho que la SJBPA pueda oponer en vista que el Tribunal de Apelaciones no haya ya considerado y rechazado. **Tercero**, el balance de intereses favorece decididamente la concesión del remedio. La SJBPC no sufrirá perjuicio alguno al ser impedida de exigir el cumplimiento de requisitos que carece de autoridad para imponer. Sus prácticos conservarán íntegramente su discreción profesional individual para solicitar remolcadores adicionales caso a caso cuando las circunstancias específicas de seguridad así lo ameriten, discreción que el propio Reglamento 7214 preserva expresamente. Lo que la SJBPC pierde es únicamente la capacidad de imponer de forma coercitiva y general requisitos que el ordenamiento jurídico reserva a la Comisión.

## V. REMEDIO SOLICITADO

**A. Primer Remedio: Orden Provisional Inmediata sin Vista al Amparo de la Regla 11**

18.    Con fundamento en todo lo expuesto y al amparo de la Regla 11 del Reglamento Núm. 6643, la Peticionaria solicita respetuosamente que la Comisión emita de manera inmediata, sin celebración de vista previa, una orden provisional de cese y desista ordenando a SJBPC y a todos sus prácticos, funcionarios, agentes y representantes que, con vigencia inmediata a partir de su notificación, se abstengan de: (a) imponer como condición del servicio de practicaje el cumplimiento de los requisitos de remolcadores, restricciones horarios o cualquier otro requisito operacional establecido en las Safety and Navigation Guidelines de 14 de febrero de 2026 o en cualquier versión enmendada o sustituta de las mismas que no haya sido adoptada conforme al proceso de reglamentación formal de la LPAUG y que sea contrario a las Reglas de Transito de la Comisión; (b) rehusar, condicionar, limitar o demorar la prestación de servicios de practicaje a cualquier embarcación por razón del incumplimiento con las Guías; y (c) exigir a cualquier operador, agente o embarcación la contratación de servicios de remolcadores fundamentados únicamente en las Guías y no en disposición reglamentaria válida o en acuerdo de partes conforme a la Regla 14 del Reglamento 7214. La orden provisional deberá permanecer en vigor hasta que el Tribunal de Primera Instancia resuelva definitivamente la controversia sobre la validez de las Guías.

19.    Conforme a la Regla 11.2 del Reglamento Núm. 6643, la Peticionaria solicita que la orden provisional sea notificada inmediatamente a la SJBPC en su lugar de hacer negocios y por correo certificado con acuse de recibo. La Comisión deberá celebrar una vista administrativa dentro de los diez (10) días posteriores a la emisión de la orden provisional, conforme lo exige la Regla 11.1, en la cual resolverá si dicha orden se hace permanente o se revoca.

**B. Segundo Remedio — En la Alternativa: Orden de Cese y Desista Luego de Celebrar Vista al Amparo de la Regla 10**

20.    En la alternativa, y de la Comisión entender que la situación no satisface el umbral de acción inmediata de la Regla 11, la Peticionaria solicita respetuosamente que la Comisión tramite esta solicitud conforme al procedimiento de la Regla 10 del Reglamento Núm. 6643 y señale vista con la mayor urgencia que permita la notificación requerida. Celebrada la vista, la Peticionaria solicita que se emita una orden de cese y desista con igual alcance y contenido al descrito en el párrafo anterior. La Peticionaria solicita además que, de optarse por la vía de la Regla 10, la Comisión emita entretanto, al amparo de la Regla 26.2 del Reglamento Núm. 6643, un remedio provisional que impida que el procedimiento se torne académico durante el tiempo que transcurra hasta la celebración de la vista, dándole curso a una vista posterior dentro del término de diez (10) días que dispone esa misma regla.

**POR TODO LO CUAL**, la Peticionaria solicita respetuosamente que esta Honorable Comisión conceda el remedio solicitado en la forma y términos expuestos.

**RESPETUOSAMENTE SOMETIDO.**  En San Juan, Puerto Rico, a 30  de abril de 2026.

*Castañer & Cia, PSC*
MAI Center
771 C11, 1 Ste. 204
San Juan, PR 00920
Office: (787) 707-0802
Mobile: (787) 402-0103
Fax: 1(888) 227-5738
alberto@castañerlaw.com

**f/ Alberto J. Castañer-Padró**
Alberto J. Castañer-Padró, Esq.
RUA Núm. 16,121