COMMONWEALTH OF PUERTO RICO
PUERTO RICO PILOTAGE COMMISSION

| | |
|---|---|
| PUERTO RICO SHIPPERS ASSOCIATION, INC. <br><br> Petitioner v. <br><br> SAN JUAN BAY PILOTS CORP. <br><br> Promoted | **CASE NO.** <br><br> **ABOUT: CEASE AND DESIST** |

**APPLICATION FOR A CEASE AND DESIST ORDER UNDER RULE 11 OF REGULATION NO. 6643 (In the Alternative, with a hearing pursuant to Rule 1**0)

**TO THE HONORABLE COMMISSIONERS:**

The Puerto Rico Shippers Association (hereinafter, the "Association" or the "Petitioner"), through its undersigned legal representation, and very respectfully exposes and requests:

**I. THE PARTIES**

1.     The Petitioner, Puerto Rico Shippers Association, is a non-profit corporation organized under the laws of the Commonwealth of Puerto Rico, which brings together shipping agents and vessel operators serving the Port of San Juan and other ports in Puerto Rico. Its members are operators and agents of vessels subject to compulsory pilotage pursuant to Act No. 226 of August 12, 1999, known as the Puerto Rico Pilotage Commission Act, 23 LPRA § 361 et seq. (hereinafter, "Law No. 226"), and Regulation No. 7214 of the Puerto Rico Pilotage Commission, known as the Rules of Traffic in the Ports of Puerto Rico of 2006 (hereinafter, "Regulation 7214"). Members of the Petitioner are directly harmed by the conduct challenged in

this application. Their mailing address is: PO Box 9022714, San Juan PR 00902.

2.      The SJBPC, San Juan Bay Pilots Corporation (hereinafter referred to as the "Corporation" or "SJBPC"), is a corporation organized under the laws of the Commonwealth of Puerto Rico, composed of the practical commissioners for the Bay of San Juan pursuant to Act No. 226. The Corporation operates under the trading name of San Juan Bay Pilots Association (hereinafter referred to as "SJBPA"). SJBPC can be reached at PO Box 9021033, San Juan, Puerto Rico 00902-1033.

## II. JURISDICTION

3.      The Puerto Rico Pilotage Commission (hereinafter referred to as the "Commission") has jurisdiction over this application by virtue of Act No. 226 and Regulation No. 6643 (Adjudicative Procedures Regulations).

## III. BACKGROUND

### A. The Filing of the Claim for Declaratory Judgment

4.      The Petitioner comes before the Commission after having filed on April 30, 2026, a Petition for Declaratory Judgment before the Court of First Instance, Superior Chamber of San Juan, in the case Asociación de Navieros de Puerto Rico v. San Juan Bay Pilots Corporation, Civil No. SJ2026CV03408 (hereinafter, the "Complaint"), requesting that the Safety and Navigation Guidelines adopted by the SJBPC on February 14, 2026 (hereinafter, the "Guides") be declared null and void. Copy of the Complaint is attached as **Exhibit A** and is incorporated in its entirety into this application. The Petitioner now appears before the Commission to request the interim remedy necessary to prevent the harm caused daily by the implementation of the Guidelines from continuing to accumulate and worsen while the Tribunal resolves the controversy over their validity.

**B. Safety Guides and their Regulatory Nature**

5.    On February 14, 2026, the SJBPA unilaterally adopted and published the Guidelines, a document of general application that establishes mandatory minimum requirements for assistance tugs and transit restrictions for all vessels operating in the Port of San Juan. The Guidelines were not submitted to the Commission for consideration and formal adoption. No notice of proposed rulemaking was published. No citizen comment period was opened. No public hearings were held. The Guidelines were not filed with the Department of State. In sum, the SJBPC failed to observe any of the requirements of the formal rulemaking process required by Act No. 38-2017, the Government of Puerto Rico Uniform Administrative Procedure Act, 3 LPRA § 9601 et seq. (hereinafter, "LPAU"). A copy of the Guides is attached as **Exhibit B**.

