IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CAPT. BUSTO-ALVAREZ, et al<br><br>Plaintiffs,<br><br>vs.<br><br>NFENERGIA LLC, et al<br><br>Defendant | **Civil No. 25-cv-1462 (SCC)** |

MOTION TO STRIKE PLAINTIFFS' HEARSAY
"MOTIONS" AT DOCKET ENTRIES NO. 303, 304, AND 316

TO THE HONORABLE COURT:

COMES NOW Defendant NFEnergia LLC ("NFE"), through the undersigned counsel, and respectfully moves this Court to strike Plaintiffs' alleged "Informative Motions" at Dockets 303, 304, 304-1, and 316 (collectively, the "alleged Informative Motions"), which are unsupported hearsay and seek no substantive relief, and states and prays as follows:

I. SUMMARY

In the last month, Plaintiffs have filed three related so-called "Informative Motions" regarding certain tugs it asserts might be appropriate for use in the San Juan Bay for LNG ships calling at NFE'S terminal. On June 26, 2026, Plaintiffs filed a Motion Informing Market Availability of Agreed-to 80+ MT Escort-Rated Tugboats. Dkt. 303. In this filing, Plaintiffs state, with zero supporting evidence, they "have learned that Maritime Partners has published materials identifying a program of eight sister 80+ metric ton bollard-pull escort-rated tugboats with specifications Plaintiffs contend are necessary to safely maneuver LNG vessels." Dkt 303 at ¶ 3. Again, with no supporting evidence, Plaintiffs state

1

one tug was "delivered" in May 2026 and provides the alleged delivery schedule of the other seven tug. *Id.* Finally, Plaintiffs state that the informational packet from which they allegedly gathered the information about these tugs was confidential and could not be shared without consent of the manufacture of the tugs. *Id.* at n.1.

Later that same day, Plaintiffs filed a Motion Supplementing Motion Informing Market Availability of Agreed-to 80+ MT Escort-Rated Tugboats. Dkt. 304. In this supplemental motion, Plaintiffs state, with zero supporting evidence, "plaintiffs has (sic) learned that the document is in the public domain and is therefore not confidential." *Id.* at ¶ 2. Plaintiffs attached as Exhibit A to the supplemental motion what they purport to be the information packet from the manufacturer but provided no supporting evidence to authenticate the alleged information packet.

On July 14, 2026, Plaintiffs filed Motion Updating Market Availability of Agreed-to 80+ MT Escort-Rated Tugboats. Dkt. 316. In this filing, Plaintiffs state, with zero supporting evidence, that "the first three Maritime Partner tugs (staring with the one delivered in May of 2026) may go under contract at the end of the month." *Id.* at ¶ 2.

## II. ARGUMENT

### A.    It is Premature and Improper to Raise the Issue of Substitute Tugs.

Ignoring the fact that Plaintiffs' alleged Informative Motions are totally devoid of any competent supporting evidence and filled with hearsay, it is premature to discuss replacing the four tug boats which have been escorting the LNG ships in and out of San Jan Bay since October of 2025 because: 1) the parties have agreed to continue to use the current four tugs until there is a final judgment in this matter and 2) no judicial determination has been made regarding Plaintiffs' core allegation – that NFE contracted to only use 80 metric ton bollard pull tugs.

NFE strenuously disputes the existence of any such contract. As the Court knows, no judicial finding has been made, and only a partial and incomplete record exists (developed during the hearing

for a Preliminary Injunction) regarding any such alleged contract. Furthermore, the need for 80 metric ton bollard pull tugs is hotly disputed and will be the subject of significant expert and other testimony at trial.

Formal discovery has just started. There are dozens of facts and expert witnesses yet to testify regarding both the existence of any contract between Plaintiffs and NFE, and the specifics of the tugs needed to escort the LNG ships in and out of San Juan Bay. Clearly, there is much evidence to be developed before the trier of fact can make findings of fact.

Additionally, on October 9, 2025, the parties stipulated that it was agreeable to use four 70+ metric ton bollard pull tugs for the inbound and outbound transits of the LNG ships.[1] Dkt. 124 at ¶ 3. The Stipulation on Interim Measures originally was limited to 45 days, but at the suggestion of Plaintiffs' counsel the parties agreed that the Stipulation concerning the use of these 70+ metric ton tugs will remain in place until a final judgment is entered in this matter. *See* transcript of May 18, 2025, hearing at page 55, lines 21-25. As Plaintiff's counsel stated at the May 18th hearing, extending the stipulation and continuing to use the current tugs "takes the heat off the parties and particularly the Court," and "it's good for the parties, it's good for the Court, and it's good for the people of Puerto Rico." *Id.* at p.55, lines 14-17 and p.59, lines 12-13. On May 30, 2026, the Court formally ordered the "Stipulation on Interim Measures is hereby extended until the Court enters final judgment." Dkt. 275.

