**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CAPT. JAKE ELMSTROM; CAPT. TOMAS BUSTO; CAPT. CARLOS E. RAMOS; CAPT. KENNETH DÍAZ; CAPT. RICHARD FLYNN; CAPT. CARLOS GUTIÉRREZ; CAPT. PATRICK LÓPEZ; SAN JUAN BAY PILOTS CORPORATION.<br><br>Plaintiffs,<br><br>vs.<br><br>NFENERGIA LLC,<br><br>Defendant. | **CIVIL NO. 25-cv-1462 (SCC)** |

**DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, BREACH OF CONTRACT, AND DECLARATORY JUDGMENT**

**TO THE HONORABLE COURT:**

**COMES NOW,** the Defendant, NFEnergia LLC ("NFE"), through the undersigned attorneys, respectfully submits this Motion to Dismiss the Third Amended Complaint for Injunctive Relief, Breach of Contract, and Declaratory Judgment (Docket No. 313) ("the Third Amended Complaint"), and respectfully informs and prays as follows:

Pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., the Defendant respectfully moves for dismissal of Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The grounds for dismissal are set out below.

## I. INTRODUCTION

The central theme of the plaintiffs' claims in this action is grounded on a contract that does not exist and has not been properly alleged. From a series of acts that are routine in the operation of an LNG

facility on a waterway the plaintiffs construct an in perpetuum "implied" agreement for the contracting of specific unique tugboats, and a method of operation which surpasses and overrides Federal and Commonwealth statutory and regulatory requirements. The plaintiffs seek to prove too much. The scheme that plaintiffs attempt to project with allegations woven together does not allow any conclusion of contract formation. Moreover, the allegations suffer from other procedural defects. Ultimately, the Third Amended Complaint should be dismissed in its entirety. Plaintiffs lack Article III standing as to every count, and the Court independently lacks both diversity jurisdiction and federal question jurisdiction, so Counts I through VII should be dismissed under Fed. R. Civ. P. 12(b)(1). Counts VI and VII are, in addition, not ripe. And should the Court reach the merits, each of Counts I through VII fails to state a claim and should be dismissed under Fed. R. Civ. P. 12(b)(6). All of this is fully explained below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to assert the defense of lack of subject matter jurisdiction before pleading if a responsive pleading is allowed. Fed. R. Civ. P. 12(b)(1). Dismissal for lack of subject matter jurisdiction is proper if the facts alleged reveal a jurisdictional defect not otherwise remediable, and motions on those grounds are subject to the same standard of review as motions to dismiss for failure to state a claim upon which relief can be granted. *See, Torres v. Bella Vista Hospital, Inc.*, 523 F.Supp.2d 123, 132 (D.P.R. 2007), *subsequently affirmed*, 914 F.3d 15 (1st Cir. 2019).

Rule 12(b)(6) allows a defendant to assert the defense of failure to state a claim upon which relief can be granted, before pleading, if a responsive pleading is allowed. Fed. R. Civ. P. 12(b)(6).

Dismissal under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To withstand a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter ... to 'state a claim to relief' that is plausible on its face." *Rios-Campbell v. U.S. Dep't of Commerce*, 927 F.3d 21, 24 (1st Cir. 2019). By its very nature, the plausibility standard is time sensitive. *Id.* Refined to bare essence, it

"is a screening mechanism designed to weed out cases that do not warrant either discovery or trial." *Id.*

First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *See, Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)). A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* Plausible means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. *Id.*

## III. THE CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Before reaching the merits, the Court must first satisfy itself that subject matter jurisdiction exists, because federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but must instead appraise their own authority to hear and determine the case before them. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Colombani*, 712 F.3d 6 (1st Cir. 2013). That obligation does not depend on whether a party raises it: federal courts have an independent, unflagging obligation to inquire into subject matter jurisdiction, *sua sponte* if necessary, even where no party challenges it. *Industria Lechera de Puerto Rico, Inc. v. Beiró*, 989 F.3d 116 (1st Cir. 2021); *Watchtower*, 712 F.3d 6.

The consequences of proceeding without jurisdiction are severe, and they counsel resolving those defects before reaching any of the Rule 12(b)(6) arguments that follow. A federal court that lacks subject matter jurisdiction is precluded from rendering any judgment on the merits, and any

order addressing the merits issued without jurisdiction is void. *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95 (1st Cir. 2001). Indeed, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest, and deciding a Rule 12(b)(6) motion after finding no subject matter jurisdiction is "gratuitous." *United States v. Millenium Labs., Inc.*, 923 F.3d 240 (1st Cir. 2019) (quoting *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149–50 (1st Cir. 2002)). The Supreme Court has squarely rejected the practice of bypassing jurisdictional questions to reach an easier merits ground, since a judgment issued without established jurisdiction is no more than a hypothetical judgment amounting to an impermissible advisory opinion. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–101 (1998). For the reasons set out in Sections III.A through III.C below, this Court lacks subject matter jurisdiction over Plaintiffs' claims on three independent grounds, and the Third Amended Complaint should be dismissed under Rule 12(b)(1) without reaching the merits addressed in the remainder of this motion.

**A. Plaintiffs Lack Article III Standing as to All Counts**

Plaintiffs allege no injury caused by NFE and, therefore, Plaintiffs lack standing to bring their complaint. As a result, this Court lacks subject matter jurisdiction, and this suit should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Justiciability principles require the existence of an actual case or controversy. *See* U.S. Const. art. III, § 2, cl. 1; *see also Allen v. Wright*, 468 U.S. 737, 750 (1984); *Osediacz v. City of Cranston*, 414 F.3d 136, 139 (1st Cir. 2005). To satisfy the case or controversy criteria, the party alleging the existence of jurisdiction must possess a personal stake in the outcome of the litigation. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). This requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must

have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Id.* (internal citations omitted). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court." Id. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Id. at 561. The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

Allegations of abstract injury are insufficient to make out an injury in fact. Instead, the plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury." *City of Los Angeles*, 461 U.S. at 101–02 (citations and internal quotation marks omitted). Moreover, a plaintiff must show that the injury or threat of injury is both real and immediate. *Id. at 102–03* (citations and internal quotation marks omitted). An inquiry into standing must be based on the facts as they existed when the action was commenced. *Mangual v. Rotger–Sabat*, 317 F.3d 45, 56 (1st Cir. 2003).

Courts reject standing where the alleged injury is not fairly traceable to a private defendant's conduct. In *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012), the First Circuit affirmed dismissal for lack of standing, holding that speculative fears of future harm from a data breach were not concrete injuries and were not traceable to the defendant's actions. Here, Plaintiffs' Third Amended Complaint lacks any allegation of concrete injury already suffered by these Plaintiffs that is traceable to NFE's conduct, proving Plaintiffs lack standing. Because the Third Amended Complaint does not allege any non-speculative injury-in-fact suffered by these Plaintiffs, they lack Article III standing, and this Court lacks jurisdiction over their claims.

