**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CAPT. BUSTO-ALVAREZ, et al<br>Plaintiffs,<br>vs.<br>NFENERGIA LLC, et al<br>Defendant | **Civil No. 25-cv-1462 (SCC)** |

**DEFENDANT NFENERGÍA LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** defendant NFEnergía LLC ("NFE"), through the undersigned counsel, and, pursuant to Local Rule 7(c), respectfully submits this Reply to Plaintiffs' Opposition, Docket No. 328 ("the Opposition"), to NFE's Motion to Dismiss the Third Amended Complaint, Docket No. 326 ("the Motion").

## I. INTRODUCTION

The Opposition does not rescue the Third Amended Complaint ("TAC"). Where it engages the Motion's arguments, it largely restates allegations the Motion already shows are insufficient. Where it raises something new, a jurisdictional theory the Motion did not need to address, a reworked amount-in-controversy theory built from allegations the TAC never tied to the jurisdictional amount, and a joint-action theory of state action the TAC does not plausibly support, that new material independently fails for the reasons below.

## II. ARGUMENT

### A. Admiralty Jurisdiction Does Not Exist if No Maritime Contract was Formed

Plaintiffs are correct that the Motion's jurisdictional section did not separately address 28 U.S.C. § 1333. It did not need to. Section V of the Motion shows the TAC fails to allege the formation of any contract at all, maritime or otherwise: no mutual assent, no consideration, and no allegation of when, where, or through whom the parties agreed to anything. Motion at 16–18. Admiralty jurisdiction under § 1333, and the Rule 9(h) designation the TAC invokes, Docket No. 313 ¶ 5, both presuppose an actual maritime contract; neither creates one. The "nature and character" inquiry drawn from *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23–24 (2004)(addressing maritime jurisdiction on mixed contract which have both maritime and non-maritime components), and *Kossick v. United Fruit Co.*, 365 U.S. 731, 735–38 (1961)(maritime contracts may be oral), is a second-order question presupposing a contract exists; it cannot supply one where the pleading never gets past formation.

Even if some agreement were plausibly pled, and it is not, that would resolve only the statutory basis for jurisdiction, not the independent Article III standing and ripeness defects in Sections III.A and III.B of the Motion, which apply regardless of which jurisdictional statute is invoked. Plaintiffs' admiralty argument, even fully credited, leaves every other jurisdictional defect untouched.

Plaintiffs' reliance on *Puerto Rico Ports Authority v. M/V Manhattan Prince*, 897 F.2d 1 (1st Cir. 1990), does not assist them. That maritime tort case arose from a vessel's allision with a pier during a docking maneuver, and the opinion is devoted to apportionment of fault and, at length, whether the Puerto Rico Ports Authority was entitled to Eleventh Amendment immunity for the pilot's negligence. Id. Admiralty jurisdiction is noted only in a footnote, with no analysis of contract formation or of a contract's maritime "nature and character," a test the Supreme Court did not articulate until *Kirby*, fourteen years later. The decision says nothing about whether a disputed, unformed implied agreement

would qualify as maritime; it is a tort and sovereign-immunity decision, not a contract-jurisdiction decision.

Finally, Plaintiffs' fallback argument that supplemental jurisdiction under 28 U.S.C. § 1367(a) would preserve the remaining counts even if diversity fails, Opposition at 8–9, requires a surviving anchor claim. Count I fails independently under Rule 12(b)(6), Motion § V, and Count V fails independently under Motion § VIII, regardless of jurisdictional theory. Without a surviving anchor claim, § 1367(a) has nothing to attach to.

**B. Plaintiffs' New Amount-in-Controversy Theory Does Not Establish Diversity Jurisdiction**

The Opposition abandons the diversity amount theory the TAC pled and substitutes a different one. TAC ¶ 106, the TAC's only jurisdictional-amount allegation, ties "a live controversy exceeding $75,000 in value" to the Letters of Protest described at TAC ¶¶ 105–106, non-party Shippers' Association members allegedly asserting a right to recover standby-tug costs from Plaintiffs. The Motion shows why that theory fails: it depends on a non-party shipper electing to sue a Plaintiff and prevailing, a contingency that has not occurred and may never occur, and the TAC alleges no dollar figure for any Letter of Protest.

