THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CAPT. TOMAS BUSTO-ALVAREZ et al.,<br><br>Plaintiffs<br><br>v.<br><br>NFENERGIA LLC et al.,<br><br>Defendants | CIVIL NO.: 25-1462 (SCC) |

**PLAINTIFFS' LIMITED SURREPLY TO REPLY TO OPPOSITION TO NFE'S MOTION TO DISMISS**

TO THE HONORABLE COURT:

COME NOW Plaintiffs, by and through undersigned counsels, and respectfully submit this limited Surreply to address arguments and authorities first developed in NFEnergia LLC's ("NFE") Reply at Docket No. 337. The Reply confirms that NFE's request for wholesale dismissal rests on mischaracterizing the Third Amended Complaint ("TAC"), applying proof-stage requirements under Rule 12(b)(6), and treating new factual arguments as though Plaintiffs had already received an opportunity to answer them.

The Reply does not cure the Motion's fundamental defects. Section 1333 was pleaded in the TAC, not invented in the Opposition. The amount in controversy is determined from the TAC as a whole, not from one paragraph NFE isolates. Count V rests on pleaded communications, actors, objectives, official action, and surrounding circumstances, and not "timing alone." And compulsory pilotage does not transform NFE's continuing LNG operation and repeated dealings with the same pilots and Commission into unrelated encounters. Thus, the Motion should be denied.

## I. ADMIRALTY JURISDICTION WAS PLEADED, AND NFE CANNOT DEFEAT IT BY DENYING THE CONTRACT'S EXISTENCE

NFE admits that its Motion "did not separately address 28 U.S.C. § 1333," but calls Plaintiffs' reliance on that statute "new." Docket No. 337 at 1-2. It is not. TAC ¶ 5 clearly and expressly invokes admiralty jurisdiction under § 1333 and designates the maritime claim under Rule 9(h). Docket No. 313 ¶ 5. The Opposition simply answered a motion seeking dismissal of the entire action by identifying a jurisdictional basis alleged on the face of the operative complaint and ignored by NFE.

NFE still collapses pleading into proof. The TAC alleges an agreement, identifies its operational terms, describes the simulation and regulatory process that produced it, and pleads NFE's procurement and use of the specified tugs in at least eighteen successful movements. *Id.* ¶¶ 43-70, 114-129. NFE's denial of formation is a merits defense; it does not erase jurisdiction to adjudicate a nonfrivolous maritime-contract claim. See *Kossick v. United Fruit Co.*, 365 U.S. 731, 735–38 (1961). The alleged undertaking governs pilotage, tug-assisted navigation, docking, vessel limits, standby support, and movement of LNG carriers through San Juan Bay. Under *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23-24 (2004), its principal objective is maritime.

## II. THE REPLY'S NEW INDIVIDUALIZED-VALUATION THEORY DOES NOT DEFEAT JURISDICTION

The Reply newly argues that Plaintiffs "abandoned" the TAC's valuation theory, that TAC ¶¶ 70 and 76 cannot be considered, and that the value of the disputed operational framework must be divided among the individual Plaintiffs. Docket No. 337 at 3-5. Each premise is incorrect.

First, the TAC must be read as a whole. Paragraph 7 alleges that "the amount in controversy exceeds $75,000 exclusive of interest and costs, as more fully explained herein." Docket No. 313 ¶ 7 (emphasis added). The allegations that follow explain that NFE's obligation to provide and pay

for the required four-tug package represents several million dollars per year. *Id.* ¶¶ 70, 76. Paragraph 106 separately alleges that NFE's refusal to bear standby-tug costs and its alleged effort to shift those costs to Plaintiffs created an additional controversy exceeding $75,000. *Id.* ¶¶ 102-106. The Opposition did not replace one theory with another; it read the incorporated allegations exactly as the TAC directs.

Second, Plaintiffs did address nonaggregation. Unlike the separately owned personal-injury and emotional-distress claims in *Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 131 (1st Cir. 2004), the asserted right arises from one alleged undertaking and concerns one integrated operational framework that cannot govern different participating pilots differently during the same vessel movement. *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004), likewise concerns pooling separate and distinct claims, not one uniform equitable decree. At minimum, NFE has not established to a legal certainty from the pleadings that the asserted interest is divisible or that no Plaintiff independently satisfies the threshold.

