**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**COMISIÓN DE PRACTICAJE DE PUERTO RICO**

SAN JUAN BAY PILOTS CORPORATION

Querellantes

v.

CAP. CÉSAR MONTES
CAP. DANIEL MONTES

Querellados

Querella Núm.___________

Sobre:

**QUERELLA**

A LA HONORABLE COMISIÓN DE PRACTICAJE DE PUERTO RICO:

COMPARECE la parte querellante, SAN JUAN BAY PILOTS CORPORATION ("SJBPC", por conducto de su representación legal, y muy respetuosamente exponen, alegan y solicitan:

## I. INTRODUCCIÓN

La presente querella surge de una serie de actuaciones ocurridas el 5 de mayo de 2026 relacionadas con la maniobra de entrada a la Bahía de San Juan del LNG/C ENERGOS MARIA ("ENERGOS MARIA" o el "Tanquero"), embarcación de aproximadamente 285 metros de eslora (aprox. 935 pies), de bandera de las Islas Marshall, fletada por, o perteneciente a, New Fortress Energy ("NFE") o alguna de sus subsidiarias, utilizada para el transporte de gas natural licuado ("LNG") hacia las plantas generatrices localizadas en el área de San Juan.

Los hechos aquí alegados constituyen violaciones graves y directas a la Ley Núm. 226 de 12 de agosto de 1999, según enmendada, conocida como la "Ley de la Comisión de Practicaje de Puerto Rico", así como a la política pública de seguridad marítima y de autonomía operacional del practicaje creada por dicha ley.

Esta querella se presenta debido a que el Capitán César Montes realizó funciones de practicaje en la Bahía de San Juan sin autorización ni nombramiento vigentes de la Comisión de Practicaje de Puerto Rico y fuera del alcance permitido por ley, mientras que el Capitán Daniel Montes permitió, facilitó, habilitó y participó activamente en dichas actuaciones, en abierta contravención de sus deberes profesionales y regulatorios.

## II. JURISDICCIÓN

La Comisión de Practicaje posee jurisdicción plena sobre la presente controversia en virtud de los Artículos 5, 16, 20, 21 y 24 de la Ley 226, los cuales le conceden autoridad para autorizar, reglamentar, supervisar e imponer sanciones sobre el practicaje en Puerto Rico.

## III. PARTES

1. San Juan Bay Pilots Corporation ("SJBPC")es la única asociación de prácticos reconocida por la Comisión de Practicaje para la Bahía de San Juan.

2. El Capitán Daniel Montes es uno de los ocho prácticos licenciados actualmente para ejercer el practicaje en la Bahía de San Juan.[1]

3. El Capitán César Montes es miembro de la Southeast Habor Pilots, Inc., asociación de practicos autorizada a trabajar en otros puertos de Puerto Ricco distintos a la Bahía de San Juan.

## IV. HECHOS

4. El martes, 5 de mayo de 2026, se encontraba programada la entrada a la Bahía de San Juan del LNG/C ENERGOS MARIA.

5. El ENERGOS MARIA es un tanquero de aproximadamente 285 metros de eslora (aprox. 935 pies), dedicado al transporte de LNG, una carga inherentemente peligrosa que requiere protocolos extraordinarios de seguridad marítima.

---

[1] No obstante, el Capitán Daniel Montes ha expresado por escrito que la SJBPC "no lo representa" y está en contra de las medidas de seguridad aprobadas por los restantes siete (7) prácticos que están autorizados a operar en la Bahía de San Juan.

6. Las maniobras de embarcaciones LNG en la Bahía de San Juan conllevan riesgos operacionales significativos debido, entre otras cosas, a canales estrechos; tráfico marítimo denso; vientos cambiantes; limitaciones de maniobrabilidad; tamaño de las embarcaciones; proximidad a infraestructura crítica y áreas pobladas; y otros riesgos inherentes al manejo de LNG.

7. Debido a la naturaleza de la carga transportada, las dimensiones del Tanquero y las particulares condiciones de navegación de la Bahía de San Juan, las maniobras de entrada, tránsito, atraque y salida de este tipo de embarcación requieren el más alto grado de prudencia náutica, estricto cumplimiento con protocolos de seguridad y coordinación efectiva entre prácticos, capitanes y remolcadores.