6.    The Guidelines impose, among others, the following mandatory and general application requirements: (a) four azimuth tractor tugs with a minimum bollard pull of 80 metric tons for all transit, berthing and undocking of liquefied natural gas ("LNG") vessels at the NFEnergía terminal; (b) two additional escort-rated tugs in immediate response position during the LNG's stay at the terminal; (c) mandatory transit windows for different categories of vessels; (d) forty-five (45) minute buffers of exclusivity for cruises; and (e) time restrictions on transit for tankers. These requirements are imposed as absolute and inalienable conditions for the provision of pilotage service, under the warning that the pilot will refuse said service to any ship that does not comply with them.

7.    The Guides have the same character and effect as the safety guides declared void by the Court of Appeals in *Joint Concession Management LLC et al. v. Puerto Rico Pilotage Commission*, KLRA202300433, 2023 WL 6618441, Judgment of September 29, 2023 (hereinafter, "Joint Concession"). In that case, the Court declared that the challenged guides

constituted an amendment to Regulation 7214 on Road Traffic Rules and were null and void for not having complied with the process of formal regulation of the LPAU. The Guides challenged here are materially identical in nature and effect, with the aggravating circumstance that in the present case the SJBPC adopted and executes them directly, without any intervention by the Commission. Copy of the Judgment in Joint Concession is attached as **Exhibit C**.

**C. The Port Master's Orders and their Rescission**

8.    Effective March 2025, the U.S. Coast Guard Harbor Master for the San Juan Sector issued three orders imposing assistance tug requirements for LNG vessels transiting the Port of San Juan: COTP Order No. 084-25 for M/V ENERGOS SINGAPORE; COTP Order No. 113-25 for M/V ENERGOS MARIA; and COTP Order No. 218-25 for the M/V ENERGOS PRINCESS. These orders were rescinded in their entirety on April 23, 2026, with the federal authority determining that the special operational requirements that previously justified them were no longer necessary under the framework of the Letter of Recommendation issued by the San Juan Sector on January 12, 2026. See **Exhibit A** and orders annexed therein.

9.    Immediately following the rescission of the federal orders, SJBPC communicated in writing to all shipping agents and operators that the Guides were in full force and that strict compliance was required in each transit. This conduct is evidence that the Guides were deliberately designed to perpetuate, through unilateral private regulation, the same requirements that the U.S. Coast Guard determined no longer warranted coercive orders, thus becoming an instrument to circumvent the federal determination and maintain the same operational and economic burdens on shipping operators outside of any valid legal process. See **Exhibit A** and SJBPC emails attached thereto.

**D. The Direct Economic Impact on Association Members**

10.     Since the entry into force of the Guidelines, members of the Petitioner are required to hire and pay for the services of assistance tugs as a condition of receiving pilotage service. The total cost of these tugs amounts to approximately one million five hundred thousand dollars ($1,500,000.00) per month, equivalent to approximately fifty thousand dollars ($50,000.00) per day, which fall directly on the operators and shipping agents who are members of the Petitioner. These operational requirements and costs are not supported by any valid regulatory provision, are a direct consequence of the illegal imposition of the Guides, and are irretrievably accumulating every day that passes without the intervention of the Commission. In view of this, the members of the Association of Shipowners affected have been obliged to hire assistance tugs and make payments under protest and with reservation of all their rights in order not to interrupt essential port operations.

## IV. GROUNDS FOR GRANTING THE REMEDY

### A. SJBPC Lacks Legal Authority to Adopt and Enforce Guidelines

11.     Act No. 226 conferred on the Commission, and not on the SJBPA, the exclusive authority to regulate pilotage and maritime transit in Puerto Rico's ports. Article 5 of Act No. 226, 23 LPRA § 361b, gives the Commission the power to adopt and regulate maritime transit. The SJBPC is a private corporation without any legal delegation of that regulatory power. Article 24 of Law No. 226, 23 LPRA § 361u, allows pilots to organize themselves into associations to attend to common trade union matters, but this authorization does not transfer to the SJBPC any of the regulatory powers that the Legislator conferred exclusively on the Commission. The fact that the SJBPC brings together the only pilots available in the Bay of San Juan gives it a de facto power over access to the port that is precisely why the legal system is subject to the exclusive control of the Commission.