The purpose of the Stipulation to continue to the 70+ metric ton tugs is to allow the Court time to assess, and eventually determine, the competing claims before the Court. Plaintiffs' attempt to

---

[1] Plaintiffs argue that "The Stipulation for Interim Measures was premised on the lack in the marketplace of the *previously agreed-to tugboats*, and Puerto Rico's need for LNG." Dkt. 303 at ¶ 5 (emphasis added). This obviously is an incorrect characterization of the premise of the Stipulation, which was to provide time for the Court and the parties to develop facts regarding, and to litigate, the underlying dispute while still providing critical LNG for the power plants to generate electricity for the people of Puerto Rico.

interject a supposed opportunity to bring different tugs to San Juan before it is determined whether new tugs are required is premature and improper.

**B.**     **The Alleged Informative Motions are *not* Motions Under FRCP 7(b) or D.P.R.  Local Rule 7 and should be Stricken from the Record.**

Federal Rule of Civil Procedure 7(b)(1) requires that a motion "must… state with particularity the grounds for seeking the order; and state the relief or order sought." D.P.R. Local Rule 7(a) requires "[affidavits and other documents setting forth the facts on which the motion is based **shall be filed with the motion.**" (emphasis added)

The alleged Informative Motions do not request any relief. Each concludes with the same phrase: "Plaintiffs respectfully request that this Honorable Court take note of the above." There is no recognized procedural category in the Federal Rules of Civil Procedure or the Local Rules of this Court for an "informational" or "updating" filing that introduces unsupported hearsay by counsel into the record without seeking any judicial action in the form of an order or other relief.

To the extent Plaintiffs' repeated requests that the Court "take note" of their alleged factual assertions are understood as requests for judicial notice, they fail on their own terms. Federal Rule of Evidence 201 permits a court to take judicial notice only of an adjudicative fact that is "not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The matters Plaintiffs ask the Court to "take note" of, i.e., hearsay allegations that particular Maritime Partners tugs are on the market and that they "may go under contract at the end of the month" are neither generally known nor determinable from sources whose accuracy cannot reasonably be questioned.

The alleged Informative Motions also contain no memorandum of law as required by D.P.R. Local Rule 7(a). Rather, they simply present hearsay attorney assertions as facts, without citations to any legal authority or identification of any legal standard or framework. The absence of a

memorandum of law is not a technical deficiency; it reflects the substantive problem that there is no legal framework under which these filings are authorized, which is why none is cited.

A filing that is not a cognizable motion does not belong on the docket and should be stricken. *See* Fed. R. Civ. P. 12(f) (authorizing the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter"). The Informational Filings are immaterial and impertinent filings that seek to introduce legal argument through a procedural vehicle that does not exist in the Federal Rules and potentially influence the Court before a full presentation by all sides on the merits.

**C.      The Informative Motions are Based on Hearsay in Violation of the Federal Rules of Evidence and should be Stricken from the Record.**

The alleged "factual" representations that the first three tugs "may go under contract at the end of the month" and that NFE has an alleged "window of opportunity" whose closure will render any future hardship "manufactured" are completely unsupported hearsay and attorney argument. *See* Dkt. 316 at ¶¶ 2 and 3. There is no affidavit, no declaration and no reference to any identified source to support Plaintiffs' claims.

Plaintiffs' Docket 316 represents that the first three Maritime Partners tugs "may go under contract at the end of the month" and introduces the terms "window of opportunity" and "manufactured hardships," characterizations that are double hearsay attributed to no identified source. That the tugs *may* go under contract is not supported by any competent evidence, nor supported by any showing that the putative charter contracts would be exclusive of San Juan Bay or that NFE would be permanently foreclosed from procuring the tugs at any future date. This is precisely the kind of unsworn, non-specific, source-free attorney representation that the Federal Rules of Evidence do not permit to establish facts.

Federal Rule of Evidence 602 requires that a witness have personal knowledge of the matter about which they testify. Federal Rules of Evidence 801 and 802 exclude from evidence hearsay, i.e., an out-of-court statement offered for the truth of the matter asserted. Statements by counsel in a

motion are not testimony, but when factual representations in a filing are offered for the truth of those facts, they must comply with the rules that govern the admission of evidence.

The practical consequence of permitting these filings to stand is that Plaintiffs would be allowed to build an unsupported, purportedly "factual", record through attorney assertions without exposing those assertions to cross-examination, without identifying the sources of the information, without subjecting the evidence to authentication requirements, and without giving NFE a meaningful opportunity to respond through equivalent adversarial process. The filings should be stricken on this independent ground.