The Third Amended Complaint's factual narrative confirms that Plaintiffs' asserted injuries fail this standard. Plaintiffs allege that "there were at least three occasions when the power of the ECO tugs had to be used to complete the maneuver safely," Docket No. 313 ¶ 69, including an incident in

which Captain Jake Elmstrom, "maneuvering one of NFE's large LNG vessels near the Army Terminal Turning Basin," encountered "severe wind gusts" and "required the use of the full 80 metric ton pull from the tugs to safely maneuver the vessel through this emergency," Docket No. 313 ¶ 67, and a mid-transit turnaround that Plaintiffs analogize to "the protocol for a terminal bomb threat." Docket No. 313 ¶ 66. On Plaintiffs' own telling, each of these incidents was "safely executed," *id*., and no Plaintiff suffered any injury. These allegations if taken as true establish, do not establish that any Plaintiff has already suffered a concrete injury.

The prospective harm Plaintiffs actually fear, that a future emergency will arise, that the tugs currently available will prove insufficient to manage it, and that the shortfall will cause an actual casualty or injury to a Plaintiff, is precisely the sort of speculative chain of contingencies that *Clapper v. Amnesty International USA,* 568 U.S. 398 (2013) holds insufficient. Plaintiffs allege only that seven of the eight individual pilots "objected because of the danger presented by using inferior tugs, particularly **if an emergency were to arise**," Docket No. 313 ¶ 75 (emphasis added), a conditional, future-oriented formulation that concedes no emergency has yet occurred under the current configuration.

The Third Amended Complaint does not allege that the current configuration has ever been found wanting; it alleges only that Plaintiffs believe the current configuration might be inadequate for a hypothetical future emergency that has not occurred.

The procedural history of this action reinforces the point. The parties entered into a Stipulation of Interim Measures on October 9, 2025 (Docket Nos. 121, 124), approved by the Court (Docket Nos. 122, 123), and on June 26, 2026, Plaintiffs themselves represented to this Court, in the parties' Joint Rule 26(f) Conference Report, that their request for preliminary injunctive relief had become moot. (Docket No. 300, p. 3.) Plaintiffs cannot represent to this Court that emergency relief is unnecessary and, in the same pleading cycle, maintain that they face a real and immediate threat of injury sufficient to support Article III standing arising from the same underlying conduct.

Plaintiffs' alternative theory of injury fares no better. Plaintiffs allege that NFE has been "directing members of the Puerto Rico Shippers' Association to submit 'Letters of Protest' to plaintiffs, wherein the members of the Puerto Rico Shippers' Association assert a right to recover the costs of the standby tugs from the plaintiffs." Docket No. 313 ¶ 105. Plaintiffs characterize the resulting exposure as "coercive cost-shifting pressure and professional exposure that confirm the existence of a live controversy exceeding $75,000 in value," but in the same paragraph disclaim any request that NFE indemnify or reimburse them for it. Docket No. 313 ¶ 106. That theory depends on a non-party shipper electing to sue Plaintiffs and prevailing on that claim, a contingency that has not occurred and may never occur. Furthermore, the Third Amended Complaint does not allege any specific amount that any shipper has claimed or threatened to claim. A plaintiff cannot establish injury-in-fact by pointing to a hypothetical future lawsuit by an absent third party. *Clapper*, 568 U.S. at 416 (a plaintiff cannot manufacture standing based on fears of a speculative future harm).

1. <u>The Plaintiffs Fail to Establish Standing on the Civil Rights Claim (Count V)</u>

Count V fails for the independent reason that the only injury it identifies, i.e., the cease-and-desist order issued against Plaintiffs' safety communications, was rescinded "within weeks after Plaintiffs initiated this action." Docket No. 313 ¶ 99. A plaintiff seeking prospective declaratory or injunctive relief based on a completed and already-reversed government action must show a real and immediate threat that the same injury will recur; Plaintiffs instead allege only that they "continue to face a reasonable concern that NFE may seek to suppress, chill, retaliate against, or interfere with Plaintiffs' safety communications" in the future. Docket No. 313 ¶ 171. That "reasonable concern" is the same generalized apprehension the Supreme Court rejected in *City of Los Angeles,* 461 U.S. at 105-06. The Third Amended Complaint alleges no fact suggesting that NFE or the Pilotage Commission has taken, or threatened to take, any further action against Plaintiffs' communications since the order was rescinded. Simply put, a plaintiff who suffered a genuine, completed past harm cannot leverage

it into standing for an injunction against future conduct without a separately pled, non-speculative likelihood of recurrence.

2. The Corporate Plaintiff Fails to Establish Standing as to Any Count

Finally, the Third Amended Complaint does not separately establish standing for Plaintiff San Juan Bay Pilots Corporation, as distinct from the individual pilot-Plaintiffs. The Third Amended Complaint describes SJBPC only as a non-profit corporation "that associates state and federally licensed harbor pilots authorized to provide compulsory pilotage services within the navigational waters of the Port of San Juan," Docket No. 313 ¶ 1, without alleging any injury to the Corporation distinct from the injuries asserted on behalf of its individual pilot-members. To sue on behalf of its members, an association must show that its members would otherwise have standing to sue in their own right, that the interests at stake are germane to the organization's purpose, and that neither the claim asserted nor the relief requested requires the participation of individual members. *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977). The Third Amended Complaint never invokes associational standing or pleads the *Hunt* factors.

Because the Third Amended Complaint fails to allege any concrete, particularized, and non-speculative injury-in-fact traceable to NFE's conduct for any Plaintiff, and because Plaintiffs affirmatively disclaim any request for compensation for past injury, Docket No. 313 ¶¶ 110-111, Plaintiffs lack Article III standing, and the Third Amended Complaint should be dismissed under Rule 12(b)(1).

**B. Counts VI and VII Are Not Ripe for Adjudication**

Ripeness is a distinct justiciability doctrine that, like standing, derives from Article III's case-or-controversy requirement, but asks not whether a particular plaintiff has suffered enough injury to sue, but whether the dispute itself has matured enough to be fit for judicial resolution now. Courts evaluate ripeness under a two-part test: (1) whether the issues presented are fit for judicial decision,

meaning purely legal and not dependent on further factual development or contingent future events, and (2) whether withholding court consideration will work any hardship on the parties. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967); *National Park Hospitality Ass'n v. Department of the Interior*, 538 U.S. 803, 807–08 (2003); *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013); *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016). In the declaratory judgment context specifically, the actual controversy Plaintiffs must plead must be "real and substantial" and admit of "specific relief through a decree of a conclusive character," not "an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937); *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535–36 (1st Cir. 1995).

Two of the declarations Plaintiffs request fail this test. The cost-shifting theory underlying Docket No. 313 ¶ 181 depends on a chain of contingencies that has not occurred and may never occur, i.e., a non-party shipper would have to elect to sue a Plaintiff, and then prevail on that claim, before the exposure Plaintiffs describe ever materializes into anything a court could resolve. Docket No. 313 ¶¶ 105–106. Neither event has happened, and the Third Amended Complaint does not allege that either is imminent. Resolving whether NFE "may shift" those costs to Plaintiffs would require this Court to decide, in the abstract, how a hypothetical future collection dispute between Plaintiffs and absent third parties might come out, which is precisely the kind of premature adjudication the ripeness doctrine is designed to avoid.