Rather than defend that theory, the Opposition points to TAC ¶¶ 70 and 76, which value NFE's own cost of the tug package at "several million dollars per year," and pairs that figure with a phrase from the Motion's discussion of Act 226 ratemaking authority, describing the same package as "multi-million-dollar-per-year." Opposition at 15–16. Neither citation helps Plaintiffs. TAC ¶ 106 never ties the jurisdictional amount to ¶¶ 70 or 76; a plaintiff is bound by the theory the operative pleading advances, not a different valuation theory raised for the first time in opposition briefing. And even accepted on its own terms, NFE's cost of the tugs is not a value "to Plaintiffs": Plaintiffs do not pay for the package, would receive nothing from NFE if the declaration issued, and expressly disclaim any monetary recovery for themselves, TAC ¶ 110 ("Plaintiffs do not bring this action to obtain a

monetary recovery for themselves."), or any indemnification from NFE, TAC ¶ 111 ("Plaintiffs do not seek compensatory damages, lost profits, lost pilotage revenues, indemnification, reimbursement, restitution, disgorgement, quantum meruit, reliance damages, extracontractual damages, nominal damages, punitive damages, or any other monetary recovery for past injury."), an argument the Motion to Dismiss already makes and the Opposition never answers.

The point runs deeper than disclaimer. The only monetary exposure Plaintiffs allege for themselves, the Letters of Protest theory, runs between Plaintiffs and non-party Shippers' Association members, not between Plaintiffs and NFE. Diversity jurisdiction measures the amount in controversy between the parties before the Court; a contingent future claim by an absent third party against Plaintiffs is not in controversy between Plaintiffs and NFE, independent of whether that third-party claim is itself speculative.

The Motion's reference to a "multi-million-dollar-per-year tug package" appears in Section IX.D's discussion of whether Plaintiffs had statutory authority under Act 226 to obligate NFE to a cost commitment of that magnitude, a question of regulatory authority, not a concession about any Plaintiff's personal stake in this litigation.

*Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 131 (1st Cir. 2004) (amount-in-controversy holding unaffected by the reversal, on an unrelated supplemental-jurisdiction question, in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005)), illustrates why a blended, unapportioned figure cannot substitute for individualized proof. There, four family members sued together over a single injury; the First Circuit held that only the injured child's own claim could proceed, because each family member's claim had to be evaluated on its own facts, and none, considered individually, came close to the jurisdictional minimum, even though all four claims arose from the same event and were pled together. Id. at 131. The same defect infects the theory Plaintiffs advance here. TAC ¶¶ 70 and 76 offer one blended figure for the tug package's cost to NFE; nothing in the TAC apportions that figure

among the eight individual pilot-Plaintiffs and San Juan Bay Pilots Corporation, or explains what stake, if any, each holds individually. *Ortega* confirms that a court cannot infer individual satisfaction of the threshold from an aggregate number attached to a group of plaintiffs who share a common origin for their claims; each plaintiff's own exposure must be shown, and here none is shown at all.

Even crediting Plaintiffs' conflated theory in full, it still fails the Motion's unrebutted aggregation argument. TAC ¶¶ 70 and 76 describe one blended cost figure for the entire package, never apportioned among the eight individual pilot-Plaintiffs and San Juan Bay Pilots Corporation. Each plaintiff must independently satisfy the $75,000 threshold, *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004); distinct plaintiffs may not pool separate claims to reach it collectively. The Opposition does not address this argument, and it independently defeats diversity jurisdiction regardless of valuation theory.

### C. Plaintiffs do not Distinguish *Hight*, and Count VI's Contested Declarations Remain Unripe

Plaintiffs argue *Hight v. United States Department of Homeland Security*, 135 F.4th 996 (D.C. Cir. 2025), is inapposite because the pilot there faced a sequential chain of contingencies, while NFE's operation and the tug dispute already exist. Opposition at 12–13. That mistakes the form of the contingency for its substance. *Hight* teaches that a court should not resolve a dispute depending on events that have not occurred and may never occur, because "deferring consideration might eliminate the need for review altogether." 135 F.4th at 1012 (quoting *Chamber of Commerce of U.S. v. Reich*, 57 F.3d 1099, 1100 (D.C. Cir. 1995)). That reasoning applies equally to two independent, unresolved contingencies here: whether a Shippers' Association member will ever sue a Plaintiff and prevail, TAC ¶¶ 105–106, and whether some future transit will present conditions "materially inconsistent" with an undefined safety framework, TAC ¶ 182. Neither is less speculative for arising within an ongoing relationship rather than a chain of eligibility requirements; if neither event occurs, the declarations Plaintiffs seek will never need deciding.

Plaintiffs' reliance on the mootness of their preliminary-injunction request, Docket No. 300 at 3, does not establish ripeness for the remaining permanent relief. Opposition at 13–14. Mootness of an interim emergency request says nothing about whether the underlying claim for permanent relief was ever ripe; preliminary and permanent relief require different showings on different records.