Plaintiffs' disclaimer of damages does not make equitable relief valueless. The object is an operational framework NFE itself calls a "multi-million-dollar-per-year tug package." Docket No. 326 at 27. In any event, NFE's diversity argument cannot justify wholesale dismissal because it does not eliminate the separately pleaded bases of original jurisdiction under §§ 1331 and 1333. If the Court requires further detail concerning diversity, jurisdictional discovery or leave to amend, rather than dismissal with prejudice, is appropriate.

## III. COUNT V ALLEGES JOINT ACTION THROUGH FACTS, NOT "TIMING ALONE"

The Reply says the TAC infers joint participation "from timing alone." Docket No. 337 at 7. That is demonstrably false. The TAC alleges that Plaintiffs' safety communications interfered with NFE's lower-cost tug plan; NFE, through Carlos Faris, requested Commission intervention

so its preferred operation could proceed; the Commission President issued the targeted order within approximately two hours; NFE and the Commission's President communicated beforehand; the order responded to and benefited NFE's request; and its substance and effect advanced NFE's alleged objective. Docket No. 313 ¶¶ 77-97, 168-171. The TAC identifies the actors, communication, requested intervention, official act, targeted speech, objective, and benefit. Timing is one circumstantial fact among many.

NFE's reliance on *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), and *Francis-Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir. 1979), does not impose a special heightened pleading rule. Those cases rejected complaints that lacked facts connecting the alleged participants. This TAC supplies that connection through detailed circumstantial allegations. Later First Circuit authority confirms that the ordinary plausibility standard governs and that civil-rights complaints are not subject to a freestanding heightened pleading requirement. See *Grajales v. P.R. Ports Authority*, 682 F.3d 40, 46-47 (1st Cir. 2012).

The Reply's own citation to *Ocasio-Hernández v. Fortuño-Burset* underscores the error. The correct citation is 640 F.3d 1, 12-15 (1st Cir. 2011), not "640 U.S. 1,12," and the applicable rule is Rule 12(b)(6), not "Rule 16(b)(6)." Docket No. 337 at 10. More importantly, *Ocasio-Hernández* reversed dismissal where the court demanded excessive factual specificity. It requires the allegations to be read cumulatively, with reasonable inferences drawn for Plaintiffs—not parsed apart while information controlled by the alleged participants remains undiscovered.

Whether NFE merely submitted an innocent request and the Commission independently acted is NFE's competing factual account. It may ultimately prove correct. But Rule 12(b)(6) does not authorize the Court to select that account over the plausible joint-action inference pleaded in the TAC. However, this Honorable Court has expressly found that the cease-and-desist order

issued by the Commission within hours of Mr. Faris' communication constituted a retaliatory act by the Commission and its President. Furthermore, this Honorable Court has repeatedly advised the Commission to align itself with the Pilots, to no avail. As a result, the President of the Commission was held in contempt for violating a Court Order and was ordered to file weekly informative motions with the Court. See Docket No. 262.

## IV. COMPULSORY PILOTAGE DOES NOT MAKE RECURRENCE SPECULATIVE

The Reply newly argues that the parties have no continuing operational relationship because compulsory pilotage is "triggered anew with each vessel movement," making each port call an isolated encounter. Docket No. 337 at 6-7. That characterization is artificial. The same NFE LNG operation repeatedly brings exceptionally large LNG vessels through San Juan Bay; the same licensed pilots must exercise professional judgment concerning those movements; the same tug-support controversy remains unresolved; and the same Pilotage Commission retains regulatory authority over the pilots. A statutory duty requiring a licensed pilot aboard each vessel does not erase the continuing factual relationship or NFE's recurring incentive to overcome safety objections to its preferred operation.

The TAC also alleges more than a generalized fear. NFE allegedly used Commission process after Plaintiffs' safety communications obstructed its plan to substitute less expensive tug support; obtained a targeted order restricting those communications; continued disputing the tug requirements; and remained engaged in the same LNG operation. Docket. 313 ¶¶ 77-100, 163-175. Unlike the chance police encounter in *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983), the relevant actors, operation, regulatory forum, subject matter, and financial incentive remain in place.

NFE argues that the TAC alleges no post-rescission threat or attempt to obtain another order. Docket No. 337 at 6. Plaintiffs maintain that the existing allegations are sufficient. If the Court requires more specific post-rescission facts, however, Plaintiffs request leave to amend. Plaintiffs do not ask the Court to use matters outside the TAC to supplement the existing pleading; the following documented developments demonstrate only that amendment would not be futile.