8. Desde que los LNG han estado atracando en la Bahía de San Juan, las maniobras de entrada y salida de dichos tanqueros se han realizado cuando los vientos no excedan de 10 nudos sostenidos.

9. Dichos movientos también se han realizado con la participación de dos prácticos.

10. Estos parámetros fueron acordados por NFE y todos los prácticos de la Bahía de San Juan.

11. Además, estas dos condiciones para llevar a cabo las maniobras de LNG, la participación de dos (2) prácticos y las limitaciones de viento a 10 nudos o menos sostenidos, fueron parámetros que NFE utilizó para solicitar el permiso radicado con la Guardia Costanera de los Estados Unidos ("USCG" por sus acrónimos en inglés.)

12. El 5 de mayo de 2026, los vientos sostenidos, según la aplicación Caricoos en la Bahía de San Juan eran de vientos sostenidos de 16, con ráfagas de hasta 20 nudos.

13. Ese día, el práctico primario de turno para la maniobra era el Capitán Daniel Montes.

14. El segundo práctico asignado para la maniobra era el Capitán Jake Elmstrom.

15. En determinado momento previo a la maniobra, el Capitán Daniel Montes se comunicó por radio con el despacho de la SJHP para cancelar el servicio de entrada debido a las condiciones del tiempo.

16. El Capitán Jake Elmstrom fue informado por el despacho de la SJHP de dicha cancelación, con lo cual concurrió porque los vientos excedian los parámtetros de viento.

17. Posteriormente, y sin que existiera um cambio significativo alguno en las condiciones del viento, el Capitán Daniel Montes cambió súbitamente de postura y aceptó realizar el servicio sin informar al Cap. Elmstrom.



18. Aproximadamente 45 minutos antes de la maniobra de entrar el Energos María, a la bahía de San Juan, el despacho del SJBHP le informó al Cap. Elmstrom que el Cap. Daniel Montes había cambiado de opinión y que iba a realizar la maniobra.

19. Cuando el Capitán Jake Elmstrom acudió a encontrarse con el Capitán Daniel Montes, descubrió que el Capitán Daniel Montes se encontraba preparado para abordar el LNG junto con su hermano, el Capitán César Montes.

20. Además, inexplicablemente, se encontraba presente la esposa del Capitán Daniel Montes, presta a abordar el bote de los prácticos ("pilot boat") para un toal de seis personas, a pesar de que dicho bote solamente tiene cuatro asientos.

21. El Capitán César Montes actuó como práctico en la Bahía de San Juan durante el movimiento del LNG realizado el 5 de mayo de 2026.

22. Al 5 de mayo de 2026, el Capitán César Montes no poseía autorización vigente de la Comisión de Practicaje para ejercer la profesión en la Bahía de San Juan al momento de los hechos.

23. Southeast Harbor Pilots, Inc. tampoco posee autorización para proveer servicios de practicaje en la Bahía de San Juan.

24. Por información y creencia, las actuaciones aquí descritas fueron parte de un plan concertado para excluir al Cap. Elmstrom de la maniobra del LNG.

25. Por información y creencia, previo al movimiento existieron conversaciones y coordinaciones entre los Capitanes Montes y representantes de intereses de la industria relacionados al movimiento del LNG.

26. El Capitán César Montes ha mantenido públicamente y de forma consistente posturas críticas y antagónicas contra los prácticos de la Bahía de San Juan, incluyendo imputaciones y acusaciones de naturaleza ética contra miembros de San Juan Bay Pilots Corporation.

27. Por información y creencia, el Capitán César Montes mantiene vínculos y funciones de asesoría con New Fortress Energy o entidades relacionadas a las operaciones de LNG en la Bahía de San Juan.

28. Las posturas asumidas por el Capitán César Montes han estado dirigidas, entre otras cosas, a criticar y cuestionar las medidas, parámetros y estándares de

seguridad operacional que los prácticos de San Juan entienden necesarios para proteger la navegación, la seguridad pública y las operaciones marítimas relacionadas al LNG dentro de la Bahía de San Juan.