12.     The Guides are regulations of general application with the force of law that can only be validly adopted by the Commission in accordance with the formal process of the LPAU. By failing to comply with this process, the Guides are null and void pursuant to Article 2.7(a) of the LPAU, 3 LPRA § 9617(a). The conduct of the SJBPC is, moreover, deliberate and repeated: the SJBPC had previously submitted safety guidelines to the Commission acknowledging that this was the correct route, and after the Court of Appeals declared those guides null and void in *the Joint Concession* for non-compliance with the LPAU, the SJBPC decided on this occasion to dispense with the Commission entirely. Since the *Joint Concession* Judgment in 2023, the SJBPC was fully aware that it could not impose guidelines of this nature without following the formal regulatory process. Its decision to proceed anyway constitutes a deliberate violation that eliminates any defense of good faith and which the Commission has a duty to correct.

13.     The Guides are also in violation of Rule 14 of Regulation 7214, which states that tug requirements are governed by the provisions of the Coast Guard and, in their absence, by the agreement between the pilot, the agent, and the vessel. By rescinding the COTP orders, the Coast Guard eliminated the only federal basis that Rule 14 recognizes for the mandatory imposition of tugboat requirements. The normative space left by this rescission is occupied by the agreement of the parties, not the unilateral mandate of the SJBPC. The Guidelines invert this scheme and impose absolute requirements in direct contradiction with the regulatory norm in force.

**B. Interim Order No Hearing: Rule 11 of Regulation 6643 Proceeds**

**1. Serious Immediate Harm to the Petitioner**

14.    Rule 11 of Regulation No. 6643 authorizes the Commission to issue an interim cease and desist order **without** a preliminary hearing when serious immediate damage is caused or likely to be caused to any vessel, wharf, port, shipping channel **or a particular entity**, or when **there is**

**an imminent danger to** health,  the safety or **well-being of the people of Puerto Rico**, **and immediate action is required**. Both cases occur in the present case.

15.    The serious immediate harm to the members of the Petitioner is current, quantifiable, and daily. Association members will have to pay approximately one million five hundred thousand dollars ($1,500,000.00) per month for tugboat services that the Coast Guard determined are no longer needed and that SJBPC imposes without any legal authority. That damage is not hypothetical or future: it materializes in each port operation, at a rate of approximately fifty thousand dollars ($50,000.00) per day. The continuous and cumulative nature of the damage means that each day of delay in the Commission's action generates a new illegal expenditure that irremediably adds to the damage already caused. Added to this is the operational uncertainty suffered by shipping agents and operators when they are compelled to assume unbudgeted costs as a condition of access to the port, affecting their planning capacity and causing continuous business damage that transcends the monthly monetary amount.

### 2. Danger to the Well-Being of the People of Puerto Rico

16.    The effect on the well-being of the people of Puerto Rico is equally real and immediate. It is a fact of general knowledge – susceptible to administrative knowledge in accordance with the Rule 21.5 of Regulation 6643 – that Puerto Rico depends on maritime imports to satisfy practically all of its consumption needs, including food, medicines, fuels and general consumer goods. Available sources indicate that Puerto Rico imports more than eighty-five percent (85%) of its food. The additional tugboat costs that the Guides impose on shipping operators are operating costs that are inevitably passed on to the final price of imported goods. When the cost of maritime transport increases by virtue of an illegal imposition, this increase runs through the entire supply chain until it reaches the final consumer in the form of higher prices on the shelf, pharmacy

and all commercial establishments dedicated to the sale of products. In a context of almost total dependence on imports, high cost of living, and limited purchasing power, the effect of these illegal Guides on the economic well-being of the Puerto Rican people is direct, general, and inevitable.