**D.    The Informational Packet should not be Considered by the Court.**

(i) <u>The Information Packet is Unauthenticated Hearsay</u>

Plaintiffs' three alleged "Informative Motions" offer zero competent evidence to authenticate any of the alleged "facts" in the motions.  For example, Plaintiffs offered a purported informational packet from Maritime Partners but did not authenticate the documents.  Plaintiffs also state the supposed delivery dates of the Maritime Partner tugs but provide no competent evidence to support Plaintiffs' assertions.

All of the alleged facts in the motions are either hearsay, hearsay upon hearsay, or merely arguments and conjecture of counsel.  Consequently, the purported facts in the so-called Informative Motions should by all legal standards be disregarded by the Court.

(ii) <u>The Information Packet was not in Public Domain when it was Filed.</u>

In the first of the three Informative Motins regarding the Maritime Partners' tugs, Plaintiffs expressly acknowledged that the Maritime Partners materials "cannot be shared without Maritime Partners' consent" and that Plaintiffs had "asked Maritime Partners whether it will consent to filing the materials" and were "awaiting Maritime Partners' response." Dkt. 303 at n.1. These are the admissions of a party that understands it is holding a restricted third-party document. Yet hours later,

in its second Informative Motion filed on June 26, 2026, Plaintiffs represented, without supporting evidence or explanation, that they had "learned" the document was "in the public domain." Consequently, Plaintiffs filed the marketing packet in the pubic record.  However, Plaintiffs offered no explanation or support of how or why they believe the document is "in the public domain."

The presentation itself also bears an express confidentiality legend stating that it is intended for restricted circulation and may not be disseminated without Maritime Partners' prior written consent. The filing of a document bearing an express confidentiality legend, without court order, without the document owner's consent, and without any foundation for the assertion that the document had entered the public domain or been produced with the owner's consent, is itself a violation of the duty of candor to the tribunal. Plaintiffs' counsel represented in Docket 303 that consent was required. In Docket 304, without identifying what had changed in the intervening hours, counsel abandoned that position and filed the document publicly. The Court should strike Docket 304-1 and address the circumstances of its filing.

Highlighting issues with unauthenticated hearsay is the fact that the presentation **expressly disclaims the reliability of its own contents**. It states that "[n]o information included in this presentation is warranted by the Firm or its affiliates or subsidiaries as to completeness or accuracy," that it is "subject to change without notice," that "[a]ll statements other than statements of historical fact are forward looking statements," and that "[a]ny projections, outlooks, or assumptions should not be construed to be indicative of the actual events that will occur." Dkt. 304-1 at p. 2.  The proponent of the document thus goes to considerable lengths to disavow any reliance on it, which further undermines Plaintiffs' attempt to use it as a factual predicate for anything.

(iii) How Plaintiffs Obtained the Information Packet is Material to this Case.

The question of how Plaintiffs came to possess the Maritime Partners marketing packet is not merely a procedural curiosity. It is a question whose answer is potentially material to the merits of this

litigation. The Maritime Partners packet is described on its face as a document furnished "on a restricted basis to the recipient solely for informational purposes" and "intended for limited circulation." Dkt. 3-4-1 at p.2.

Conspicuous in its absence is any explanation of how Plaintiffs came into possession of the marketing packet. However, the possibilities are narrow. Either Maritime Partners itself provided the document to Plaintiffs and/or their counsel, or a party with access to the document conveyed it to them. In Docket 303, they stated they were awaiting Maritime Partners' response to their consent request. In Docket 304, they abandoned the consent inquiry entirely without explanation.

If Maritime Partners provided its confidential commercial marketing packet directly to Plaintiffs' counsel for use in this litigation, as a resource to support a motion designed to pressure NFE into procuring Maritime Partners' tugs, that fact would be relevant both to the propriety of the filing and to matters at issue in this litigation. The Court should not permit this question to remain unanswered.

NFE therefore requests that, in connection with the granting of this motion to strike, the Court order Plaintiffs to identify: (a) the source from which they obtained the Maritime Partners marketing packet filed as Docket 304-1; (b) the date on which they received it; (c) whether it was provided to them by Maritime Partners or by any representative, employee, or agent of Maritime Partners; (d) the identity of any other person or entity who provided or facilitated the provision of the document to them; and (e) the basis for counsel's representation in Docket 304 that the document had entered the public domain in the hours between Dockets 303 and 304 without Maritime Partners' consent having been received.

### III.  IN THE ALTERNATIVE: RESPONSE ON THE MERITS

Without prejudice to the foregoing motion to strike, and in the event the Court declines to strike the Informational Filings or treats them as in the nature of a notice to the Court, NFE responds as follows.