The Third Amended Complaint's request for a declaration concerning conditions "materially inconsistent with the [allegedly] agreed or relied-upon safety framework" fails for the same reason. Docket No. 313 ¶ 182. That request asks the Court to declare, in advance of any specific transit, how an undefined future set of operating conditions would be assessed against an undefined safety benchmark. The same reasoning defeats Count VII's request for a permanent injunction compelling

NFE to maintain a particular tug configuration going forward, since it too rests on the possibility of some future emergency rather than an identified present violation.

The maritime pilotage context in particular has produced recent, closely analogous authority. In *Hight v. United States Department of Homeland Security*, 135 F.4th 996 (D.C. Cir. 2025), a Great Lakes pilot challenged, on First Amendment grounds, a Coast Guard requirement that he eventually join a private pilots' association. The D.C. Circuit held that claim unripe because the pilot was not yet eligible to join the association, it was uncertain whether he would ever receive full registration, and it was separately uncertain whether the association would admit him even if he did, a chain of contingencies structurally similar to the one underlying Docket No. 313 ¶¶ 181–182. *Id.* at 1011–12. As the court explained, "[r]ipeness, while often spoken of as a justiciability doctrine distinct from standing, in fact shares the constitutional requirement of standing that an injury in fact be certainly impending." *Id.* at 1012 (quoting *National Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996)). And just as in *Hight*, judicial review here is unwarranted while these contingencies remain unresolved, because "deferring consideration might eliminate the need for review altogether." If no shipper ever sues Plaintiffs, and no future transit ever presents a tug configuration shortfall, the questions Count VI poses will never need deciding at all. *Id.* (quoting *Chamber of Commerce of U.S. v. Reich*, 57 F.3d 1099, 1100 (D.C. Cir. 1995)).

For these reasons, Docket No. 313 ¶¶ 181–182 present no ripe controversy, and the corresponding portions of Count VI, along with the overlapping relief requested in Count VII, should be dismissed under Rule 12(b)(1) on this independent ground.

### C. The Court Lacks Diversity Jurisdiction as to All Counts

#### 1. <u>Plaintiffs Bear the Burden of Establishing the Amount in Controversy, and Once Challenged Must Do So with Particularity</u>

Plaintiffs invoke Puerto Rico law under Counts II, III, VI and VII under diversity jurisdiction. Diversity jurisdiction extends only to civil actions in which "the matter in controversy exceeds the

sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The requirement exists to keep the diversity caseload of the federal courts "under some modicum of control." *Betancourt v. Bear Stearns & Co.*, 392 F. Supp. 2d 187 (D.P.R. 2005). Plaintiffs, as the parties invoking diversity jurisdiction, bear the burden of showing that their claims satisfy that threshold. *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004); *Alers v. Barceló*, 152 F. Supp. 3d 66 (D.P.R. 2016). The amount in controversy is assessed from the plaintiff's own viewpoint. *Emigrant Mortg. Co. v. Bourke*, 712 F. Supp. 3d 172 (D. Mass. 2024).

A general allegation that a dispute exceeds $75,000 will ordinarily suffice, but only until it is questioned by the opposing party or the court. *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 15 (1st Cir. 2023); *Torres-Gonzalez v. HIMA San Pablo Caguas*, 650 F. Supp. 2d 131, 134 (D.P.R. 2009). Once challenged, as it is here, the party invoking jurisdiction bears the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount, a burden discharged only by amending the pleadings or submitting affidavits or other competent evidence. *Andersen*, 57 F.4th at 15; *Torres-Gonzalez*, 650 F. Supp. 2d 131. Jurisdiction "is not conferred by the stroke of a lawyer's pen"; when challenged, it must be adequately founded in fact. *Torres-Gonzalez*, 650 F. Supp. 2d 131.

2. *The Legal Certainty Test*

The governing standard is the legal certainty test of *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), which the First Circuit and this District apply without deviation. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001); *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 3 (1st Cir. 1995) (courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases"); *Renaissance Mktg., Inc. v. Monitronics Int'l, Inc.*, 606 F. Supp. 2d 201, 210 (D.P.R. 2009); *Torres-Gonzalez*, 650 F. Supp. 2d 131.

According to the Supreme Court in *St. Paul Mercury:*

> It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal... if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

______*St. Paul Mercury* at 289.

Dismissal is required where it appears to a legal certainty that the plaintiff cannot recover in excess of $75,000. *Universal Ins. Co. v. Warrantech Corp.*, 392 F. Supp. 2d 205 (D.P.R. 2005). If the face of the complaint reveals, to a legal certainty, that the controversy cannot involve the requisite amount, jurisdiction does not attach. *Coventry Sewage*, 71 F.3d 1. And legal certainty that the claim is really for less than the jurisdictional amount trumps the pleader's good faith in claiming a larger sum. *Devlin v. F.W. Webb Co.*, 821 F. Supp. 3d 179 (D. Mass. 2026); *Stewart*, 356 F.3d at 338.

Because Plaintiffs seek declaratory and equitable relief rather than damages, the amount in controversy is measured by "the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181 (1936); *Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.*, 239 U.S. 121, 126 (1915); *Hunt v. New York Cotton Exchange*, 205 U.S. 322, 336 (1907). The Third Amended Complaint pleads no such value.

3. The Amount Must Exist at the Time of Filing and Cannot Rest on Speculative or Contingent Future Events

The amount in controversy is examined by looking at the facts as they stood **when the complaint was filed**. *Santos v. Preferred Mut. Ins. Co.*, 21 F. Supp. 3d 111 (D. Mass. 2014); *Alers*, 152 F. Supp. 3d 59; *Betancourt*, 392 F. Supp. 2d 187. That temporal rule carries a substantive corollary: the jurisdictional amount must be ascertainable *and real at the moment of filing* and cannot depend on events that may or may not come to pass. A pleader therefore may not manufacture or inflate the jurisdictional amount **by pointing to how the litigation might unfold, or to liabilities that some other party might later assert**. *See Cherelli v. InStore Grp., LLC*, 513 F. Supp. 3d 187 (D. Mass. 2021)

(rejecting as impermissible speculation the contention that the threshold was satisfied by reference to anticipated future litigation activity); *Coventry Sewage*, 71 F.3d 1 (where the evidence shows to a legal certainty that damages never could have exceeded the minimum, such that the claim was essentially feigned in order to confer jurisdiction, the action must be dismissed); *see also Iglesias v. Mut. Life Ins. Co. of N.Y.*, 156 F.3d 237 (1st Cir. 1998) (dismissing a claim where neither the pleader nor the record indicated that the requisite amount was exceeded).