### D. *Lyons* Continues to Defeat Standing on Count V

Plaintiffs argue *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is distinguishable because recurrence there depended on a chance encounter with police, while NFE and Plaintiffs remain in an ongoing operational relationship. Opposition at 25–26. That does not change what the TAC alleges. Its only allegation of future risk is that Plaintiffs "continue to face a reasonable concern that NFE may seek to suppress, chill, retaliate against, or interfere with Plaintiffs' safety communications" in the future, TAC ¶ 172, the same generalized apprehension *Lyons* held insufficient, 461 U.S. at 105–06. An ongoing relationship is not an allegation that NFE has threatened or attempted to procure another cease-and-desist order since the first was rescinded; the TAC alleges no such fact. Continuity explains why recurrence is possible; it does not supply the "real and immediate threat" *Lyons* requires.

Continuity in fact cuts the other way. Puerto Rico is a compulsory pilotage jurisdiction: no vessel may enter or leave a Puerto Rico harbor without a licensed Puerto Rico pilot aboard, **a mandate triggered anew with each vessel movement, not by any continuing agreement**. P.R. Laws Ann. tit. 23 § 361p (Act No. 226 of Aug. 12, 1999, Art. 19); see also *Puerto Rico Ports Authority v. M/V Manhattan Prince*, 897 F.2d 1, 10 (1st Cir. 1990) ("Puerto Rico is a compulsory pilot jurisdiction"). The obligation it creates likewise runs by operation of law, not negotiation or contract: even where a vessel is piloted by an unlicensed individual in violation of the Act, the vessel, owner, or agent remains obligated to pay the fee that would otherwise have applied. Id. § 361q(b). What Plaintiffs characterize as an "ongoing operational relationship," Opposition at 25, is a sequence of discrete, statutorily compelled port calls, not a self-renewing contract that would make a second cease-and-desist order

more likely than the isolated episode the TAC describes. A relationship neither party negotiates, and that resets with every transit, does not become a contract merely because the underlying LNG import operation continues.

Plaintiffs' reliance on *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012), fares no better. Opposition at 9–10. The portion of *Katz* holding that alleging a contract's existence and breach adequately shows injury, id. at 71–72, presupposed a plausibly pled contract. Here no contract, express or implied, is plausibly alleged, Motion § V; *Katz*'s contract-injury discussion has nothing to attach to, and only its data-breach holding, that speculative fears of future harm are not concrete injuries, remains applicable.

### E. The Joint-Action Theory Plaintiffs Now Advocate Does Not Cure Count V

Plaintiffs invoke *Dennis v. Sparks*, 449 U.S. 24 (1980), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982), for the proposition that a private party who is a "willful participant in joint action with state officials" acts under color of law, and argue the Motion analyzed the wrong state-action theory. Opposition at 23. Even under that framework, the TAC does not plausibly allege joint action, which requires more than a private request followed by independent state action; it requires a plausible allegation of a shared plan or common objective. The TAC alleges that NFE, through Carlos Faris, requested Commission intervention and that the Commission president issued a cease-and-desist order approximately two hours later, TAC ¶¶ 83–98, and asks the Court to infer joint participation from timing alone. Compressed timing is at least as consistent with a regulator exercising independent judgment on an urgent matter as with a coordinated scheme, and the TAC alleges no fact about the content of NFE's communication or any NFE role in drafting or directing the order's terms. A private request preceding a regulator's own decision does not plausibly allege the willful joint participation *Dennis* and *Lugar* require.

The Opposition lists six factual elements to argue that the TAC set out enough to "make joint participation permissible." Opposition 23-24. But these items state nothing more beyond the belief that NFE understood that the Plaintiffs' actions, (withholding service to a vessel) merited administrative review and action by the Governmental agency with jurisdiction over the matter, i.e., P.R. Pilotage Commission. This is highly distinguishable from the *Dennis* and *Lugar* cases cited by Plaintiffs. Here the only allegations in the TAC are that the Commission granted a remedy which was to allow non-Plaintiff pilots to service a vessel. These allegations, accepted as true, (including the expeditious issuance of an order) do not come close to pleading a plausible case of corrupt conspiracy. As the First Circuit has stated with respect to section 1983 conspiracy claims, it is imperative that a "complaint state with specificity the facts that in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other Circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts." *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977); see also, *Francis-Sobel v. University of Maine*, 597 F. 2d 15-17 (1st Cir. 1979) ("Pleading conspiracy under sections 1983 & 1985(3) requires at least minimum factual support of the existence of a conspiracy."); *Bolet v. Puerto Rico Electric Power Authority*, 109 F. Supp. 3rd 459, 4654 (D.P.R. 2015).