On May 26, 2026, the Commission received SJBPC's administrative complaint concerning the May 5 entry maneuver of NFE's LNG/C *Energos Maria*. The Commission assigned Case No. CPPR-2026-003, formally notified the respondents, and stated that it would convene an extraordinary meeting "as soon as possible." See **Exhibit A**. The complaint alleges that Captain César Montes performed pilotage functions in San Juan Bay without current Commission authorization; that licensed San Juan pilot Captain Daniel Montes facilitated that participation; and that, on May 11, the Commission President testified under oath that César Montes was not authorized to perform pilotage in San Juan Bay on May 5 and that his conduct violated the law. See **Exhibit B** ¶¶ 21-27, 44-51 (leave is requested to file Exhibits A and B in Spanish, with certified translations to be submitted within 15 days upon the surreply being allowed).

When Plaintiffs filed the TAC on July 6, only forty-one days had elapsed since the Commission received the complaint. Plaintiffs had no reasonable basis then to characterize the ordinary pendency of a recently filed administrative complaint as renewed coordination, selective treatment, retaliation, or recurrence. The relevant circumstance matured after filing. As of September 2, almost 100 days had elapsed, yet the Commission had neither held a hearing nor notified SJBPC that one had been scheduled. See **Exhibit C** ¶¶, Declaration of Miguel A. Nazario, Jr. This continuing inaction contrasts with the Commission President's issuance of the challenged cease-and-desist order approximately two hours after NFE requested intervention concerning

Plaintiffs' safety communications. The disparity does not, standing alone, establish renewed coordination or retaliation. But it does demonstrate that the same NFE operation, pilots, alleged unauthorized pilotage, safety issues, and regulatory process continue to generate circumstances relevant to recurrence. Any perceived deficiency is therefore curable and should result in leave to amend, not dismissal with prejudice.

## CONCLUSION

NFE's Reply does not cure the Motion's failure to confront the TAC as pleaded. It admits that § 1333 was not separately addressed, advances a new individualized-valuation theory that does not affect admiralty jurisdiction, demands a heightened level of conspiracy detail inconsistent with governing Rule 8 precedent, and recasts an ongoing LNG operation as a series of unrelated encounters. The TAC plausibly alleges a maritime contract, a live controversy, and joint participation in state action.

WHEREFORE, for the reasons stated herein as well as in Plaintiffs' Opposition, Plaintiffs very respectfully request that this Honorable Court deny NFE's Motion to Dismiss. Alternatively, if the Court identifies any curable deficiency-particularly concerning the prospective-relief allegations in Count V-Plaintiffs respectfully request leave to amend rather than dismissal with prejudice.

In San Juan, Puerto Rico, this 8th day of September, 2026.

I HEREBY CERTIFY that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice of its filing electronically to all attorneys of record.

Respectfully submitted,

**S/ FRANCISCO E. COLÓN-RAMÍREZ**
FRANCISCO E. COLÓN-RAMÍREZ, ESQ.
USDC-PR Bar No.: 210510
E-mail: fecolon@colonramirez.com
**COLÓN RAMÍREZ LLC**
PO Box 361920
San Juan, PR 00936-1920
Tel.: (787) 425-4652/ Fax: (787) 425-4731

**S/GIANCARLO FONT GARCÍA**
GIANCARLO FONT GARCÍA, ESQ.
USDC-PR Bar No.: 210612
gfont@drcprlaw.com
Urb. Baldrich
306 Calle Coll y Toste
San Juan, PR 00918
Tel.: (787) 622-6999/ (787) 647-1876

**S/ LUIS MANUEL PAVÍA-VIDAL**
LUIS MANUEL PAVÍA-VIDAL, ESQ.
USDC-PR Bar No.: 227205
pavialaw@gmail.com
Urb. Baldrich
306 Calle Coll y Toste
San Juan, PR 00918
Tel.: (787) 622-6999

**S/ MIGUEL A. NAZARIO, JR.**
MIGUEL A. NAZARIO, JR., ESQ.
USDC-PR Bar No.: 214502
e-mail: man@nblawpr.com
**NAZARIO BRICEÑO LAW OFFICES, LLC**
Cervantes 82,
San Juan, Puerto Rico 00907
Tel. (787) 449-2717