29. El Capitán César Montes se ha caracterizado por mantener una conducta competitiva y confrontacional frente a los prácticos de San Juan, resaltando sus alegadas destrezas, conocimientos y capacidades superiores sobre otros prácticos de Puerto Rico.

30. La presencia y participación del Capitán César Montes en la maniobra del LNG/C ENERGOS MARIA el 5 de mayo de 2026 <u>no constituyó una decisión operacional prudente o razonable ni una necesidad de seguridad marítima</u>. <u>Por el contrario, representó la introducción irresponsable de elementos de competencia, conflicto interpersonal, presión externa y discordia dentro del equipo de navegación responsable de una de las operaciones marítimas más sensibles y peligrosas que pueden realizarse en la Bahía de San Juan</u>.

31. Dicha situación provocó que el Capitán Jake Elmstrom, práctico asignado para la maniobra, se viera desplazado operacionalmente y optara por no abordar la embarcación ante las circunstancias creadas por los querellados.

32. Las actuaciones aquí denunciadas resultan particularmente alarmantes debido a que la seguridad en operaciones de LNG depende críticamente de la coordinación absoluta, confianza mutua, disciplina operacional y ausencia de presiones externas o conflictos competitivos entre los miembros del equipo de navegación.

33. Es ampliamente reconocido dentro de la industria del practicaje marítimo que factores externos tales como la competencia, rivalidades profesionales, presiones comerciales y conflictos de interés pueden afectar negativamente la salud mental del práctico, su disponibilidad operacional y sus capacidades de juicio y toma de decisiones, produciendo servicios por debajo de los estándares requeridos y creando riesgos serios para la seguridad marítima.

34. Precisamente por ello, la Ley 226 adoptó un modelo regulatorio dirigido a evitar competencia descontrolada entre grupos de prácticos y preservar la independencia profesional del practicaje frente a intereses económicos o comerciales.

## V. VIOLACIONES A LA LEY 226

35. La Exposición de Motivos de la Ley 226 reconoce expresamente las particularidades del Puerto de San Juan, por lo que requiere control especial del tráfico y medidas de seguridad estrictas.

36. El Artículo 3 de la Ley 226 establece claramente que, debido a la importancia de la seguridad marítima y a los riesgos inherentes al practicaje, "la reglamentación económica, más bien que la competencia en el mercado, servirá mejor para proteger la salud pública, seguridad y beneficios".

37. El Artículo 5 de la Ley 226 confiere exclusivamente a la Comisión autoridad para "autorizar, reglamentar, supervisar e imponer sanciones sobre el practicaje".

38. El Artículo 2(l) define licencia o certificado como el documento expedido por la Comisión que autoriza a ejercer el practicaje en Puerto Rico.

39. El Artículo 19 dispone que toda embarcación sujeta a practicaje deberá tener a bordo un "práctico licenciado de Puerto Rico".

40. El Artículo 10 dispone que cualquier reciprocidad o transferencia entre puertos requiere autorización expresa de la Comisión.

41. El Artículo 24(b) dispone categóricamente que la Comisión "nunca reconocerá a más de un grupo o asociación de prácticos por puerto".

42. La única asociación reconocida para ejercer practicaje en la Bahía de San Juan es San Juan Bay Pilots Corporation. César Montes no es parte de San Juan Bay Pilots Corporation.

43. Southeast Harbor Pilots, Inc. no posee autorización para prestar servicios de practicaje en San Juan.

44. El Capitán César Montes no poseía autorización ni nombramiento vigente de la Comisión para ejercer practicaje en la Bahía de San Juan el 5 de mayo de 2026.

45. No obstante, el Capitán César Montes participó y ejerció como práctico durante la maniobra del LNG/C ENERGOS MARIA en la Bahía de San Juan.

46. Las actuaciones del Capitán César Montes constituyen haber ejercido la profesión fuera del alcance permitido por ley, ejercer practicaje sin autorización vigente y realizar

funciones reservadas exclusivamente a prácticos autorizados por la Comisión en San Juan.

47. Las actuaciones del Capitán Daniel Montes constituyen serias violaciones al facilitar, habilitar y participar activamente en dichas violaciones regulatorias. Además, por voluntariamente ingresar al grupo de trabajo a una persona que rompe con la confianza, coordinación y concentración dSan Juan Bay Pilots Corporatione trabajo requerida al pilotar, especialmente en una maniobra LNG.