**C. Additional Grounds That Reinforce the Appropriateness of the Remedy Without Sight**

17.     In addition, there are three circumstances that reinforce the admissibility of the remedy without holding a hearing. **First**, the substantive controversy is a strictly matter of law that does not require factual proof: the Guidelines were adopted without complying with the LPAU, a public, documented and incontrovertible fact that does not generate real controversy on facts that merit being clarified in view. Rule 11 reserves the procedure of immediate action precisely for situations in which urgency does not allow for the ordinary procedure, and this case satisfies that standard in its clearest form. **Second**, the Court of Appeals has already established in *Joint Concession* that guidelines of this nature are null and void as a matter of law. That judicial determination, in a case materially identical to the present one, rules out any argument that the SJBPA has a legally protectable interest in keeping the Guidelines in force for as long as it takes to resolve before the Court of First Instance. There is no argument of law that the SJBPA can raise in view of the fact that the Court of Appeals has not already considered and rejected. **Third**, the balance of interests decidedly favors the granting of the remedy. The SJBPC will not suffer any prejudice by being prevented from demanding compliance with requirements that it lacks the authority to impose. Its pilots shall retain their full individual professional discretion to request additional tugs on a case-by-case basis when specific safety circumstances warrant it, a discretion that Regulation 7214 itself expressly preserves. What the SJBPC loses is only the ability to impose in a coercive and general manner requirements that the legal system reserves to the Commission.

**V. REQUESTED REMEDY**

**A. First Remedy: Immediate Interim Order No Hearing Under Rule 11**

18.     Based on the foregoing and under Rule 11 of Regulation No. 6643, the Petitioner respectfully requests that the Commission issue <u>immediately, without a prior hearing</u>, a provisional cease and desist order ordering SJBPC and all of its pilots, officers, agents, and representatives, effective immediately upon notification, to refrain from: (a) imposing compliance with tugboat requirements as a condition of pilotage service,  time restrictions or any other operational requirement set forth in the Safety and Navigation Guidelines of February 14, 2026 or any amended or substitute version thereof that has not been adopted in accordance with the formal regulatory process of the LPAU and that is contrary to the Commission's Traffic Rules; (b) refuse, condition, limit or delay the provision of pilotage services to any vessel by reason of non-compliance with the Guidelines; and (c) require any operator, agent or vessel to contract tugboat services based solely on the Guides and not on valid regulatory provision or agreement of parties pursuant to Rule 14 of Regulation 7214. The interim order shall remain in force until the Court of First Instance finally resolves the dispute over the validity of the Guides.

19.     Pursuant to Rule 11.2 of Regulation No. 6643, the Petitioner requests that the interim order be immediately served on the SJBPC in its place of business and by certified mail return receipt requested. The Commission shall hold an administrative hearing within ten (10) days after the issuance of the interim order, as required by Rule 11.1, in which it shall decide whether such order is made permanent or revoked.

**B. Second Remedy — In the Alternative: Cease and Desist Order After Hearing Pursuant to Rule 10**

20.     In the alternative, and for the Commission to understand that the situation does not meet the threshold for immediate action under Rule 11, the Petitioner respectfully requests that the Commission process this request in accordance with the procedure of Rule 10 of Regulation No.

6643 and schedule a hearing with the greatest urgency that the required notification permits. After the hearing, the Petitioner requests that a cease and desist order be issued with the same scope and content as described in the preceding paragraph. The Petitioner further requests that, if the Rule 10 route is chosen, the Commission issue in the meantime, under Rule 26.2 of Regulation No. 6643, an interim remedy to prevent the proceeding from becoming academic during the time that elapses until the hearing is held, allowing for a subsequent hearing within the ten (10) day period provided for in that same rule.

**WHEREFORE**, the Petitioner respectfully requests that this Honorable Commission to grant the requested remedy in the form and terms set out.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, April 30, 2026.

*Castañer & Cia, PSC*
MAI Center
771 C11, 1 Ste. 204
San Juan, PR 00920
Office: (787) 707-
0802
Mobile: (787) 402-0103
Fax: 1(888) 227-5738
alberto@castañerlaw.com

**f/ Alberto J. Castañer-Padró**
Alberto J. Castañer-Padró,
Esq. RUA No. 16,121