First, the commercial availability of Maritime Partners' tugs for charter obviously does not establish the existence of a contract between NFE and Plaintiffs. NFE does not concede that Plaintiffs' characterization of the operative arrangement in this case that a binding obligation to provide "four 80 metric ton bollard-pull escort-rated tugboats" is accurate. That characterization is disputed and is a central issue in this litigation. The Informational Filings assume the answer to the dispositive question and urge the Court to enforce that answer against NFE without adjudicating it.,

Second, the existence of the Maritime Partners tugs does not establish that 80-ton tugs are required for the safe operation of LNG vessels at the Terminal. NFE anticipates that independent simulations and expert testimony will unequivocally establish that LNG carrier maneuvering operations at the Terminal can be safely performed with tug configurations well below 80 tons of bollard pull. The availability of 80-ton tugs in the market is irrelevant if 80-ton tugs are not a safety requirement, and the evidence will demonstrate that they are not.

Third, Plaintiffs have not established that Maritime Partners' vessels are even available to NFE for charter. Maritime Partners is, by its own materials, a Louisiana-based maritime finance firm whose business is financing the construction of vessels for private investors; nothing in the record indicates that it operates tugboats or offers them for charter to end users. Plaintiffs' filings do not explain how Maritime Partners' role in financing vessel construction translates into those vessels being available for charter to NFE, and NFE does not itself operate tugboat equipment. Even if the Maritime Partners packet cleared every evidentiary obstacle, it would not establish the factual predicate (actual availability

of the tugs to NFE on identified terms) on which Plaintiffs' "window of opportunity" and "manufactured hardship" arguments depend.

## IV.  CONCLUSION

For the foregoing reasons, the Informational Filings are procedurally improper vehicles that inject unsworn, unsupported attorney representations into the record in violation of Federal Rule of Civil Procedure 7(b), D.P.R. Local Rule 7, and the Federal Rules of Evidence. Docket 304-1 compounds these defects by placing on the public record a confidential third-party commercial document on the strength of a "public domain" representation that Plaintiffs have never substantiated. Accordingly, NFEnergia respectfully submits that Dockets 303, 304, 304-1, and 316 should be stricken and the relief set forth below granted.

**WHEREFORE**, Defendant NFEnergia LLC respectfully requests that this Court:

a.  Strike Dockets 303, 304, 304-1, and 316 as non-cognizable filings under Federal Rule of Civil Procedure 7(b) and D.P.R. Local Rule 7, and as improper vehicles for the introduction of unsworn attorney testimony in violation of the Federal Rules of Evidence;

b.  Strike Docket 304-1 on the additional ground that it is a confidential commercial document bearing an express restriction on disclosure without the document owner's prior written consent, that the representation in Docket 304 that it is "in the public domain" is inaccurate, and that its filing was unauthorized;

c.  Order Plaintiffs to identify within fourteen (14) days: (i) the source from which they obtained the Maritime Partners marketing packet filed as Docket 304-1; (ii) the date on which they received it; (iii) whether it was provided by Maritime Partners, its representatives, or any other party to this litigation; and (iv) the basis for their representation that it had entered the public domain between the filing of Docket 303 and Docket 304; and

d.  Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 20th day of July 2026.

I HEREBY CERTIFY that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing automatically to all counsel of record.

*s/ Christopher R. Hart*
Christopher R. Hart
*By Admission Pro Hac Vice*
Fed. ID: 12517
Holman Fenwick Willan USA LLP
3040 Post Oak Blvd.
Floor 18, Suite 129, Houston, Texas 77056
Tel. 713-917-0888
chris.hart@hfw.com

*s/ J. Ramón Rivera-Morales*
J. Ramón Rivera-Morales
USDC-PR 200701
Midtown Building 4th Floor
420 Ponce de León Ave., San Juan, PR 00918
Tel. 787-510-8090
email: rrivera@jgl.com

*s/ Thomas N. Lightsey III*
Thomas N. Lightsey III
*By Admission Pro Hac Vice*
Fed. ID: 84829
Holman Fenwick Willan USA LLP
3040 Post Oak Blvd.
Floor 18, Suite 129, Houston, Texas 77056
Tel. 713-917-0888
Email: tom.lightsey@hfw.com

*s/ Alberto J. Castañer-Padró*
Alberto J. Castañer-Padró
USDC 225706
Castañer & Cía PSC
MAI Center
Marginal Kennedy
771 Calle 1, Ste 204 / San Juan PR 00920
Tel 787-707 0802 Fax 1-888-227 5728
alberto@castanerlaw.com

**Attorneys for NFEnergia LLC**