4. Each Plaintiff Must Independently Satisfy the Threshold

Where there are multiple plaintiffs, each must allege a claim in excess of $75,000. *Stewart*, 356 F.3d 335. A single party may aggregate the amounts attached to all of the claims that it holds against a single defendant, *Pimental v. Select Portfolio Servicing, Inc.*, 483 F. Supp. 3d 141 (D.R.I. 2020), but distinct plaintiffs may not pool their separate claims to reach the threshold collectively. The Third Amended Complaint pleads a single global assertion of value on behalf of all Plaintiffs jointly. It does not allege that any individual pilot-Plaintiff, or San Juan Bay Pilots Corporation, has more than $75,000 at stake.

5. The Third Amended Complaint Does Not Satisfy the Requirement

Plaintiffs' sole jurisdictional-amount allegation is that "coercive cost-shifting pressure and professional exposure . . . confirm the existence of a live controversy exceeding $75,000 in value." Docket No. 313 ¶ 106. That is a conclusion, not a fact. It identifies no sum, no computation, and no source of pecuniary exposure other than the "Letters of Protest" described at Docket No. 313 ¶ 105. NFE hereby challenges that allegation, and the burden of particularized factual support is therefore Plaintiffs'. *Andersen*, 57 F.4th at 15; *Torres-Gonzalez*, 650 F. Supp. 2d 131.

The allegation cannot be salvaged for three independent reasons. First, Plaintiffs expressly disclaim the very recovery that would supply a jurisdictional amount. They plead that they "do not bring this action to obtain a monetary recovery for themselves," Docket No. 313 ¶ 110, and they disclaim any request that NFE indemnify or reimburse them for the shipper claims, Docket No. 313

¶ 111. A pleading that renounces monetary recovery cannot simultaneously assert that more than $75,000 is in controversy.

Second, the only pecuniary exposure the pleading identifies is contingent in the strictest sense. The Letters of Protest are assertions by non-party members of the Puerto Rico Shippers' Association of "a right to recover the costs of the standby tugs from the plaintiffs." Docket No. 313 ¶ 105. For that exposure to ripen into a dollar of liability, a non-party shipper would have to elect to sue a Plaintiff, prevail on that claim, and obtain a judgment. None of that has occurred, and it may never occur. Contingencies of this kind are precisely what the legal certainty test excludes from the jurisdictional calculus. *Cherelli*, 513 F. Supp. 3d 187; *Coventry Sewage*, 71 F.3d 1; *Santos*, 21 F. Supp. 3d 111.

Third, the Third Amended Complaint does not allege the amount of any Letter of Protest. It pleads no figure that any shipper has claimed or threatened to claim, no standby tug rate, and no number of transits to which any such rate might apply. The Court would be left to supply the arithmetic by assumption, which the legal certainty test does not permit. The pleader must allege facts, with particularity, from which the Court can determine that the threshold is met. *Andersen*, 57 F.4th at 15; *Torres-Gonzalez*, 650 F. Supp. 2d 131; *Universal Ins. Co.*, 392 F. Supp. 2d 205.

Because the object of this litigation is unvalued, because the sole asserted pecuniary exposure is a contingent claim by absent third parties in an unpleaded amount, and because no Plaintiff individually alleges more than $75,000 at stake, it appears to a legal certainty that the matter in controversy does not exceed $75,000. The Court accordingly lacks diversity jurisdiction under 28 U.S.C. § 1332(a), and the Third Amended Complaint should be dismissed under Rule 12(b)(1).

## IV. THE COURT LACKS FEDERAL QUESTION JURISDICTION AS TO ALL COUNTS

The Third Amended Complaint invokes jurisdiction under the Federal question statute, 28 U.S.C. § 1331. Docket No. 313 ¶ 8. The pleading mentions federal law claims and lists a federal regulatory scheme, the "NFE WSA and LOR process as a waterfront LNG/Waterway-suitability process, including

review and safety security matters relevant to the waterway," citing 33 C.F.R. § 127.007 and 33 C.F.R. § 127.009. Id. at 6. None of this confers federal question jurisdiction on this Court.

The Ports and Waterways Safety Act ("PWSA"), 46 U.S.C. §§ 70001-70036, governs the regulation of vessel operations, port safety, and waterways and waterfront safety. This statute regulates all matters related to waterfront facilities handling LNG. With respect to the transit of LNG vessels the U.S. Coast Guard is charged with determinations on the suitability of a waterway. This function is guided by the Letter of Recommendation Process under 33 C.F.R. § 127.009.

This statute limits enforcement jurisdiction to the U.S. Government. See 46 U.S.C. § 70036. No part of the Statute confers or authorizes a private party to enforce any provision. *Cf. California v. Sierra Club, 451 U.S. 287* (1981) (applying Rivers and Harbors Appropriations Act). Similarly, the U.S. Coast Guard's role within the licensing of an LNG waterfront facility in the issuance of a Letter of Recommendation is an advisory inter-agency recommendation which is not a final agency action. A private party can participate in this process but cannot control or challenge the process. From the application and determination of the U.S. Coast enforcement of this statute no review is conferred by the Administrative Procedure Act, nor by any other federal statute.

Courts have uniformly held that the PWSA creates no private right of action. The Act's enforcement scheme is committed entirely to the Government and grants the federal district courts jurisdiction only "to restrain violations" of its subchapters and otherwise provides solely for civil penalties, criminal sanctions, and denial of vessel entry. 46 U.S.C. § 70036. The Third Circuit so held in *Patentas v. United States*, 687 F.2d 707 (3d Cir. 1982), concluding that "Congress did not intend that plaintiffs be permitted to bring private enforcement actions under the Ports and Waterways Safety Act of 1972." Courts have reaffirmed that conclusion after the Act's recodification at 46 U.S.C. § 70001 et seq., holding that "there is no valid private cause of action that can be gleaned under those sections either." *Wolcott v. Thades*, 2024 WL 4906097 (D.N.J. Nov. 26, 2024).

Similarly, 33 C.F.R. § 127.007 and 33 C.F.R. § 127.009 do not create private rights of action or private regulatory authority in favor of private parties such as Plaintiffs. A case does not arise under federal law merely because federal regulations govern related subject matter. The LOR is a federal instrument that establishes a framework under which the Coast Guard determined the waterway was suitable for LNG vessel operations. It does not create a private right of action for the Plaintiffs to enforce.

## V. COUNT I. FOR ALLEGED MARITIME IMPLIED CONTRACT FAILS TO STATE A CLAIM

The Third Amended Complaint refers many times to an alleged agreement, or to an implied contract, but nowhere does the Third Amended Complaint allege that such a contract was actually formed or what the terms of the alleged agreement are. The Third Amended Complaint fails to allege the most basic elements of contract formation. Namely: who agreed to what, when they agreed, in what manner was agreement expressed, whether there was an offer and acceptance, whether there was a manifestation of mutual assent to such an agreement, whether there was consideration for the alleged agreement, and terms of such an alleged agreement.

The Third Amended Complaint alleges breach of a "maritime contract" or an "implied-in-fact maritime contract" (Docket No. 313 at 27), which for the purpose of this analysis is a distinction without a difference. "The difference between an express contract and an implied-in-fact contract is simply the manner by which the parties express their mutual assent." *Marshall Contractors, Inc. v. Brown University*, 692 A.2d 665, 669 (R.I. 1997).