**F. Count VI Remains Deficient Notwithstanding Rule 54(c) and the Unrelated Third-Party Complaint**

Plaintiffs invoke Fed. R. Civ. P. 54(c) for the proposition that the Court need not adopt the TAC's proposed declaratory language verbatim and can tailor relief once the record is developed. Opposition at 28. That conflates two stages of the analysis. The definiteness the Declaratory Judgment Act requires, a controversy that is "real and substantial" and admits of "specific relief through a decree of a conclusive character," *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937), is a pleading-stage requirement; Rule 54(c)'s flexibility in fashioning final relief applies only once a viable claim survives to judgment. Motion at 24–25. A pleading that cannot identify, with enough precision to be

enforced, what conduct would satisfy "equivalent safeguards validated through a technically reliable process," TAC ¶ 182, does not become definite because Rule 54(c) might later let the Court narrow whatever relief eventually issues.

Plaintiffs' citation to the third-party complaint in *Asociación de Navieros de Puerto Rico, Inc. v. San Juan Bay Pilots Corp.*, Civil No. 26-1360 (ADC), Docket No. 13, Opposition at 27, a case which is not alleged in the TAC, does not establish that these Plaintiffs' claims are ripe or definite. That filing is outside the TAC, and does not convert NFE's alleged withdrawal of the ECO tugs and cessation of standby-tug payments, TAC ¶¶ 75, 102, both complete before this pleading was filed, into a live dispute about undefined future conditions. Motion at 25.

**G. Remaining Points**

Plaintiffs' invocation of Rule 8(d)(2)–(3) for Counts III and IV, Opposition at 21–22, does not cure their deficiency: alternative pleading permits inconsistent theories, but does not relax the obligation to plead each theory's elements, and Counts III and IV still fail to allege the misrepresentation, reliance, or prejudice Puerto Rico's equitable doctrines require with any more specificity than Counts I and II offered for contract formation. Motion at 19–20.

In this matter the crux of the Plaintiffs' claims in their Complaint, Docket 1, August 31, 2025; Amended Verified Complaint, Docket 13, September 12, 2025; Second Amended Verified Complaint, Docket 33, September 23, 2025; and Third Amended Complaint for Injunctive Relief, Breach of Contract and Declaratory Judgement, Docket 313, July 6, 2026, is the supposed existence of a "contract" or "agreement".

The Third-Amended Complaint was tested in its fundamental parts by a Rule 12 (b)(6) Motion to Dismiss which pointed out that nowhere in the pleadings do the plaintiffs state "which" Plaintiffs agreed to "what" terms with "whom" within the corporate Defendant, in exchange for specific "consideration", nor "when" did this concourse of offer and acceptance come about.

The Motion to Dismiss discussed this void both within the context of a "maritime contract", and within the setting of Puerto Rico Civil Code Law. A close examination of the allegations the Plaintiffs Opposition to the Motion to Dismiss merely mimics the allegations of all the Complaints filed in this matter which are simply "labels and conclusions" of the type which do not pass muster under Rule 16 (b)(6). *Ocasio-Hernández v. Fortuño-Burset*, 640 U.S. 1,12 (1st Cir.)

After four Complaints, across more than 250 paragraphs of factual allegations, the name of no plaintiff appears as saying the equivalent of "I said x to the Defendants' authorized empowered representative and he agreed to Y." The generalized allegations that the Plaintiffs' have presented do not bring the premise of a "contract" beyond the "speculative level." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007).

## III. CONCLUSION

For these reasons and those set out in the Motion, the Third Amended Complaint should be dismissed in its entirety.

**WHEREFORE**, NFE respectfully requests that the Court grant the Motion to Dismiss and dismiss the Third Amended Complaint in its entirety, together with such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**. In San Juan, Puerto Rico, this 1st day of September, 2026.

s/ *Alberto J. Castañer-Padró*
Alberto J. Castañer-Padró
USDC 225706

**Castañer & Cía PSC**
Capital Center Building I
239 Ave A Hostos, Ste 1201
San Juan PR 00918
Fax 1 888 227 5728
Tel 787 707 0802
alberto@castanerlaw.com

s/ *J. Ramón Rivera-Morales*
J. Ramón Rivera-Morales
USDC-PR 200701

Midtown Building 4th Floor
420 Ponce de León Ave., San Juan, PR 00918
Tel. 787-510-8090
email: rrivera@jgl.com

s/ *Thomas N. Lightsey III*
Thomas N. Lightsey III
By Admission Pro Hac Vice
Fed. ID: 84829

Holman Fenwick Willan USA LLP
3040 Post Oak Blvd.
Floor 18, Suite 129, Houston, Texas 77056
Tel. (713)917-0888
Email: tom.lightsey@hfw.com

s/ *Christopher R. Hart*
Christopher R. Hart
By Admission Pro Hac Vice
Fed. ID: 12517

Holman Fenwick Willan USA LLP
3040 Post Oak Blvd.
Floor 18, Suite 129, Houston, Texas 77056
Tel. 713-917-0888
chris.hart@hfw.com

Attorneys for NFEnergia LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: S/*Alberto J. Castañer*
**Alberto J. Castañer**
USDC-PR No. 225706