48. Ambas actuaciones violan el Artículo 16 de la Ley 226, incluyendo, sin limitarse a:

(a) practicar fuera del alcance permitido por ley;

(b) aceptar responsabilidades profesionales sin autoridad legal;

(c) comprometerse a realizar actos contrarios a normas aceptables de practicaje;

(d) violar reglamentos y determinaciones de la Comisión; y

(e) poner en riesgo la seguridad marítima y pública.

49. Las violaciones aquí denunciadas son particularmente graves debido a que ocurrieron durante una operación LNG de alto riesgo, bajo condiciones meteorológicas sensitivas y en circunstancias donde la seguridad operacional requería

máxima prudencia, estabilidad y cumplimiento estricto de los parámetros regulatorios vigentes.

50. La conducta de los querellados socava directamente la política pública establecida por la Ley 226 de mantener el practicaje libre de presiones económicas, rivalidades competitivas e interferencias externas incompatibles con la seguridad marítima.

51. El 11 de mayo de 2026, en una vista en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, en el caso de Busto-Alvarez, Et Al., v. NFEnergia, LLC, Et Al., Caso Núm. 25-CV-1462 (SCC), la Presidenta de la Comisión de Practicaje afirmó bajo juramento que el 5 de mayo de 2026, el Cap. César Montes no estaba autorizado a practicar el pilotage en la Bahía de San Juan y que sus actuaciones fueron contrarias a la Ley.

## VI. RIESGO A LA SEGURIDAD PÚBLICA

La conducta aquí descrita representa una amenaza seria a la seguridad marítima, a la integridad del sistema regulatorio creado por la Ley 226 y a la política pública de Puerto Rico de mantener el practicaje libre de presiones económicas e intereses externos.

Permitir que prácticos no autorizados participen en maniobras LNG en San Juan socava directamente la autoridad de la Comisión y crea un precedente extremadamente peligroso para la seguridad de la Bahía de San Juan, sus instalaciones críticas y la población circundante.

La conducta aquí denunciada demuestra precisamente el tipo de escenario que la Asamblea Legislativa intentó evitar mediante la creación de un sistema regulatorio centralizado, donde la seguridad pública prevalece sobre rivalidades personales, intereses económicos o presiones comerciales.

## VII. REMEDIOS SOLICITADOS

POR TODO LO CUAL, se solicita respetuosamente que esta Honorable Comisión:

A. Tome jurisdicción inmediata sobre la presente querella;

B. Señale vista administrativa urgente;

C. Determine que el Capitán César Montes violó la Ley 226 al ejercer practicaje en San Juan sin autorización vigente;

D. Determine que el Capitán Daniel Montes incurrió en conducta impropia y facilitó violaciones a la Ley 226;

E. Imponga todas las multas administrativas autorizadas por el Artículo 16 de la Ley 226;

F. Emita órdenes de cese y desista contra ambos querellados prohibiéndoles repetir las conductas aquí alegadas;

G. Ordene expresamente que ningún práctico no autorizado por la Comisión podrá participar en maniobras de LNG en la Bahía de San Juan;

H. Imponga cualquier otra sanción disciplinaria que la Comisión estime apropiada, incluyendo suspensión, restricción o probatoria de licencias; y

I. Conceda cualquier otro remedio que proceda en derecho y equidad.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, hoy 26 de mayo de 2026.

f/ Francisco E. Colón Ramírez
FRANCISCO E. COLÓN-RAMÍREZ
RUA NÚM.: 10988
E-mail: fecolon@colonramirez.com
COLÓN RAMÍREZ LLC
Postal: PO Box 361920
San Juan, PR 00936-1920
Física: 1225 Ave. Ponce de León
VIG Tower, Suite 1503
San Juan, PR 00907
Tel.: (888) 223-2364

NAZARIO-BRICEÑO LAW OFFICES, LLC

82 Cervantes

San Juan, PR 00907

Tels.: (787) 449-271

Por: f/ Miguel A. Nazario, Jr.

Lcdo. Miguel A. Nazario, Jr.
Núm. RUA: 12169
e-mail: man@nblawpr.com