It is hornbook law that the "formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Contract No. B0621MASRSWV15BND*, 766 Fed. Appx. 795, 801 (11th Cir. 2019) (citing Restatement (2d) of Contracts § 17 (1981)). The Third Amended Complaint is devoid of any allegations supporting either of these dispositive elements. The Third Amended Complaint does not, for example, allege when and

where a meeting of the minds occurred, the consideration exchanged, or even the term of the agreement.

**A. No Mutual Assent**

Mutual assent, the modern expression for the concept of "meeting of the minds," is essential to contract formation. *Boise Cascade Corp. v. Reliance Nat. Indem. Co. Inc.,* 129 F. Supp. 2d 41, 45 (D. Me. 2001). It is an axiom of modern contract law that the formation of a contract requires the "manifestation of mutual assent" by the parties to the agreement. *Bourque v. F.D.I.C.*, 42 F.3d 704, 708 (1st Cir. 1994). The requisite mutual assent cannot be based upon the hidden intent of the parties but, rather, must be founded upon an objective manifestation of mutual intent on the essential terms of the promise. *Boise Cascade Corp. at p. 45-46 (*citing *Pahlavi v. Palandjian*, 809 F.2d 938, 945 (1st Cir. 1987) (commenting that "contracting parties are bound by objective manifestations and expressions, not subjective expectations")).

The Third Amended Complaint is simply devoid of any factual allegations that there was mutual assent between NFE and Plaintiffs to the essential terms of the alleged promise under any conceivable body of law that could apply. Rather, Plaintiffs ask the Court to conjure an agreement without any specificity of mutual assent out of thin air.

**B. No Consideration**

The formation of a contract requires consideration. *See, e.g., Kol B'Seder, Inc.* at 801. The Third Amended Complaint does not allege any consideration in support of the alleged agreement or implied contract. Without consideration, there could not have been an agreement or implied contract.

**C. No injury caused by alleged breach of alleged agreement**

Count I of the Third Amended Complaint fails to allege any injury suffered by these Plaintiffs caused by NFE's alleged breach of an alleged agreement. Without an injury caused by breach of contract, Plaintiffs cannot establish this required element of a breach of contract claim.

Therefore, Count I of the Third Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## VI. COUNT II. THE THIRD AMENDED COMPLAINT FOR DECLARATORY RELIEF AND SPECIFIC PERFORMANCE UNDER THE PUERTO RICO CIVIL CODE FAILS TO STATE A CLAIM

The Plaintiffs, seven harbor pilots and a corporation, state that they "entered into an enforceable agreement" with the Defendant with a series of services concerning the movement of LNG vessels in San Juan Bay. Docket No. 313, 29, ¶ 132. The Plaintiffs' allegations point to no one specific document, memorandum, term sheet, purchase order or other such extrinsic materials. Instead, the claim of "agreement" is said to be set out in a "course of dealings, technical meetings, simulations, operational planning, NFE's representations to regulators and maritime stakeholders, NFE procurement of the ECO tugs packages, and the parties subsequent performance of large LNG vessel movements."

It is clear from the seminal *Twombly-Iqbal* rule that notwithstanding the simple pleading requirement of Rule 8 (a)(2), Fed. R. Civ. P., "A pleading that offers 'labels and conclusions' or "a formulaic recitation of the elements of a cause will not do." *Iqbal*, 550 U.S. at 55. In the present case the eight plaintiffs have set out a litany of activity concerning commercial interactions between them whereby the plaintiffs provide a compulsory harbor pilot service in a compulsory pilotage jurisdiction, but there is no specific contract formation adequately pled beyond this recitation of activity.

To begin with, the Plaintiffs do not cite to any specific applicable Puerto Rico contract law anywhere in their pleading. The general invocation of "the Puerto Rico Civil Code" provides some clue, but this does not allow the full conclusion that the allegations set out a full contract claim. Under Puerto Rico law a bilateral agreement is formed only with the parties' manifestation of consent over a specific object and a cause. Articles 1230 and 1237 of the 2020 Puerto Rico Civil Code, P.R. Laws Ann. Tit 31 §§ 9751, 9771. The consent is manifested when the specific offer and acceptance by the offeree meet. Article 1238, P.R. Laws Ann. Tit 31 § 9772. A random listing of various interactions between the parties does

not state a claim for the existence of a contract under the Puerto Rico Civil Code.

The allegations do not indicate which plaintiffs communicated, negotiated and agreed on specific contractual terms with whom at NFE.

In terms of contract "perfection" the allegations do not state or inform who spoke for the corporate defendant and under what authority or power that person could speak or bind the entity as per corporate authority and law. Article 227 P.R. Civil Code, P.R. Laws Ann. Tit 31 § 5881.

The vague invocations of the Third Amended Complaint of what was supposedly agreed do not rise to the level of contractual terms that were "offered" and "accepted." Article 9772. Critically, the alleged "offer" cannot be that the plaintiffs would provide pilotage services to the Defendant because they are compelled by law to provide this service (cf. P.R. Laws Ann. Tit 23 § 361(a)). Similarly, the "acceptance" by NFE of the pilots' performance of a legally obligated service cannot reasonably be construed to give rise to a binding contract, that lacks "causa" (or consideration), a term, and other hallmarks of a "concurso de voluntades", or a meeting of the minds, but somehow nonetheless requires NFE to indefinitely contract with third parties to provide specified and particular tugboats.

## VII. COUNTS III AND IV FOR EQUITABLE ESTOPPEL/RELIANCE UNDER PUERTO RICO LAW, AND FOR EQUITABLE RELIEF TO PREVENT REPUDIATION OF THE ALLEGED SAFETY FRAMEWORK FAIL TO STATE A CLAIM

As with Count II, in Counts III and IV Plaintiffs do not list or refer to specific Puerto Rico Law that confers equitable remedies in a contract dispute. The remedies listed under both of these Counts mirror those alleged under Counts I and II, supra. The claims continue with the conclusory assertions that a contract existed (which was implied either under maritime law or Puerto Rico law), without monetary compensation being sought, but only certain operational impositions smacking of regulatory rulemaking. These causes of action fail because, as with Counts I and II, the Plaintiffs' general factual allegations do not set out a full factual predicate for the existence or formation of a contract. Because of this fundamental failure all counts premised on a remedy for a breach of a contract must automatically

fail. These claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## VIII. IN COUNT V PLAINTIFFS FAIL TO STATE A CLAIM UNDER 42 U.S.C. § 1983

The Plaintiffs allege that when "NFE, through Carlos Faris, Terminal Manager/FSO wrote to the Puerto Rico Pilotage Commission requesting the Puerto Rico Pilotage Commission assistance" in the movement of its chartered vessel in a situation where the plaintiffs had refused to provide pilotage service, this constituted "Joint Action with State Actor to Suppress Protected Safety Communications." Docket No. 313 at 21 and 34. The "state actor" is said to be a Commonwealth agency, the Puerto Rico Pilotage Commission and its President. The suppression mechanism is said to be a "cease-and-desist order" issued by this agency. Docket No. 34-35. Neither the state agency nor any of its officers are named parties. The claim is raised under 42 U.S.C. § 1983.[1]

"A section 1983 claim does not lie absent state action." *Alexis v. McDonald's Restaurants of Massachusetts*, 67 F. 3d 341, 351 (1st Cir. 1995). "Therefore, a plaintiff claiming a § 1983 violation must allege that a person or persons acting under color of state law deprived him of a federal constitutional or statutory right. If the plaintiff fails to allege facts sufficient to establish either the deprivation of federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal." Estades-Negroni *v. CPC Hosp. San Juan Capestrano*, 412 F. 3d 1, 2 (1st Cir. 2005). Here, the § 1983 claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

Defendant NFEnergia is a private entity. "It is only in rare circumstances that private parties can be viewed as state actors." *Id. at 4, quoting Harvey v. Harvey*, 949 F. 2d 1127, 1130 (11th Cir. 1992). The First Circuit employs three tests to determine whether a private party can be deemed to be a state

[1] Section 1983 provides in its pertinent part: "Every person who, **under color of any statute, ordinance, regulation, custom, or usage, of an State or Territory** or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…." (emphasis ours).

actor: a. the state compulsion test; b. the nexus/joint test; and c. the public function test. *See generally Cruz-Arce v. Management Administration Service Corp., 19 F. 4th 538 (1st Cir. 2021)* (private company administrating public housing is not a state actor). *Klunder v. Brown University*, 778 F. 3d 24 (1st Cir. 2015) (Brown University is not a State actor); *Estades-Negroni v. CPC Hospital San Juan Capestrano*, 412 F. 3d 1 (1st Cir. 2005) (private psychiatric hospital and physicians not state actors); Perkins *v. Londonderry Basketball Club*, 196 F. 3d 13 (1st Cir. 1999) (youth basketball organization is not a state actor). The Plaintiffs' allegations here in their Third Amended Complaint fail to establish a claim under any of these tests.

First, under the state compulsion test "[a] plaintiff must demonstrate a particularly close tie between the state and the private party's conduct such that the conduct may fairly be regarded as state action." *Santiago v. Puerto Rico*, 655 F. 3d 61, 71 (1st Cir. 2011). "Even the rights-deriving conduct of an extensively regulated private party does not amount to action under color of state law unless the conduct itself is compelled (or, at least, heavily influenced) by the state regulation." *Id.* at 71, citing Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982); *Rendell-Baker*, 457 U.S. 830, 840-841 (1982).

Here there is no tie whatsoever between the private parties' operation of an LNG facility and the state agency's navigation regulating a commercial activity at San Juan Harbor. The allegations here are not that the private defendant took action "compelled" by the state, but that the private entity sought an administrative remedy that the state agency was empowered by law to provide. "The state compulsion test requires more than the taking of action against a backdrop of applicable state regulations." *Santiago, 655 F. 3d at 71.* There is no allegation that Defendant NFE is vested with any authority to regulate state pilotage or issue administrative resolutions. It follows, therefore, that the Defendant's act could not be considered an act of the state.

Second, under the nexus/joint test "[a] plaintiff must show a close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as

that to the State itself." *Perkins v. Londonderry Basketball Club*, 196 F. 3d at 19; quoting *Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349 (1974)*. In this sense "[t]he private party's actions are attributable to the state through a symbiotic relationship between the two." *Santiago*, 655 F. 3d at 71 (footnote omitted). "The requisite showing is premised on a showing of material interdependence." *Id.*

Here there is no allegation, nor can there be, that the Defendant and the Commission are in any respect involved in a "symbiotic" relationship or were materially interdependent. Defendant is in no manner empowered in the state's regulatory scheme or its processes concerning the licensing, authorizations or exemptions as to harbor pilot activity in San Juan Harbor. Nor do Plaintiffs allege that Defendant is otherwise empowered to act on behalf of the Commission because, of course, it is not.

Third, under the public function test "[a] private entity may qualify as a state actor when it exercises 'powers exclusively reserved to the State.' " *Manhattan Community Access Corp. v. Halleck, 587 U.S. 802*, 809 (2019). "[T]o qualify as a traditional, exclusive public function… the government must have traditionally *and* exclusively performed the function." *Id.* at 809. "[V]ery few" functions qualify under this test. *Id.* at 809 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)).

Defendant NFE is the operator of an LNG facility. This is not now, and has never been, a traditional or exclusive activity or function of the state. *Cf. Santiago v. Puerto Rico, 655 F. 3d 61, 70* (1st Cir. 2011) (operation of a private school bus company). It inextricably follows that no claim is presented here under the public function test.

In conclusion, the § 1983 claim against a private entity must have allegations sufficient to show that it is in all respects a "state actor." When these allegations are absent the Complaint must be dismissed for failure to state a claim.

## IX. COUNT VI. FOR DECLARATORY JUDGMENT AGAINST NFE FAILS TO STATE A CLAIM

### A. The Declaratory Judgment Act Requires a Concrete, Immediate Actual Controversy

The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes relief only "in a case of actual controversy." That standard requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). This standard tracks the Article III case-or-controversy requirement discussed in Section III above, and remains subject to the pleading standard set out in Section II above: a bare recitation that "an actual controversy exists," without supporting facts describing what the opposing party has said or done to place the asserted right in genuine dispute, is the kind of formulaic recitation *Iqbal* holds is not entitled to a presumption of truth.

### B. The Third Amended Complaint Fails to Plead a Concrete, Non-Conclusory Actual Controversy

1. A Conclusory Recitation of the Legal Standard, Not a Factual Allegation

Count VI's operative "controversy" allegation states only that "NFE disputes, has refused to comply with, has attempted to evade, or has threatened to evade those obligations." Docket No. 313 ¶ 180. That sentence identifies no fact: it does not say when NFE disputed the obligation, to whom, in what words, or through what conduct, and it offers four different, non-interchangeable characterizations in the alternative rather than a single specific fact. Every factual allegation Plaintiffs allege describes NFE's conduct, principally that NFE stopped using the ECO tugs and stopped paying for standby tugs, not any articulated denial that an obligation exists. A dispute about whether a party performed under an arrangement is not the same as a dispute about whether the arrangement, or the obligation it supposedly creates, exists at all, and Count VI's pleading blurs the two.

2. The Conduct Underlying Docket No. 313 ¶¶ 178–180 Is Completed, Past Conduct, Not a Live Dispute About Future Rights

Declaratory relief exists to resolve uncertainty about a party's rights and obligations before that party must act at its peril; it is not a substitute vehicle for adjudicating a completed breach. The Declaratory Judgment Act is designed to enable litigants to clarify legal rights and obligations before acting upon them. *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530 (1st Cir. 1995). Declaratory relief serves a valuable purpose precisely because it allows parties to obtain judicial guidance prospectively, before they are forced to act on their own interpretation of disputed rights and risk liability. *Id.* As the Supreme Court noted in foundational legislative history, persons often had to act at their peril — breaking a contract or acting on a disputed interpretation of rights — in order to present a justiciable controversy to a court, and the declaratory judgment procedure was designed to eliminate that social and economic waste. *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75 (1947).

Declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act. *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F.Supp.3d 274 (2018). Declaratory relief cannot be obtained where there is no ongoing legal violation. *Id.* A declaratory judgment is appropriate when it will serve a useful purpose in clarifying and settling the legal relations in issue and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding; however, a declaratory judgment is an inappropriate mechanism through which to address allegations of past harm. *Boston's Children First v. Boston School Committee*, 183 F.Supp.2d 382 (2002).

Courts have directly addressed the misuse of declaratory relief as a preemptive defense against a breach-of-contract claim arising from prior conduct. In *Cognex Corp. v. Air Hydro Power, LLC*, the court declined to exercise its discretion under the Declaratory Judgment Act where the action at issue

— termination of a contract — had already taken place, and a declaration that the plaintiff had the right to terminate would effectively allow the plaintiff to use the Act as a preemptive defense against a purported breach-of-contract claim arising from its own prior conduct. *Cognex Corporation v. Air Hydro Power, LLC*, 651 F.Supp.3d 322 (2023). The court recognized that declaratory relief is meant to resolve a party's contract rights and liabilities before it incurs costs and risks based upon its interpretation of the contract, and that awarding declaratory relief with respect to actions already taken runs counter to the purposes underlying the Act. Id.

Similarly, claims for declaratory judgment regarding a breach of contract must be forward-looking rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim itself. *Xynergy Healthcare Capital II LLC v. Municipality of San Juan*, 516 F.Supp.3d 137 (2021).

The four ECO tugs left Puerto Rico on September 15, 2025, Docket No. 313 ¶ 75, and NFE has not paid for standby tugs since on or about February 2026, Docket No. 313 ¶ 102. Both events were complete before this pleading was filed, and Plaintiffs do not allege that NFE's position on either point remains unsettled or is evolving. A declaration that NFE "is obligated to comply with the parties' agreement," Docket No. 313 ¶ 184, addresses conduct that has already occurred, functions as a backward-looking liability determination dressed in prospective language, a role the Declaratory Judgment Act does not serve where an ordinary breach claim, complete with the legal remedy of damages, would address the same completed conduct. Plaintiffs' choice to disclaim damages throughout the Third Amended Complaint, Docket No. 313 ¶¶ 110–111, does not convert a completed breach into a live controversy about future rights.

3. ¶182's Request for a Declaration About "Materially Inconsistent" Conditions Is Too Indefinite to Support Declaratory Relief

Docket No. 313 ¶ 182 seeks a declaration concerning whether NFE may conduct large LNG vessel movements "under conditions materially inconsistent with the agreed or relied-upon safety framework without equivalent safeguards validated through a technically reliable process." None of these operative phrases is defined anywhere in the pleading with enough precision that a court could determine, from the four corners of the pleading, what NFE could and could not do going forward. A declaratory judgment must be definite enough to be enforced; a declaration phrased at this level of generality would function as an advisory opinion instructing NFE how to conduct an ongoing commercial relationship, not a declaration resolving a concrete dispute about identified conduct.

This request is independently unripe for the reasons given in Section III.B above, since it asks the Court to assess undefined future conditions against an undefined benchmark before any specific transit presenting those conditions has occurred.

**C. Rule 14 of the Pilotage Commission's Transit Rules Shows the Tug-Minimum Question Is Regulatory, Not a Private NFE Obligation**

Rule 14 of the Puerto Rico Pilotage Commission's Transit Rules, "Tugboats – minimum quantity to be used," provides that pilots "will comply with the regulatory provisions imposed by the Coast Guard" on tug minimums where such provisions exist; that, absent a Coast Guard provision, any agreement on tug minimums runs among "the Pilot, the Agent and the vessel"; and that, in all events, a Pilot retains "the discretion that a Pilot must exercise to request the assistance of additional tugboats when circumstances warrant it." These Transit Rules were enacted "in accordance with Act No. 226 of August 12, 1999," P.R. Laws Ann. Tit 23 § 361, and apply, by their own terms, to "operators or owners of docks or facilities," reaching NFE as a Dock Operator. Rule 14 accordingly governs the very subject Count VI asks this Court to declare, and shows that subject is regulatory rather than contractual in three independent respects.

First, to the extent any tug-minimum floor exists, it exists inside the Coast Guard's Waterway Suitability Assessment and Letter of Recommendation process, not inside a private declaratory judgment claim against NFE. Second, Rule 14's own text places tug-minimum agreements among "the Pilot, the Agent and the vessel," not the terminal or dock operator such as NFE, difficult to reconcile with Count VI's premise that NFE personally undertook a freestanding obligation to procure and pay for a specific tug package. Third, Rule 14 already gives any pilot who believes a transit requires more tug support than the currently available configuration the power to request it, transit by transit, without any need for a sweeping declaratory judgment fixing NFE's obligations in advance, which independently undercuts the immediacy Count VI's "controversy" allegation requires.

**D. Puerto Rico's Compulsory Pilotage Scheme, and SJBPC's Own Corporate Charter, Show Plaintiffs Lacked Authority to Form the Agreement Count VI Asks the Court to Declare.**

Count VI also fails because Plaintiffs lacked authority to form the very agreement Count VI asks the Court to declare NFE bound to. Pilotage in the Port of San Juan is compulsory, Docket No. 313 ¶ 1; P.R. Laws Ann. Tit 23 § 361 et seq., Art. 19, and Article 4(b) of Act No. 226 of August 12, 1999 provides that "[h]arbor pilots are hereby prevented from unilaterally determining rates or other charges. The Commission shall determine the rates and other fees to be charged for pilotage services." § 361a(b). This prohibition against pilots from unilaterally determining rates or other charges that plausibly reaches the multi-million-dollar-per-year tug package Plaintiffs want NFE to pay for. Articles 3(c) and 23 channel every economic aspect of pilotage regulation through the Pilotage Commission's own formal ratemaking process, filed application, certified financial statements, and public hearings, a process the Third Amended Complaint nowhere alleges was invoked. And Article 24 confirms that SJBPC's own statutory authority, as an association organized to administer its members' common affairs under Commission-approved bylaws, does not extend to binding a third-

party terminal operator to a recurring capital obligation of this magnitude; the statute requires prior Commission approval for capital expenditures in excess of $20,000. P.R. Laws Ann. Tit 23 § 361u(f).

SJBPC's own Certificate of Incorporation and By-Laws, filed with the Puerto Rico Department of State and subject to judicial notice under Federal Rule of Evidence 201(b) without converting this motion into one for summary judgment, confirm the same limitation from the corporate-law side. SJBPC's chartered purpose is to administer its members' internal, mutual professional and economic interests; its By-Laws expressly disclaim that individual pilots are SJBPC's "agents" or that SJBPC bears any "joint or several liabilit[y]" with its members as to third persons; they place responsibility for "the conduct and behavior of the Pilots" with the licensing authority rather than SJBPC; and they fund SJBPC's own capital needs through member assessment rather than third-party procurement.

If Plaintiffs lacked the statutory and corporate authority to fix this term unilaterally, no enforceable agreement was ever formed, which reinforces the contract-formation defects already argued in Sections V and VI above as to Counts I and II, and leaves Count VI's request for a declaration "that NFE is obligated to comply with the parties' agreement," Docket No. 313 ¶ 184, with nothing to declare. NFE respectfully submits that this authority-based argument independently defeats Counts I and II as well and should be incorporated into Sections V and VI above; it is developed at greater length in the accompanying memorandum.

### E. The Cost-Shifting Allegations in TAC ¶ 181 Fail for the Same Reasons Already Shown in Sections III.A and III.B Above

Docket No. 313 ¶ 181 alleges a controversy over whether NFE may shift to Plaintiffs the costs associated with tug support, based solely on NFE "directing members of the Puerto Rico Shippers' Association to submit 'Letters of Protest'" asserting a right to recover standby-tug costs from Plaintiffs. Docket No. 313 ¶ 105. That theory fails for the same reasons already shown in Sections

III.A and III.B above: it depends on a non-party shipper electing to sue and prevailing, a contingency that has not occurred and may never occur, *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013); the party actually asserting the adverse claim is the Shippers' Association, not NFE, so a declaration against NFE would not bind the Association or resolve Plaintiffs' exposure; and Plaintiffs' own pleading discloses no dollar figure for any Letter of Protest. A declaratory judgment claim requires adversity of legal interest between the parties actually before the Court, and the "coercive cost-shifting pressure" Plaintiffs describe, if it is a dispute at all, is a dispute between Plaintiffs and non-parties that a judgment against NFE does not redress. It is, independently, not ripe for the reasons given in Section III.B above.

**F. Additional, Independent Grounds Support Dismissal of Count VI**

The Declaratory Judgment Act "is procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), and supplies a remedy only where an independent substantive claim or controversy already exists. Count VI requests exactly the declarations already requested in Counts I through IV: that NFE must comply with the parties' agreement, Docket No. 313 ¶ 184; that NFE is estopped from repudiating the alleged safety framework, Docket No. 313 ¶ 185; and that NFE may not shift costs to Plaintiffs, Docket No. 313 ¶ 186. If Counts I through IV are dismissed for the reasons given in Sections V through VII above, Count VI necessarily falls with them, since it identifies no substantive theory of its own. Even if some independent theory survived, a court has broad discretion to decline a declaratory judgment claim that is entirely duplicative of coercive claims already before it, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942), and that discretion counsels dismissal here for the same redundancy reasons. And Docket No. 313 ¶ 182's request for a declaration addressed to conditions "materially inconsistent with the agreed or relied-upon safety framework," undefined and open-ended, would function as an

advisory opinion rather than a declaration resolving identified, concrete conduct, an independent basis for dismissal for the reasons given in Section IX.B.3 above.

For each of these independent reasons, Count VI of the Third Amended Complaint should be dismissed under Rule 12(b)(6).

## X. COUNT VII. INJUNCTIVE RELIEF/SPECIFIC PERFORMANCE/ ALTERNATIVE EQUITABLE RELIEF AGAINST NFE FAILS TO STATE A CLAIM

The Third Amended Complaint's Count VII is at its essence a prayer for relief. The Plaintiffs assert that since "monetary damages are inadequate" the "balance of hardship" and the "public interest" require a "preliminary and permanent" injunction if there is no enforceable contract. Docket No. 313, 38-39. Insofar as the preliminary injunction is moot, Docket No. 300, this cause of action concerns only permanent relief. The issuance of a permanent injunction is guided by the traditional four-factor test: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiffs and the defendant, a remedy in equity is warranted, and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

The concession of permanent injunctive relief in this matter would depend on the viability of Plaintiffs' core claims of breach of contract (agreed or implied). When these claims cannot be sustained as a matter of law it necessarily follows that the remedy, couched as a separate claim, must also fail.

In different parts of this Motion, the Defendant has demonstrated that no set of allegations in the Third Amended Complaint is sufficient to conclude the formation of a formal relationship between the parties. The loose collections of descriptions of interactions do not measure up to any standard of fixed obligations between the parties. Since those claims must be dismissed, no consideration of a permanent injunction is possible or necessary.

## XI. CONCLUSION

For the foregoing reasons, the Third Amended Complaint should be dismissed in its entirety.

Plaintiffs have not alleged a concrete, particularized, non-speculative injury-in-fact for any Plaintiff; the amount in controversy fails to a legal certainty; and no federal statute or regulation Plaintiffs invoke confers a private right of action. The Court therefore lacks subject matter jurisdiction over every count, and Counts I through VII should be dismissed under Fed. R. Civ. P. 12(b)(1). The declaratory and injunctive relief sought in Counts VI and VII is, in addition, unripe. Should the Court reach the merits, no count states a claim: the pleading never alleges the formation of the contract on which Counts I, II, III, IV and VI all depend, it alleges no state action to support Count V, and Count VII seeks a remedy that cannot outlive the claims it rests on. Counts I through VII should accordingly be dismissed under Fed. R. Civ. P. 12(b)(6).

**WHEREFORE,** for all the above-stated reasons the Defendant respectfully submits that this Honorable Court lacks subject matter jurisdiction over the causes of action presented, and, in any event, these fail to state cognizable claims, and accordingly requests that the Third Amended Complaint be dismissed with prejudice, that the Defendant be awarded its costs, and that this Honorable Court grant such other and further relief as it deems just and proper.

**RESPECTFULLY SUBMITTED.** In San Juan, Puerto Rico, this 5th day of August, 2026.

s/ *Alberto J. Castañer-Padró*
Alberto J. Castañer-Padró
USDC 225706
**Castañer & Cía PSC**
Capital Center Building I
239 Ave A Hostos, Ste 1201
San Juan, PR 00918
Fax 1 888 227 5728
Tel 787 707 0802
alberto@castanerlaw.com

s/ *J. Ramón Rivera-Morales*
J. Ramón Rivera-Morales
USDC-PR 200701
Midtown Building 4th Floor
420 Ponce de León Ave., San Juan, PR 00918
Tel. 787-510-8090
email: rrivera@jgl.com

s/ *Thomas N. Lightsey III*
Thomas N. Lightsey III
By Admission Pro Hac Vice
Fed. ID: 84829
Holman Fenwick Willan USA LLP
3040 Post Oak Blvd.
Floor 18, Suite 129, Houston, Texas 77056
Tel. (713) 917-0888
Email: tom.lightsey@hfw.com

s/ *Christopher R. Hart*
Christopher R. Hart
By Admission Pro Hac Vice
Fed. ID: 12517
Holman Fenwick Willan USA LLP
3040 Post Oak Blvd.
Floor 18, Suite 129, Houston, Texas 77056
Tel. 713-917-0888
chris.hart@hfw.com

Attorneys for NFEnergia LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: s/Alberto J. Castañer
**Alberto J. Castañer**
USDC-PR No. 225706